**BROWER LAW GROUP, APC**
Lee K. Fink (SBN 216293)
  *Lee@BrowerLawGroup.com*
100 Pacifica, Suite 160
Irvine, California 92618
Telephone: (949) 668-0825

Attorneys for Defendants Riverside
County Democratic Party and Women's
March Action

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPRESENTATIVE MATT GAETZ, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>CITY OF RIVERSIDE, *et al.*,<br><br>      Defendants. | Case No. 5:23-cv-01368-HDV-SHK<br><br>**NOTICE OF MOTION AND MOTION OF RIVERSIDE COUNTY DEMOCRATIC PARTY AND WOMEN'S MARCH ACTION FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with Declaration of Lee K. Fink*<br><br>Judge:   Hon. Hernán D. Vera<br>Date:    February 6, 2025<br>Time:    10:00 a.m.<br>Crtrm.:  5B<br><br>Trial Date:    None Set |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 6, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Hernán D. Vera, located in the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Riverside County Democratic Party ("RCDP") and Women's March Action ("WMA") will and hereby do move this Court for an award of attorneys' fees in the amount of $43,800.

This Motion is made upon the following grounds:  Pursuant to Fe

Federal Rule of Civil Procedure 54(d), Local Civil Rule 54, and 42 U.S.C. § 1988, RCDP and WMA are prevailing parties entitled to attorneys' fees in this action because Plaintiffs' action was frivolous, unreasonable, or without foundation.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, and the Declaration of Lee K. Fink, filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 12, 2024.

DATED:  November 20, 2024          BROWER LAW GROUP, APC

By: _____
    Lee K. Fink

Attorneys for Defendants Riverside County
Democratic Party and Women's March Action

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION

1

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 6

I.     INTRODUCTION ..................................................................................... 6

II.    BACKGROUND ...................................................................................... 7

     A.    Plaintiffs' Claims ........................................................................ 7

     B.    Procedural History ..................................................................... 7

     C.    Ineffective Service on RCDP and WMA .................................... 8

     D.    The Nonprofit Defendants' Motions to Dismiss ........................ 9

     E.    Dismissal of RCDP and WMA .............................................. 11

     F.    Dismissal of the Case .............................................................. 12

III.    RCDP AND WMA ARE ENTITLED TO REASONABLE ATTORNEYS' FEES ............................................................................... 12

IV.    RCDP'S AND WMA'S REQUESTED FEES ARE REASONABLE. .......... 14

     A.    RCDP's and WMA's Attorneys' Rates Are Reasonable. ..................... 15

     B.    RCDP's and WMA's Attorneys' Hours Are Reasonable. .................... 16

V.    CONCLUSION ..................................................................................... 16

WORD COUNT CERTIFICATION ....................................................................... 18

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION

MOTION FOR ATTORNEYS' FEES (RIVERSIDE COUNTY
DEMOCRATIC PARTY; WOMEN'S MARCH ACTION)

1

# <u>TABLE OF AUTHORITIES</u>

2

3
**Page**

4

## <u>CASES</u>

5

6
*Amedee Geothermal Venture I v. Lassen Mun. Util. Dist.*, 8 F. Supp. 3d 1211, 1214 (E.D. Cal. 2014) ...............................................................................13

7
*Ammari v. City of Norwalk*, No. 222CV01319SSSMARX, 2023 WL 8696334, at *1 (C.D. Cal. Sept. 28, 2023 ......................................................13

8

9
*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556 (2007)............................13

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)........................................................15

10
*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) .............14

11
*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008) ....................14

12
*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).........................13

13
*Citizens for Free Speech, LLC v. County of Nevada*, 953 F.3d 655, 658 (9th Cir. 2020).............................................................................................................13

14

15
*Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992)........15

16
*Fox v. Vice*, 563 U.S. 826, 833 (2011) ...............................................................12, 13

17
*Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) .........................13

18
*Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 975-76 (9th Cir. 2011)...............................................................................................................13

