**BROWER LAW GROUP, APC**
Lee K. Fink (SBN 216293)
 *Lee@BrowerLawGroup.com*
100 Pacifica, Suite 160
Irvine, California 92618
Telephone: (949) 668-0825

Attorneys for Defendants Riverside
County Democratic Party and Women's
March Action

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPRESENTATIVE MATT GAETZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF RIVERSIDE, *et al.*,<br><br>Defendants. | Case No. 5:23-cv-01368-HDV-SHK<br><br>**DECLARATION OF LEE K. FINK IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br>*Filed concurrently with Motion for Attorneys' Fees*<br><br>Judge: Hon. Hernán D. Vera<br>Date: February 6, 2025<br>Time: 10:00 AM<br>Crtrm.: 5B<br><br>Trial Date:    None Set |

# DECLARATION OF LEE K. FINK

I, Lee K. Fink, declare as follows:

1. I am an attorney with Brower Law Group, APC, ("BLG") attorneys of record for Defendants Riverside County Democratic Party ("RCDP") and Women's March Action ("WMA," collectively referred to herein as "Defendants"). I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Defendants' Motion for Attorneys' Fees.

2. Defendants first learned about this lawsuit shortly after it was filed through media reports after Plaintiffs made public announcements of the litigation, claiming First Amendment violations.

3. Being active in election and political law (as well as having extensive experience within Democratic politics), I was put in touch with the leadership of the RCDP to help the county party address the case. RCDP then put WMA in contact with me to assist WMA. Defendants agreed that, given their interests in this matter were aligned, they would engage in a joint representation.

4. I undertook investigation of the claims in the case, researched possible defenses to the action, devised litigation strategy, and contacted counsel for other defendants. Throughout this process, the goal was to end the case in Defendants' favor while minimizing what this frivolous litigation would cost them.

5. Plaintiffs never properly effectuated service on the Defendants. Not until October 2, 2023, did Plaintiffs actually claim to leave the summons and complaint at the Defendants' offices, as part of a purported substituted service under California law. But the very next day, Plaintiffs filed an amended complaint, which they never delivered to Defendants. Indeed, Defendants only ever obtained the amended complaint when I searched the PACER docket and downloaded it from the Court.

6. Moreover, Plaintiffs never left the summons or complaint at the office of the RCDP. Rather, they delivered the complaint to a separate entity called the

Democratic Headquarters of the Desert. That is not the Democratic Party but a separate political action committee registered with the Federal Elections Commission—just like Plaintiffs' campaign committees and joint fundraising committee.

7. In November 2023, Plaintiffs filed requests for entry of default. After I learned about these filings, I began the meet and confer process pursuant to Local Rule 7-3 on a motion for Sanctions under Rule 11. Because Plaintiffs had never properly served the operative complaint, requesting default was improper, and I urged Plaintiffs to withdraw their default. Attached hereto as **Exhibit 1** is a true and correct copy of the email I sent to John Eastman, Anthony Caso, and Rex Haberbush on January 25, 2024, regarding my proposed motion.

8. After engaging in emails and telephonic discussion, counsel for Plaintiffs orally agreed to stipulate to set aside the default against both RCDP and WMA. Because RCDP and WMA were similarly situated as the Other Nonprofit Defendants, the parties agreed that the Court's ruling on the motions to dismiss would substantially influence (and possibly govern) the case against RCDP and WMA. We therefore agreed to postpone the date for RCDP and WMA to respond to the complaint until February 15, 2024, two weeks after the scheduled hearing on the motions to dismiss.

9. I appeared at the hearing on the motions to dismiss on February 1, 2024, to inform the Court of the stipulation, and indicate that we joined the arguments of the Nonprofit Defendants.

10. As the party seeking to set aside the default, I was responsible for preparing the stipulation to set aside the default. But as the Court's ruling did not issue immediately, the parties agreed that the Defendants' response date would be due two weeks after the Court ruled on the motions to dismiss. Attached hereto as **Exhibit 2** is a true and correct copy of the email thread capturing that exchange and agreement (without the accompanying attachments).

11. Shortly after the Court's ruling on the motions to dismiss, I contacted counsel for Plaintiffs to meet and confer on a proposed motion to dismiss. Attached hereto as **Exhibit 3** is a true and correct copy of the email I sent on March 25, 2024.

12. Mr. Eastman informed me that he would discuss the matter with the Plaintiffs, and I urged that we place our meet and confer session on calendar so that I could meet my deadline under Local Rul 7-3 to meet and confer a week before Defendant's response date of April 5, 2024. Plaintiffs thereafter agreed to dismiss Defendants, and I prepared stipulations for dismissal. Attached hereto as **Exhibit 4** is a true and correct copy of the email thread capturing that exchange and agreement (without the accompanying attachments).

13. On April 3, 2024, Mr. Eastman sent me (along with counsel for other parties in this case) an email giving notice that the California Bar had recommended his disbarment, but that he would continue to advise his clients as a member of the Bar of the District of Columbia.

