**ANDRADE GONZALEZ LLP**
SEAN A. ANDRADE (SBN: 223591)
sandrade@andradefirm.com
HENRY H. GONZALEZ, (SBN: 208419)
hgonzalez@andradefirm.com
2020 East 7th St.
Los Angeles, California 90021
Tele: (213) 986-3952 | Fax: (213) 995-9696

Christian Contreras, Esq. (SBN: 330269)
cc@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000 | Fax: (323) 597-0101

Attorneys for Defendant,
CALIFORNIA LULAC STATE ORGANIZATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISCTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| REPRESENTATIVE MATT GAETZ, ET AL<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF RIVERSIDE, ET AL<br><br>Defendants. | Case No. 5:23-cv-01368-HDV-SHKx<br>[Assigned to the Honorable Hernan D. Vera]<br><br>**DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME**<br><br>Date:    February 6, 2025<br>Time:   10:00 AM<br>Place:   Courtroom 5B<br><br>Filed concurrently with:<br>• Declaration of Sean A. Andrade<br>• Declaration of Christian Contreras<br>• [Proposed] Order |

DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEYS' FEE

**TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 6, 2025, at 10:00 a.m., or as soon as thereafter as this matter may be heard in, Courtroom 5 of the United States District Court of the Central District of California, Eastern Division, located at 3470 Twelfth Street, Riverside, CA 93501, Defendant California LULAC State Organization ("LULAC"), by and through its undersigned counsels of record, will and hereby does move for an order awarding (1) Andrade Gonzalez LLP ("Andrade Gonzalez") its reasonable prevailing-party attorneys' fees in the amount of $120,953.00 plus $42.50 in costs, and (2) Mr. Christian Contreras his reasonable prevailing-party attorneys' fees in the amount of $33,937.50, which includes the estimated fees that will be expended in preparing and litigating this motion and LULAC's memorandum of costs, pursuant to 42 U. S. C. § 1988 and Fed. R. Civ. P. 54(d)(2).

The grounds for LULAC's motion are that LULAC is one of the prevailing parties in this action, having defeated all of the causes of action brought against LULAC by Plaintiffs; and LULAC is statutorily entitled to recover all of its reasonable attorneys' fees from Plaintiffs pursuant to 42 U. S. C. § 1988.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Sean A. Andrade, Declaration of Christian Contreras and all exhibits thereto, the concurrently lodged proposed order, all other pleadings, papers, and orders on file in this action, and such other arguments or evidence that the Court may consider at or before the hearing on this motion.

DATED: November 20, 2024

ANDRADE GONZALEZ LLP

By: _____
SEAN A. ANDRADE
HENRY H. GONZALEZ
Attorneys for Defendant
CALIFORNIA LULAC STATE
ORGANIZATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Congressional Representatives Matt Gaetz and Marjorie Taylor Greene (collectively "Plaintiffs") claimed that LULAC and several other nonprofit organizations (including the National Association for the Advancement of Colored People, the League of Women Voters Riverside and Unidos for La Causa, collectively the "Nonprofit Defendants") conspired to deprive them of their civil rights in violation of 42 U. S. C. § 1985(3) – also known as the Ku Klux Klan Act of 1871. The Court granted the various Motions to Dismiss by the Nonprofit Defendants without leave to amend, ending the case against them.

Plaintiffs also sued the City of Riverside and City of Anaheim ("collectively the "City Defendants") under 42 U.S.C. § 1983 for viewpoint discrimination in violation of the First Amendment. The Court denied the City Defendants' Motions to Dismiss, finding that Plaintiffs had stated a viable claim against them. Subsequently, the case against the City Defendants has been resolved following Plaintiffs' Stipulation to Dismiss. As such, pursuant to 42 U. S. C. § 1988, LULAC and other Nonprofit Defendants may now move to recover their attorneys' fees from Plaintiffs.

LULAC is a nonprofit organization that depends heavily upon volunteers, grants, and donations. Having been forced to expend its limited funds to defend against Plaintiffs' frivolous action, LULAC brings this motion to recover the reasonable attorneys' fees of its counsel. As such, LULAC respectfully requests this Court grant its Motion for Attorneys' Fees in the amount of $154,933.00 in accordance with 42 U. S. C. § 1988.