19

20
*Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980) .............................................................13

*Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) ...........................................9

21

*Lefemine v. Wideman*, 568 U.S. 1, 4 (2012)............................................................12

22
*Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).........................................................9

23
*Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) .....................16

24
*Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 110, 126 (S.D.N.Y. 2023) ...................................................................................14

25

26
*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).......................................................13

27
*Olsen v. Idaho St. Bd. of Med.*, 363 F.3d 916, 929 (2004)......................................13

28
*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542 (2010) ...................................15

MOTION FOR ATTORNEYS' FEES (RIVERSIDE COUNTY
DEMOCRATIC PARTY; WOMEN'S MARCH ACTION)

*Saman v. Robbins*, 173 F.3d 1150, 1158 (9th Cir. 1999) ........................................... 13

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) .......................... 14

*Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015 (N.D. Cal. 2014) ............................ 13

William Schwarzer, et al., *Federal Civil Procedure Before Trial*, § 8:1550 (2010) ............................................................................................................................ 9

*Williams v. County of Alameda*, 26 F.Supp.3d 925, 936 (N.D. Cal. 2014) ................ 9

## STATUTES

42 U.S.C. §§ 1983 and 1985 ..................................................................................... 7, 14

42 U.S.C., § 1988 ...................................................................................................... 6, 12

Code Civ. Proc., § 415.20 ............................................................................................. 8

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION

MOTION FOR ATTORNEYS' FEES (RIVERSIDE COUNTY
DEMOCRATIC PARTY; WOMEN'S MARCH ACTION)

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiffs are members of the United States House of Representatives and their respective campaign political action committees.[1]  They brought this action against their political opponents—including specifically the local division of the opposing political party, the Riverside County Democratic Party ("RCDP")—alleging that RCDP, Women's March Action ("WMA" collectively with RCDP referred to herein as the "Defendants"), and numerous other nonprofit entities (the "Nonprofit Defendants") engaged in a conspiracy to deny them the right to hold a political rally. The Nonprofit Defendants, however, did no such thing.  Rather, they merely exercised their First Amendment rights to protest the Plaintiff's rally and to petition the local governments in the cities where Plaintiffs planned their rally.

To bring this claim, Plaintiffs relied on a 150-year old civil rights law intended to prevent the Ku Klux Klan from their violent and vigilante acts to deprive voters of their rights.  As this Court found, the claim was utterly without merit.  Fortunately, federal law provides a mechanism to discourage the misuse of such important federal civil rights actions by allowing parties who have been wrongly and frivolously accused of recouping their attorneys' fees.  42 U.S.C. § 1988.

RCDP and WMA bring this motion to recoup the fees and costs that they have incurred in this action.  While relatively modest, both in the context of this case and in litigating civil rights matters, the expenses incurred by these parties are significant to their operations, draining their resources in the lead-up to a critical election on both national and local issues.  In addition, awarding RCDP and WMA their attorneys'

---

[1] Since the filing and dismissal of this case, Plaintiff Gaetz has resigned from his seat in the 118th Congress and, apparently, indicated his intention to resign from his seat in the forthcoming 119th Congress to which he was re-elected in November 2024, in order to be nominated as Attorney General by the new President.

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION

fees will dissuade future potential litigants (including these Plaintiffs) from misusing this important civil rights law.