14. I responded asking for Plaintiffs' counsel to return the finalized stipulations for dismissal. In response, Mr. Haberbush indicated his agreement with the stipulations, but only if Defendants would waive their attorneys' fees and costs. I responded by indicating that Defendants had never offered, and the parties had never agreed, to a waiver of fees and costs. Rather, I pointed out that I had expressly reserved that issue based on my belief that Plaintiffs would not agree to pay Defendants' fees and costs (a prediction that has borne out to be true). Additionally, because Plaintiffs' delay in responding, and their last minute addition of an unacceptable condition, I could no longer meet the deadline under the Local Rules to meet and confer on a motion to dismiss. I therefore indicated that we would be filing answers and sought to meet and confer on a motion for sanctions under Rule 11 and a motion for judgment on the pleadings under Rule 12(c). Attached hereto as **Exhibit 5** is a true and correct copy of the email thread capturing that exchange (without the accompanying attachments).

15. Only after several more days and email exchanges to Plaintiffs' counsel agree to the stipulations to dismiss the case. Attached hereto as **Exhibit 6** is a true and correct copy of the email thread capturing that exchange and agreement (without the accompanying attachments).

16. After the remaining defendants in the case stipulated to a dismissal of the action, I joined counsel for the other Nonprofit Defendants to meet and confer with Plaintiffs' counsel regarding a proposed motion for attorneys' fees. The parties ultimately met telephonically on November 12, 2024.

17. I graduated from the University of California, Berkeley with a B.A. in Political Science in 1998 and obtained my law degree in 2001 from NYU School of Law, where I was a member of the Order of the Barrister and the Chair (Editor in Chief) of the Moot Court Board.

18. I have been practicing law for 23 years. I started my career as a judicial law clerk for the Hon. David O. Carter of the United States District Court for the Central District of California. I then spent six years as an associate and counsel at O'Melveny & Myers, LLP.

19. Following that, I served in roles in both the federal government and on national political campaigns for approximately nine years. In 2008, I served as a Deputy Voter Protection Director for the Obama Campaign in Colorado, where were organized more than 1200 lawyers to monitor polling sites and advocate for voters around the state, and prepare for recounts and post-election litigation. In 2012, I served as the Voter Protection Director for the Obama campaign in Iowa, where I ran the operation that organized more than 750 lawyers to monitor election law issues around the state, coordinate the petitioning to set up some 527 early voting satellite sites and days, and worked closely with stakeholders challenging unprecedented and improper election regulations promulgated by the Secretary of State. In 2014, I served as a consultant for the Democratic National Committee's voter protection program, and in 2016 I served as a Senior Advisor for Voter Protection for the Clinton campaign

in Iowa. During the 2008-2016 period, I served in senior roles in the White House Office of Presidential Personnel, the National Aeronautics and Space Administration (NASA), and the United States Department of Agriculture. When I left federal service in January 2017, I was the Principal Deputy General Counsel at the United States Department of Agriculture, the second-ranking attorney for one of the largest cabinet departments, overseeing more than 250 lawyers and legal professionals, where I oversaw numerous litigation matters in federal district courts, the Courts of Appeals, and the Supreme Court. I thereafter served as Deputy General Counsel of the Orange County Employees Retirement Service, a $15 billion public pension fund, where I oversaw all litigation. In 2020, I served as a consultant for Fair Fight Action, a national voting rights organization setting up voter protection programs in advance of the Democratic Convention, where I oversaw programs in Nevada, Arizona, Georgia, Michigan, Montana, and Iowa.

20. In 2018, I returned to private practice in business litigation. I was counsel at Greenberg Gross LLP from 2018 to 2020. Since 2020, I have practiced at Brower Law Group, APC ("BLG"), a boutique litigation firm in Orange County, where I am the Chair of the Business Litigation Department. Brower Law Group was recognized in Best Law Firms ® for 2025 for commercial litigation. I have been recognized by Best Lawyers in America ® since 2024 and have been named as a SuperLawyer for 2025.

21. In 2022, I was elected by my peers as the Secretary/Treasurer of the Orange County Bar Association ("OCBA") Business Litigation Section. I served in that capacity in 2023 and currently serve as the Chair of the OCBA Business Litigation Section. I previously served as Co-Chair of the OCBA Pro Bono Committee. I am also an active member of the California Political Attorneys' Association, an organization of attorneys throughout California that practice in political law and government transparency issues.

22. In addition to my practice, I am an adjunct professor at Western State University College of the Law, where I teach Administrative Law and designed a class on Election Law.

23. I am admitted to practice in the State of California, the District of Columbia, the federal district courts for the Northern, Southern, and Central Districts of California, and the Ninth Circuit Court of Appeals.

24. In addition to my practice in business and trust litigation, I have a significant practice in political law and government transparency.