## II. ARGUMENT

### A. As The Prevailing Party Against Plaintiffs, LULAC is Entitled to a Reasonable Attorney's Fee.

Under 42 U. S. C. § 1988, "the court, in its discretion, may allow the prevailing party [in civil rights actions] a reasonable attorney's fee as part of the costs[.] 42 U.S.C. § 1988(b); *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012). Congress enacted Section § 1988, in part, "to protect defendants from burdensome litigation having no legal or factual basis." *Fox v. Vice*,

563 U.S. 826, 833 (2011). There is no question here that LULAC is the prevailing party. The Court granted its Motion to Dismiss as to all claims against it, without leave to amend.

A prevailing defendant may recover attorney's fees under 42 U.S.C. § 1988 when the Court finds that a plaintiff's action was frivolous, unreasonable, or without foundation. *Fox*, 563 U.S. at 833; *Citizens for Free Speech, LLC v. County of Nevada*, 953 F.3d 655, 658 (9th Cir. 2020). In making this determination, the Court examines a plaintiff's claims as they existed at the time of filing. *Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 975-76 (9th Cir. 2011). But a plaintiff can violate the standard at "any point during the litigation, not just at its inception," by continuing to press meritless claims the result of which are apparent. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007). It is unnecessary that each claim has been frivolous. *Fox*, 563 U.S. at 834; *Harris*, 631 F.3d at 975-76. And subjective bad faith is not required; meritless, groundless claims are sufficient on their own. See, e.g., *Harris*, 631 F.3d at 975-76; *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980). Claims can be meritless when they lack a basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Galen*, 477 F.3d at 666; *Amedee Geothermal Venture I v. Lassen Mun. Util. Dist.*, 8 F. Supp. 3d 1211, 1214 (E.D. Cal. 2014).

The Court need look no further than its Order granting LULAC's Motion to Dismiss to determine that a fees award for LULAC is appropriate on all three bases for defense fees under 42 U.S.C. § 1988: frivolousness, unreasonableness, and lacking foundation.

To state a conspiracy claim, a plaintiff must allege specific facts establishing a conspiracy; mere allegations of independent parallel conduct are insufficient. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556 (2007); *Olsen v. Idaho St. Bd. of Med.*, 363 F.3d 916, 929 (2004); *Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015 (N.D. Cal. 2014). Plaintiffs here did not. The Court determined that, stripped of pretense, all Plaintiffs claim is that LULAC and the other Nonprofit defendants engaged in independent political speech pressuring government defendants to cancel Plaintiffs' rally. *See* Exhibit 1 to Declaration of Sean A. Andrade ("Order") at 3, 14–17. The Court found Plaintiffs' First Amended Complaint was

"stunningly deficient" and did not amount to "specific factual allegations of a plausible conspiracy between Defendants." *Id.* at 3, 15.

Plaintiffs' other theories fared no better. A claim under Section 1985(3)'s Equal Protection Clause requires racial animus. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). But Plaintiffs' allegations of animus in support of their equal protection claim are a "thin gruel" of conclusions that boiled down to political, rather than racial, hostility. *See* Order at 19. And, as the Court noted, Section 1985(3)'s support or advocacy clause requires targeting of specific voters. *Id.* at 20-21; *see Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 110, 126 (S.D.N.Y. 2023). Here, however, the Court found no allegations at all about intimidation of a specific voter. *See* Order at 19-21.

For all those reasons, Plaintiffs' claims against LULAC were so frivolous, unreasonable, and lacking in foundation that fees are justified. No non-conclusory, specific facts (even accepting Plaintiffs' own allegations as true) showed that LULAC and the other Nonprofit defendants acted in concert, let alone that they had a "meeting of the minds" establishing a conspiracy. *Id.* at 3, 14–21. None of the alleged facts establish racial, as opposed to political, animus. *Id.* And no specific facts show that any specific voter was intimidated away from lending support or advocacy. *Id.*

As the Court stated in dismissing LULAC and other Nonprofit Defendants from this case, "[t]he effect of Plaintiffs' unprecedented and stunningly deficient pleading—haling nine civil rights groups into federal court for speaking out against an event—should shock in equal measure civic members from across the political spectrum." *Id.* at 3:20-22. "Plaintiffs' misguided effort to settle political scores against these civic organizations" threatens not only to turn 42 U. S. C. § 1985(3) into a general federal tort law, but it also threatens chilling the political counter-speech of such organizations by the threat of federal litigation against them, and the resulting need to retain counsel to defend themselves or face the ruinous potential of default judgment. This is the exact situation in which a prevailing Defendant should be awarded a reasonable attorney's fee under 42 U. S. C. § 1988. The claims were completely

meritless and void of any specific allegations. Without any reasonable basis to believe that LULAC was involved in the conspiracy they alleged, Plaintiffs should not have sued LULAC and forced it to retain legal counsel and incur legal fees to defend itself.