## II.    BACKGROUND

### A.    Plaintiffs' Claims

Plaintiffs Matt Gaetz and Marjorie Taylor Greene are members of the United States House of Representatives.  (First Am. Compl. ("FAC"), ECF No. 29 at ¶ 10.) They, along with their respective campaign committees and a joint fundraising committee, brought this suit in July 2023 pursuant 42 U.S.C. §§ 1983 and 1985.  (*Id.*) According to the FAC, in July 2021 Plaintiffs tried to host a "Put America First" political rally but that the government defendants in this case (the Cities of Anaheim Riverside, as well as the manager of the City of Riverside's convention center) violated Plaintiffs' First Amendment rights by preventing them from holding their rally because of hostility to Plaintiffs' viewpoint.  (*Id.* at ¶¶ 57, 71.)  Plaintiffs therefore sued these government defendants pursuant to 42 U.S.C. § 1983 for that First Amendment violation.  (*Id.* at ¶¶ 50-74.)  In addition, Plaintiffs alleged that the RCDP, WMA, and other non-profit groups, such as the League of Women Voters and the NAACP, engaged in a "conspiracy" to cancel the rally in violation of 42 U.S.C. § 1985(3) – the Ku Klux Klan Act of 1871.  (*Id.* ¶¶ 15-19; 76-96.)

In reality, none of the allegations were true.  Not only was there no agreement amongst the defendants to suppress Plaintiff's rights, but the Nonprofit Defendants were simply engaged in an exercise of their own First Amendment rights to protest the Plaintiffs and their radical views.

### B.    Procedural History

Plaintiffs initiated this case in July 2023.  RCDP and WMA learned about this lawsuit through the media, as Plaintiffs, well-known for their media spectacles, made high profile pronouncements of the purported First Amendment violations. (Declaration of Lee K. Fink ("Fink Decl."), ¶ 2.)  RCDP contacted Lee Fink of Brower Law Group, APC ("BLG") because of his substantial litigation experience and

reputation for practicing in the area of political law. (Fink Decl., ¶ 3.) RCDP then put WMA in contact with Mr. Fink, and the Defendants agreed that, given their interests in this matter were aligned, they would engage in a joint representation. (*Id.*) Mr. Fink undertook investigation of the claims in the case, research possible defenses to the action, devised litigation strategy, and contacted counsel for other defendants to address the case. (*Id.*, ¶ 4.) All throughout the goal was to end the litigation against Defendants while minimizing the costs they incurred. (*Id.*) Indeed, one of the concerns raised by the case was whether the action—brought by leading Republican members of Congress—was in fact an attempt to drain the resources of Plaintiff's political opponents, including the local Democratic Party in the leadup to an election for a critical swing seat Congress.

### C.    Ineffective Service on RCDP and WMA

Plaintiffs claimed to have effectuated substitute service on RCDP and WMA, pursuant to Section 415.20(a) of the California Code of Civil Procedure. Fed. R. Civ. P. 4(e)(1), 4(h) (allowing service of process on an entity defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located."). Under California law, substituted service is effective "by leaving a copy of the summons and complaint . . . at [the defendant's] usual mailing address, . . . and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person. . . . Service of a summons in this manner is deemed complete on the 10th day after the mailing." Code Civ. Proc., § 415.20(a). According to their proofs of service, Plaintiffs delivered the summons and complaint to RCDP on October 2, 2023 and then placed them in the mail on October 3, 2023. (ECF Nos. 53, 55.) Accordingly, service would not have been effective until October 13, 2023.

But service was never effectuated because Plaintiffs filed an amended complaint on October 2, 2023, and never served the amended complaint on RCDP or WMA. Because of the amended pleading, the original complaint no longer had any

1  legal effect.  *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967), *overruled on other*

2  *grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) ("The amended

3  complaint supersedes the original, the latter being treated thereafter as non-existent.");

4  *Williams v. County of Alameda*, 26 F.Supp.3d 925, 936 (N.D. Cal. 2014) (citing

5  William Schwarzer, et al., *Federal Civil Procedure Before Trial*, § 8:1550 (2010).

6      Additionally, service was would have been ineffective on the RCDP even if the

7  amended complaint had been served.  The summons and complaint were left at 67-

8  555 E. Palm Canyon Dr., Cathedral City CA 92234.  (ECF No. 53.)  But simple

9  reference to relevant filings with either the Fair Political Practices Commission and

10  the Federal Elections Commission would demonstrate that the address is not the

11  address of the RCDP, but rather the address of a separate political committee called

12  the "the Democratic Headquarters of the Desert."  (Fink Decl., ¶ 6.)  Plaintiffs, who

13  are both candidates and their controlled campaign committees, are well aware of how

14  political action committees are regulated, and therefore knew full well how to obtain

15  the correct address for service on RCDP, and the difference between a county party

16  and a local club.