25. In 2018, I was the lead counsel in a case challenging the qualification of a candidate for Orange County District Attorney, and the Court entered an order striking her ballot designation. I have advised numerous candidates on election law issues, including successfully obtaining a writ of mandate to strike the ballot designation of a candidate for State Senate from the Sacramento Superior Court in the 2022 election. During the fall 2022 election cycle, I served as lead counsel on three election law matters in Orange County Superior Court and advised several other clients on potential or actual matters.

26. In the 2024 cycle, I represented clients in two election law matters in Orange County prior to the primary election, and advised clients on three matters related to the general election

27. I served as co-lead counsel for Petitioner in the matter of *Schlesinger v. City of Mission Viejo*, Orange County Superior Court Case No. 30-2022-01253878-CU-WM-CJC. In that matter, the Orange County Superior Court, Hon. Walter Schwarm, presiding, issued a writ of mandate requiring that the City of Mission Viejo hold elections for two city council seats whose term the City Council was otherwise planning to extend from two years to four years, and thereby not requiring the incumbents to stand for election. I was also counsel in the related case of *People ex. Rel. Schlesinger v. Sachs, et al.*, Orange County Superior Court Case No. 30-2022-01262431-CU-JR-CJC, where Judge Schwarm issued an order in the nature of quo

warranto, pursuant to Section 803 of the Code of Civil Procedure, removing three Mission Viejo City Council members, elected in 2018, from office for having unlawfully continued in their office beyond their prescribed two-year term. The Court of Appeal issued a published decision affirming that decision at *People ex rel. Schlesinger v. Sachs* (Dec. 13, 2023, No. G061838) ___Cal.App.5th___ [2023 Cal. App. LEXIS 959, 2023 WL 8615795.)

28. Additionally, in *People v. Sachs* and the related *Schlesinger v. Mission Viejo*, the Orange County Superior Court issued an order awarding attorneys' fees in the amount of $363,842.40, and approving my then-current hourly rate. As noted for the Court, my hourly rate at the outset of that case was $600, but has since increased. A true and correct copy of the order awarding attorneys' fees in that case is attached hereto as **Exhibit 7**.[1]

29. In 2022, I represented John Briscoe in a matter challenging the rebuttal statement to a ballot measure amending the charter of the City of Huntington Beach, the matter of *Briscoe v. Estanislau*, OCSC Case No. 30-2022-01273424-CU-WM-WJC. The Court awarded my attorneys' fees in that matter at my then current rates. A true and correct copy of the order awarding attorneys' fees in that case is attached hereto as **Exhibit 8.**

30. I was lead counsel in *People ex. Rel. Wright v. Shaw*, Orange County Superior Court Case No. 30-2022-01255279-CU-MC-CJC, where the Orange County Superior Court, Hon. Martha Gooding, presiding, issued a Temporary Restraining Order removing Orange County Board of Education member Tim Shaw from office through the end of his appointed term, June 30, 2022.

31. My customary billing rate is $750 per hour.

---

[1] The Court entered a similar award for attorneys' fees in the related *Schlesinger v. Mission Viejo* matter.

32. Attached hereto as **Exhibit 9** is a true copy of the Fitzpatrick Attorney Fees Matrix. This matrix, published by the United States Attorney for the District of Columbia, is the successor to the "Laffey Matrix," which in conjunction with Department of Labor Locality Pay Tables, has been utilized throughout the country to determine a reasonable hourly rate for purposes of awarding prevailing party attorney fees.

33. The Fitzpatrick Matrix provides for an hourly rate of $758 during the years 2022-2023, for an attorney with 23 years of experience, and $652 per hour for attorneys with 12 years of experience. The hourly rates for me and Mr. Murdock are all lower than the rates in the Fitzpatrick Matrix based on years of experience, and the time spent on this matter was reasonable and necessary.

34. A true and correct copy of BLG's time records for services provided in this case through the date of this motion are attached hereto as **Exhibit 10**. These entries represent a true and correct summary of the time and fees that Defendants have incurred to BLG in this matter. Because only one attorney from BLG has provided services to Defendants in this action, the attached time records should satisfy section X.F of the Court's standing order to provide two summaries of time spent—one organized by task and one organized by attorney.

35. Defendants retain their rights to attorney-client privileged communications in this matter. Accordingly, the invoices have been redacted to remove any sensitive attorney-client communications on the billing entries. Invoices are prepared monthly and presented to the client for payment pursuant to a written retainer agreement. In addition, BLG regularly exercises billing discretion in invoicing and billing its clients. In numerous instances, hours are written down or written off. The total amount of fees BLG incurred as reflected in these entries is $33,300.00 .

36. In addition, I expect to incur 14 hours of time in preparing a Reply to Plaintiff's anticipated opposition to this motion and appearing on the motion for attorneys' fees, for a total of $10,500.

37. In sum, Defendants will have incurred attorneys' fees payable to BLG in the amount of $43,800.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on November 20, 2024.

_____
Lee K. Fink