### B. The Attorneys' Fees Incurred in LULAC's Successful Defense of this Action Were Reasonable.

Both Federal and California courts have adopted the "lodestar" method for determining reasonable attorneys' fees, "i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (concerning attorneys' fee awards under 42 U.S.C. § 1988). "The reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp.* 22 Cal. 4th 1084, 1095; see also *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 701 (2014) ("The reasonable market value of the attorney's services is the measure of a reasonable hourly rate.")

Under the lodestar method, a party seeking to recover attorneys' fees is entitled to compensation for all hours reasonably incurred. *Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 446 (1982) (citing *Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977)). "[A] computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *PLCM Grp.*, 22 Cal. 4$^{th}$1084, 1095 (internal quotation marks omitted).

Upon determining the lodestar, the district court may then adjust [the lodestar] upward or downward based on a variety of factors." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). These factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the

nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.*

"The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008).

The fee applicant bears the burden of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). "[T]he proper reference point in determining an appropriate fee award is the rate charged by private attorneys in the same legal market as prevailing counsel . . . ." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). As a general rule, the forum district represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). In *L.H., et. al. vs. Schwarzenegger*, 645 F. Supp. 2d 888, 893 (E.D. Cal. 2009), the court noted that "the relevant legal community is that in which the forum district is located" (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)), and that a reasonable rate should reflect not only the market rates, but the skill and experience of the prevailing party's counsel. "Affidavits of the plaintiffs' attorney . . . and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

As with the hourly rate, the party seeking fees has the "burden of showing the time spent and that it was reasonably necessary to the successful prosecution of" the case. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). This requires "evidence supporting those hours." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-946 (9th Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

Here, Andrade Gonzalez's lodestar figure is $120,953.00 plus $42.50 in costs for messengering the motion to the Court, while Mr. Contreras' lodestar figure is $33,937.50, which calculates the hours expended by reasonable standard hourly rates applicable to the

attorneys and non-attorney professionals who performed services for LULAC in connection with this action. As explained below, LULAC's counsel agreed to handle the matter on a pro bono basis with Andrade Gonzalez agreeing to heavily discount its normal hourly rates far below the fair market value of their services. *See* Exhibit 3 to Declaration of Sean A. Andrade (Redacted Engagement Agreement). However, Plaintiffs do not get the benefit of any pro bono work or discounts, and LULAC is entitled to seek the full lodestar figures, *Pasternack v. McCullough*, 65 Cal. App. 5th 1050, 1058 (2021), along with the fees it has incurred since then and will incur until this motion is resolved. Both Mr. Andrade and Mr. Conteras have submitted declarations attesting to their hours spent in the successful prosecution of this action.

        i.      <u>Andrade Gonzalez's hourly rates were reasonable and consistent with billing rates in Los Angeles.</u>

The county in which the trial court is situated represents the relevant legal community for determining a lodestar figure. *See Altavion, Inc. v. Konica Minolta Sys., Lab., Inc.*, 226 Cal. App. 4th 26, 71–72 (2014).

LULAC's lead counsel in this matter was Sean A. Andrade, managing partner of Andrade Gonzalez LLP. Mr. Andrade managed, supervised, and executed all aspects of the litigation, including supervising the conducting of the necessary research and the drafting and finalizing of the briefing on the critical motion to dismiss as well as preparation for the hearing. Henry H. Gonzalez, also a partner at Andrade Gonzalez, also assisted, but billed only 0.8 hours on this case. For much of the action, only one Andrade Gonzalez associate staffed the matter. Changes were made to associate staffing only when associates left Andrade Gonzalez. Mr. Andrade, Mr. Gonzalez, and the associate staffed on the matter at any given time constituted LULAC's core legal team at Andrade Gonzalez. LULAC respectfully submits that, for a case of this level of complexity with a novel (although poor) legal theory, the core legal team of mostly one partner, and one associate was reasonable, appropriate, and efficient.

To the extent possible and when appropriate, Andrade Gonzalez delegated and assigned tasks to the assigned associate or when possible, to the assigned paralegal, who could charge lower hourly rates, resulting in substantial savings to LULAC and, by extension, to Plaintiffs on

DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEYS' FEES

this fee motion. The total hours expended by, and hourly rates of, each Andrade Gonzalez professional who billed to this matter through October 31, 2024, and whose time was billed to LULAC are contained in Exhibit 2 (Billing Summary Report), Exhibit 3 (Redacted Engagement Agreement), and Exhibit 4 (Chart for Billing Summary Totals at Full Rate) to the Declaration of Sean A. Andrade.