17      With Plaintiffs having failed to properly serve them, neither RCDP nor WMA

18  were obligated to respond to the now superseded complaint.  And because they were

19  unwilling to voluntarily insert themselves into what they judged to be costly litigation

20  designed to distract them from their organizational goals while generating publicity

21  for Plaintiffs and their high-profile lead counsel, they waited for Plaintiffs to properly

22  effectuate service.

23      **D.    The Nonprofit Defendants' Motions to Dismiss**

24      In the intervening time, the other non-profit entities filed various motions to

25  dismiss the case under Rule 12(b)(6).  Plaintiffs never corrected their errant service.

26  Instead, Plaintiffs filed requests for entry of default.  (ECF No. 61.)  Counsel for

27  RCDP and WMA then engaged in a meet and confer process pursuant to Local Rule

28  7-3 on a motion for Sanctions under Rule 11, and urged Plaintiffs to withdraw their

default.  (Fink Decl., ¶ 7; Ex. 1.)  After engaging in emails and telephonic discussion, counsel for Plaintiffs orally agreed to stipulate to set aside the default against both RCDP and WMA.  (*Id.*, ¶ 8.)  Because RCDP and WMA were similarly situated as the other Nonprofit Defendants, the parties agreed that the Court's ruling on the motions to dismiss would substantially influence (and possibly govern) the case against RCDP and WMA.  (*Id.*)  The parties therefore agreed to postpone the date for RCDP and WMA to respond to the complaint until February 15, 2024, two weeks after the scheduled hearing on the motions to dismiss.  (*Id.*, ¶ 10.)  The undersigned counsel appeared at the hearing on the motions to dismiss on February 1, 2024, to inform the Court of the stipulation.  (*Id.*, ¶ 9.)  As the parties awaited the Court's ruling on the motions to dismiss, Plaintiffs and RCDP and WMA stipulated to a further extension of time to respond, until two weeks after the Court issued its ruling on the motions to dismiss.  (ECF Nos. 91, 92.)

On March 22, 2024 the Court entered its Order, denying the City Defendants' Motions, but granting the Motions to Dismiss by the Nonprofit Defendants, without leave to amend.  (ECF No. 95.)  In discussing the claims against the Nonprofit Defendants, the Court recognized the overwhelmingly deficient nature of Plaintiffs' allegations.  (*Id.* at 3, 14-21.)  The Court wrote that Plaintiffs' FAC suffered from a "complete lack of any alleged facts to support a 'meeting of the minds' as required for a conspiracy claim," and that even drawing all reasonable inferences in Plaintiffs' favor, the complaint was "utterly devoid of any specifics plausibly alleging such an agreement."  (*Id.* at 3:1-2; 3:9-10.)  The Court found simply that all Plaintiffs had alleged was that the Nonprofit Defendants merely exercised their own First Amendment rights to lobby the local governments related to the Plaintiffs' rally.  (*Id.* at 312-14.)

Alongside Plaintiff's failure to state a conspiracy, the Court also dismissed Plaintiffs' claims for two other reasons.  (*Id.* at 17–21.)  First, to state a claim under Section 1985(3)'s equal protection clause, Plaintiffs must allege they belong to a

-10-

protected class and have been subjected to discrimination. (*Id.* at 17-18.) But Plaintiffs' alleged discrimination was about politics, not race. (*Id.*) Second, to state a claim under the support-or-advocacy clause, Plaintiffs must allege a conspiracy's purpose was to intimidate, force, or threaten a voter engaging in lawful voting activity. (*Id.* at 19.) But Plaintiffs did not allege any specific voter was intimidated or otherwise hindered from supporting or advocating for Plaintiffs' reelection; instead, the nonprofit defendants' conduct was aimed at the *government*, which does not establish a claim. (*Id.* at 19-21.)