As shown in the concurrently filed declaration and its exhibits, Andrade Gonzalez agreed to provide heavy discounts from its normal hourly rates, which are far below the customary costs and fair market value for the services. However, Andrade Gonzalez's normal hourly rates of $765 for partners, $635 for associates, and $255 for paralegals are reasonable within the relevant community of Los Angeles County for high-stakes and complex litigation such as this action. Not only did LULAC acknowledge the firm's regular hourly rates, but they are in line with counsel for other non-profit defendants also seeking to recover their attorneys' fees. Indeed, substantially higher hourly rates have been deemed to be reasonable in other cases. *See, e.g., Chodos v. Borman*, 239 Cal. App. 4th 707, 711 (2015) (referencing a jury finding that $1,000 per hour for a Los Angeles-based litigator was reasonable). *See also, e.g., Netlist Inc. v. Samsung Elecs. Co., Ltd.*, 341 F.R.D. 650, 675 (C.D. Cal. Jun. 13, 2022) (approving partner rates of between $1,160 to $1,370 and associate rates of between $845 to $1,060 per hour); *Yuga Labs, Inc. v. Ripps*, 2024 WL 489248, at *3-4 (C.D. Cal. Jan. 11, 2024) (billing rates of $1,135-$1,290 for partners and counsel and $640-$1,030 for associates are reasonable).

Furthermore, the billing summary details the time spent by partners and associate attorneys, as well as by paralegals and other support staff who performed necessary legal services. *See Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914, 951 (1985) (explaining that secretarial and paralegal services are "necessary support services for attorneys [that] are includable within an award of attorney fees"). The detailed time entries set forth in Andrade Gonzalez's billing summary reflect and establish that LULAC's attorneys and other professionals reasonably, efficiently, and successfully litigated every aspect of the case.

However, as stated above, the discounted hourly rates that Andrade Gonzalez provided to LULAC do not accurately represent the customary cost or fair market value of the legal services provided. As such, awarding fees based on the discounted rate would undermine the purpose of 42 U.S.C. § 1988, which is to ensure that attorneys can sustain their practices while representing clients in civil rights cases.

Courts have consistently held that fees awarded under 42 U.S.C. § 1988 should be based on the reasonable hourly rate for the services rendered, rather than the discounted rate. *See Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 701 (2014) ("The reasonable market value of the attorney's services is the measure of a reasonable hourly rate."). Therefore, Plaintiffs are not entitled to Andrade Gonzalez's discounted rates.

Andrade Gonzalez is a boutique litigation firm led by Mr. Andrade and Mr. Gonzalez, who both attended Ivy League Law Schools, University of Pennsylvania Law School and Harvard Law School. The firm's standard attorney rates are customary for a firm of its size and stature in Los Angeles. *See Altavion, Inc. v. Konica Minolta Sys., Lab., Inc.*, 226 Cal. App. 4th 26, 71–72 (2014). For years, Andrade Gonzalez has also been nationally and internationally ranked and recognized by many leading legal publications and organizations. Andrade Gonzalez has a 2024 Tier 1 ranking as one the Best Law Firms by BestLawyers for Commercial Litigation and a Band 4 international ranking by Chambers and Partners for Insurance: Policyholder in the U.S. Andrade Gonzalez is also a 2024 Recommended Firm by Benchmark Litigation, and it was named a 2023 Top Boutique by the Los Angeles & Daily Journal. Partner Sean Andrade is individually ranked by Chambers and has been named A Leader of Influence for Litigators & Trial Attorneys and Top Minority Attorney by the Los Angeles Business Journal.

Mr. Andrade and the Firm also have a history of pro-bono and civil rights work experience. Aside from Mr. Andrade's prior work for nearly three years with the Mexican American Legal Defense and Educational Fund (MALDEF), a national civil rights organization, he and the Firm were proudly selected to prepare and file an amicus brief in the *Texas v. United States* litigation challenging President Obama's Executive Action on


immigration. The Firm's brief, which was filed on behalf of Los Angeles Mayor Eric Garcetti, N.Y. Mayor Bill de Blasio, and approximately 30 other mayors from major cities across the country, including Houston, Philadelphia, San Francisco, Seattle, Sacramento, and St. Louis, described for the court's consideration the immeasurable benefits and contributions that immigrants make to our Nation's cities. Mr. Andrade also worked on various other high profile amicus briefs in other civil rights cases and two of the briefs were on behalf of Los Angeles Unified School District, the nation's second largest school district, and filed in the United States Supreme Court and the California Court of Appeal.