The Court granted all of the Nonprofit Defendants' Motions to Dismiss, without leave to amend based on the additional finding that further leave to amend would be futile in light of the fact that "Plaintiffs [had] failed to articulate a viable Section 1985 theory despite filing an amended complaint and an opportunity to make an offer of proof in the underlying briefing and oral argument." (*Id.* at 21-22.)

## E.    <u>Dismissal of RCDP and WMA</u>

Shortly after the Court's ruling on the motion to dismiss, counsel for RCDP and WMA met and conferred with Plaintiff's counsel on their own proposed motion to dismiss. (Fink Decl., ¶ 11, Ex. 3.) RCDP and WMA noted that their arguments would be identical to those previously advanced by the other nonprofit defendants and articulated by the Court in its ruling. (*Id.*) As an alternative, counsel for RCDP and WMA offered to stipulate to a dismissal that would deem the Court's March 22, 2024, ruling to apply to RCDP and WMA, allowing Plaintiffs to pursue an appeal as to RCDP and WMA (if they so chose), without revisiting the same argument in the trial court. (*Id.*) After exchanging several emails, counsel for Plaintiff agreed to dismiss RCDP and WMA on March 28, 2024. (*Id.*, ¶ 12, Ex. 4.) Counsel for RCDP and WMA provided draft stipulations for dismissal later that day. (*Id.*)

In the meantime, lead counsel for Plaintiffs was forced to withdraw from representation. (*Id.*, ¶ 13.) On April 3, 2024, Plaintiff's replacement counsel demanded a waiver of fees and costs, a condition that had never been raised in prior

-11-

meet and confer communications. (*Id.*, ¶ 14, Ex. 5.) Because the parties were unable to reach a stipulation before the deadline for RCDP and WMA to respond to the complaint, RCDP and WMA filed answers to the amended complaint. (ECF Nos. 96, 97.) Counsel for RCDP and WMA then sought to meet and confer regarding a motion for judgment on the pleadings. (Fink Decl., ¶ 14.) Plaintiffs thereafter agreed to dismiss RCDP and WMA, and the parties entered into written stipulations. (ECF Nos. 110, 111.) The Court entered the dismissals on April 12, 2024. (ECF Nos. 113, 114.)

### F. <u>Dismissal of the Case</u>

The City Defendants and Raincross subsequently reached a settlement of the remaining portion of the case, and on October 28, 2024 filed a Stipulation to Dismiss the case, with prejudice, under Rule 41(a)(2). (ECF No. 126.) The Court entered the Order of dismissal on October 30, 2024. (ECF No. 127.)

With the entry of that final order resolving the case as to all parties, the nonprofit defendants contacted Plaintiffs' counsel on October 31, 2024 to meet and confer on their respective intent to seek recover of attorney's fees as prevailing defendants under 42 U.S.C. § 1988. (Fink Decl., ¶ 16.) The parties met and conferred as required by Local Rule 7-3 on November 12, 2024. (*Id.*)

## III. <u>RCDP AND WMA ARE ENTITLED TO REASONABLE ATTORNEYS' FEES.</u>

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party [in civil rights actions] a reasonable attorney's fee as part of the costs[.] 42 U.S.C. § 1988(b); *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012). Congress enacted Section 1988 "to protect defendants from burdensome litigation having no legal or factual basis." *Fox v. Vice*, 563 U.S. 826, 833 (2011). There is no question here that RCDP and WMA are prevailing parties. The Court dismissed both parties *with prejudice*. (ECF Nos. 113, 114.) The dismissal came about only because the Court had ruled on the nonprofit defendant's motion dismissing them with prejudice. (ECF No. 95.)