Mr. Andrade attests that Andrade Gonzalez has spent 176.40 hours of legal work. Mr. Andrade also anticipates spending another (20) hours on this motion, analyzing the opposition, and drafting a reply, and arguing at the hearing. Therefore, pursuant to a lodestar multiplier, Mr. Andrade requests $120,593.00 in attorneys' fees plus $42.50 in expenses. Under California law, parties who qualify for fees should recover compensation for "'all the hours reasonably spent.'" *State Farm Gen. Ins. Co. v. Lara* (2021) 71 Cal.App.5th 197, 218.

    ii. Christian Contreras hourly rates were reasonable and consistent with billing rates in Los Angeles.

As explained in his concurrently filed declaration, Christian Contreras specializes in civil rights litigation. Since May of 2021, Mr. Contreras has managed and operated his own law firm. Although Mr. Contreras is only in his fifth year of practice, he has tried many cases as sole counsel or lead counsel and has obtained impressive results for his clients at trial. Indeed, in just five years of practicing law, Mr. Contreras has tried twenty (21) trials—a number unheard amongst the trial community post the COVID-19 pandemic. Furthermore, Mr. Contreras teaches civil rights law, having served as a professor of law at People's College of Law in 2022. He has also successfully appealed numerous complex civil rights decisions in the Ninth Circuit, all of which Mr. Contreras single-handedly researched, briefed and argued. Indeed, in terms of federal civil rights cases, in the Central District of California alone, Mr. Contreras one hundred and eleven (111) active cases or cases which have been litigated where he was attorney of record. *See generally* CACD Docket. Mr. Contreras has also litigated many

civil rights cases in state courts, and in other jurisdictions outside of California, including the Zachary Snow case in Boise, Idaho. *See Walton v. City of Boise, et al* (Case No. 1:23-cv-00478-CWD).

Outside of trial, Mr. Contreras has obtained remarkable results for his clients by way of settlement including obtaining a landmark settlement in the amount of $25,000,000.00.

Mr. Contreras attests that he spent 40.25 hours of legal work. Mr. Contreras also anticipates spending five (5) hours analyzing the opposition to this motion and filing a reply. Therefore, pursuant to a lodestar multiplier, Mr. Contreras requests $33,937.50 in attorney's fees. Under California law, parties who qualify for fees should recover compensation for "'all the hours reasonably spent.'" *State Farm Gen. Ins. Co. v. Lara* (2021) 71 Cal.App.5th 197, 218.

### C. LULAC is also Entitled to Recover its Reasonable Attorneys' Fees Incurred in Connection with its Memorandum of Costs and Fee Motion

Under California law, "an award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees." *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 294 (2010); *see also Estate of Trynin*, 49 Cal. 3d 868, 874 (1989) (en banc) ("Where the right to counsel fees is based on statute, recover for fee-related services has been consistently allowed."); *accord Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004); *Serrano v. Unruh*, 32 Cal. 3d 621, 631 (1982). Requests for "fees on fees" are appropriate in Cal. Civ. Code § 1717 fee motions. *See, e.g., Bruckman v. Parliament Escrow Corp.*, 190 Cal. App. 3d 1051, 1062 (1987) (affirming a fee order under Cal. Civ. Code § 1717 and stating that "it has been held that when an amount of attorney's fees is statutorily authorized, the reasonable expenses of preparing the application for fees should be included in the award").

LULAC has attached Andrade Gonzalez's billing summary and Christian Contreras invoice, which reflect fees incurred by LULAC in connection with LULAC's memorandum of costs and the present fee motion. Because LULAC has not yet incurred all of its fees on fees, it will submit a supplemental declaration and additional invoices when it files its reply

memorandum, detailing the additional fees incurred in connection with this motion as of that date.

## III. CONCLUSION

As the prevailing party in this case, LULAC is entitled to recover all of its reasonable attorneys' fees from Plaintiffs. Accordingly, for the reasons expressed above, LULAC respectfully requests that the Court issue an Order granting this Motion and awarding LULAC its reasonable attorneys' fees and costs in the total amount $154,933.00 ($120,953 in attorneys' fees plus $42.50 in costs for Andrade Gonzalez LLP and $33,937.50 for Christian Contreras), which will include the estimated amounts of time to be spent on this motion.

DATED: November 20, 2024

ANDRADE GONZALEZ LLP

By: _____
SEAN A. ANDRADE
HENRY H. GONZALEZ

Attorneys for Defendant,
CALIFORNIA LULAC STATE ORGANIZATION