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION

A prevailing defendant may recover attorney's fees under Section 1988 when the Court finds that a plaintiff's action was frivolous, unreasonable, or without foundation. *Fox*, 563 U.S. at 833; *Citizens for Free Speech, LLC v. County of Nevada*, 953 F.3d 655, 658 (9th Cir. 2020). In making this determination, the Court examines a plaintiff's claims as they existed at the time of filing. *Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 975-76 (9th Cir. 2011). "An action becomes frivolous when the result appears obvious[,] or the arguments are wholly without merit." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

Subjective bad faith is not required; meritless, groundless claims are sufficient on their own. *See, e.g., Harris*, 631 F.3d at 975-76; *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980). Claims can be meritless when they lack a basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Galen*, 477 F.3d at 666; *Amedee Geothermal Venture I v. Lassen Mun. Util. Dist.*, 8 F. Supp. 3d 1211, 1214 (E.D. Cal. 2014). "While prevailing defendants must clear a 'high hurdle' to receive attorney fees, the Ninth Circuit has made clear that the "'hurdle is not insurmountable.'" *Ammari v. City of Norwalk*, No. 222CV01319SSSMARX, 2023 WL 8696334, at *1 (C.D. Cal. Sept. 28, 2023) (quoting *Saman v. Robbins*, 173 F.3d 1150, 1158 (9th Cir. 1999)).

The Court need look no further than its Order granting the Nonprofit Defendant's motions to dismiss to determine that the action was frivolous, unreasonable, and lacking foundation.

To state a conspiracy claim, a plaintiff must allege specific facts establishing a conspiracy; mere allegations of independent parallel conduct are insufficient. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556 (2007); *Olsen v. Idaho St. Bd. of Med.*, 363 F.3d 916, 929 (2004); *Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015 (N.D. Cal. 2014). Plaintiffs made no such claim, nor could they. As the Court determined, the defendants simply exercised their First Amendment rights, separately, lobbying the government agencies. (ECF No. 95 at 3, 14–17.) The Court found Plaintiffs' First

1  Amended Complaint was "stunningly deficient" and did not amount to "specific
2  factual allegations of a plausible conspiracy between Defendants." (*Id.* at 3, 15.)

3      Plaintiffs other theories fared no better. A claim under Section 1985(3)'s equal
4  protection clause requires racial animus. *See Bray v. Alexandria Women's Health*
5  *Clinic*, 506 U.S. 263, 267–68 (1993); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529,
6  1536 (9th Cir. 1992). But Plaintiffs' allegations of animus in support of their equal
7  protection claim are a "thin gruel" of conclusions that boiled down to political, rather
8  than racial, hostility. (ECF. No. 95 at 19.) And, as the Court noted, Section 1985(3)'s
9  support or advocacy clause requires targeting of specific voters. *Id.* at 20-21; *see*
10  *Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 110, 126
11  (S.D.N.Y. 2023). But the Court found no allegations at all here about intimidation of
12  a specific voter. (ECF. No. 95 at 19-21.)

13      As the Court stated in dismissing Nonprofit Defendants from this case, "[t]he
14  effect of Plaintiffs' unprecedented and stunningly deficient pleading—haling nine
15  civil rights groups into federal court for speaking out against an event—should shock
16  in equal measure civic members from across the political spectrum." (*Id.* at 3:20-22.)
17  "Plaintiffs' misguided effort to settle political scores against these civic
18  organizations" threatens not only to turn Section 1985(3) into a general federal tort
19  law, it threatens chilling the political counter-speech of such organizations by the
20  threat of federal litigation against them, and the resulting need to retain counsel to
21  defend themselves or face the ruinous potential of default judgment. This is the exact
22  situation in which a prevailing defendant should be awarded a reasonable attorney's
23  fee under Section 1988.

24  **IV.  RCDP'S AND WMA'S REQUESTED FEES ARE REASONABLE.**

25      Under fee-shifting statues, the presumptively correct fee award is a function of
26  the "lodestar"—"the number of hours reasonably expended on the litigation
27  multiplied by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d
28  973, 982 (9th Cir. 2008) (quotation omitted). Here, hours were reasonably expended

-14-

1    on the litigation, at a reasonable paid average hourly rate of .  The purpose of the

2    lodestar is to "produce[] an award that approximates the fee the prevailing attorney

3    would have received for representing a paying client who was billed by the hour in a

4    comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542 (2010).

5        Here, RCDP and WMA seek a combined award of attorneys' fees in the amount

6    of $43,800, based on 58.4 hours at a rate of $750 per hour.  (Fink Decl., ¶ 37.)

7        A.    __RCDP's and WMA's Attorneys' Rates Are Reasonable.__

8        The rates that are "reasonable" under a fee-shifting statute are "established by

9    reference to the fees that private attorneys of an ability and reputation comparable to

10   that of prevailing counsel charge their paying clients for legal work of similar

11   complexity." *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir.

12   1992).  Or, in the Supreme Court's formulation, those "prevailing in the community

13   for similar services by lawyers of reasonably comparable skill, experience and

14   reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)

15       RCDP and WMA engaged BLG, and specifically Lee Fink, to represent them

16   in this matter.  BLG is listed in Best Law Firms in America ® 2025 for Commercial

17   Litigation.  (Fink Decl., ¶ 20.)  Mr. Fink has been listed in Best Lawyer ® since 2024.

18   (*Id.*)  Mr. Fink graduated from UC Berkeley and NYU Law School, and has been

19   practicing for 23 years.  (*Id.*, ¶ 17.)  After clerking for Judge Carter in the Central

20   District of California, Mr. Fink was an associate and counsel at O'Melveny & Myers

21   LLP.  (*Id.*, ¶ 18.)  He later served in senior government roles, including as the Principal

22   Deputy General Counsel at the United States Department of Agriculture.  (*Id.*, ¶ 19.)

23   Mr. Fink is the Chair of the Orange County Bar Association Business Litigation

24   Section, a member of the California Political Attorneys' Association, and has

25   significant experience in political law matters.  (*Id.*, ¶ 21.)  Mr. Fink's regular billing

26   rate is $750 per hour, and courts within the Central District of California have

27   regularly found his standard billing rate reasonable.  (*Id.*, ¶ 31.)  Additionally, Mr.

28

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION

Fink's rate is in line with the rates suggested by the U.S. Attorney's Office for lawyers with his experience. (*Id.*, ¶ 32 , Ex. 9.)

Moreover, because RCDP and WMA both engaged BLG, they benefited from economies, since Mr. Fink's efforts were essentially split between the two clients.

**B.    RCDP's and WMA's Attorneys' Hours Are Reasonable.**

The second major component of the lodestar is the number of hours, which "is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

The Ninth Circuit has cautioned that "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112.

Here, RCDP and WMA incurred a relatively modest number of hours defending this case. By waiting until they were properly served, RCDP and WMA avoided expending significant time and fees on the motions to dismiss. Although they did not brief the motion, they still had to spend time preparing to defend against the frivolous complaint, responding to the improper service, answering the complaint, and meeting and conferring in the ultimately successful effort to have the claims dismissed with prejudice. Additionally, BLG has incurred a modest amount of time seeking attorneys' fees.

**V.    CONCLUSION**

For the reasons set forth above, Defendants RCDP and WMA's motion for attorneys' fees should be granted.

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION

1   DATED:  November 20, 2024          BROWER LAW GROUP, APC

2

3

4                                     By: _____
                                          Lee K. Fink
5

6                                     Attorneys for Defendants Riverside County
                                      Democratic Party and Women's March Action
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ATTORNEYS' FEES (RIVERSIDE COUNTY
DEMOCRATIC PARTY; WOMEN'S MARCH ACTION)

# **WORD COUNT CERTIFICATION**

The undersigned, counsel of record for Riverside County Democratic Party and Women's March Action certifies that this brief contains 3,718 words, which complies with the word limit of L.R. 11-6.1.

DATED:  November 20, 2024          BROWER LAW GROUP, APC

By: _____
     Lee K. Fink

Attorneys for Defendants Riverside County
Democratic Party and Women's March Action

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION