1  **ANDRADE GONZALEZ LLP**
   SEAN A. ANDRADE (SBN: 223591)
2  sandrade@andradefirm.com
   HENRY H. GONZALEZ, (SBN: 208419)
3  hgonzalez@andradefirm.com
   2020 East 7th St.
4  Los Angeles, California 90021
   Tele: (213) 986-3952 | Fax: (213) 995-9696
5
6
   Christian Contreras, Esq. (SBN: 330269)
7  cc@Contreras-Law.com
   **LAW OFFICES OF CHRISTIAN CONTRERAS**
8  **PROFESSIONAL LAW CORPORATION**
   360 E. 2nd St., 8th Floor
9  Los Angeles, California 90012
   Tel: (323) 435-8000 | Fax: (323) 597-0101
10
11 Attorneys for Defendant,
12 CALIFORNIA LULAC STATE ORGANIZATION
13
14              **UNITED STATES DISTRICT COURT**
15       **CENTRAL DISCTRICT OF CALIFORNIA, EASTERN DIVISION**
16

| | |
|---|---|
| 17  REPRESENTATIVE MATT GAETZ, ET AL | Case No. 5:23-cv-01368-HDV-SHKx [Assigned to the Honorable Hernan D. Vera] |
| 18              Plaintiff, | |
| 19      vs. | **DECLARATION OF SEAN A. ANDRADE IN SUPPORT OF DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEYS' FEES** |
| 20  CITY OF RIVERSIDE, ET AL | |
| 21              Defendants. | |
| 22 | Date:    February 6, 2025 |
| 23 | Time:    10:00 AM |
| 24 | Place:    Courtroom 5B |

25
26
27
28

## DECLARATION OF SEAN A. ANDRADE

I, Sean A. Andrade, declare as follows:

1.    I am an attorney duly licensed to practice law in the State of California and the United States District Court for the Central District of California. I am a partner of Andrade Gonzalez LLP and one of the attorneys of record for Plaintiff in this matter. If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

2.    I submit this declaration in support of Motion for Attorneys' Fees by my client, Defendant League of United Latin American Citizens (LULAC). Attached as Exhibit 1 is a true and correct copy of this Court Order Granting LULAC's Motion to Dismiss.

## BILLING FOR THIS MATTER

3.    In connection with this motion for attorneys' fees and costs, I can attest that my law firm, Andrade Gonzalez LLP, maintained contemporaneous time records and mandated the following of time-keeping practices to track the legal work and time spent on this case. I personally performed the work attributed to me within the billing entries and can personally attest that the hours I spent on this case have been reasonably expended in pursuit of our client's interests in the instant litigation. I also supervised and/or worked with all others on this matter and exercised billing judgment to reduce or write off unproductive time or time that would not ordinarily be charged to a fee-paying client.

4.    Based on the Billing Summary Report showing all of the billing entries to date, my firm, Andrade Gonzalez LLP, has already spent 176.40 hours of billable time in connection with tasks reasonably necessary to the favorable defense and resolution of this action. I anticipate and estimate that we will spend an additional (15) hours of associate time and five (5) hours of my time in reviewing and analyzing the opposition to this motion, preparing a reply, and preparing for and arguing at the hearing. Attached as Exhibit 2 are true and correct copy of Andrade Gonzalez LLP's Billing Summary Report for this case showing all of the billing entries to date.

1

5.    As LULAC is a nonprofit organization that depends heavily upon volunteers, grants, and donations, Andrade Gonzalez agreed to take this case on a pro bono basis, heavily discounting our normal hourly rates of $765 for partners, $635 for associates, and $255 for paralegals. However, our normal hourly rates are usually charged and are reasonable within the community in Los Angeles County for high-stakes and complex litigation such as this action. Attached as Exhibit 3 is our Redacted Engagement Agreement in which LULAC acknowledged our firm's regular hourly rates. Attached as Exhibit 4 is a true and correct Chart for Invoice Totals at Full Rate, which shows, by biller and invoice number, the total amount of the work at our firm's normal rates. The end of the Chart shows the total amount of attorneys' fees being sought is $120,953.00 based on the total hours (196.40) and our normal billing rates. Note: there is also a single cost charge of $42.50 for a messenger fee to take the motion to Court.

6.    As lead counsel for LULAC, I also worked with and coordinated the work of Christian Contreras. Mr. Contreras was very helpful in this matter as he has strong connections to LULAC and has almost exclusively worked on civil rights cases in federal court. He also worked very well together with our firm's assigned associate and having him involved made it possible for me to limit the amount of time I personally spent on the matter, which would have been at a higher rate.

**PROFESSIONAL BACKGROUND**

7.    As for my background, I graduated from the University of Pennsylvania Law School, simultaneously obtaining a Post-Baccalaureate Certificate in Business & Public Policy from The Wharton School. I received my bachelor's degree with honors from the University of California, Irvine. After law school, I joined Baker Hostetler where I practiced in the areas of complex commercial litigation, insurance coverage, and handled novel Constitutional cases involving education law. After Baker Hostetler, I joined a high-profile litigation boutique in Los Angeles and became partner. In May 2013, I joined forces with Henry Gonzalez to launch our own litigation boutique, Andrade Gonzalez LLP.

8.    For years, Andrade Gonzalez LLP has been nationally and internationally ranked and recognized by many leading legal publications and organizations. Andrade Gonzalez has a

2

2024 Tier 1 ranking as one the Best Law Firms by BestLawyers for Commercial Litigation and a Band 4 international ranking by Chambers and Partners for Insurance: Policyholder in the U.S. Andrade Gonzalez is also a 2024 Recommended Firm by Benchmark Litigation, and it was named a 2023 Top Boutique by the Los Angeles & Daily Journal.

9.     I personally have a civil rights background as I spent nearly three years before law school as a Paralegal and Policy Analyst with the Mexican American Legal Defense and Educational Fund (MALDEF), a national civil rights organization. I got to work on many legal cases, including the appeal to Proposition 187.

10.     As an attorney, I have been brought in to handle various high profile amicus briefs in important civil rights cases. Two of the amicus briefs were on behalf of Los Angeles Unified School District, the nation's second largest school district, and were filed in the United States Supreme Court and the California Court of Appeal. In 2015, we were proudly selected to prepare and file an amicus brief in the *Texas v. United States* litigation challenging President Obama's Executive Action on immigration. The Firm's brief, which was filed on behalf of Los Angeles Mayor Eric Garcetti, N.Y. Mayor Bill de Blasio, and approximately 30 other mayors from major cities across the country, including Houston, Philadelphia, San Francisco, Seattle, Sacramento, and St. Louis, described for the court's consideration the immeasurable benefits and contributions that immigrants make to our Nation's cities.

11.     I am one of the few partners at a boutique that is individually ranked by the international firm of Chambers & Partners. I was named a "Leader of Influence" for Litigators & Trial Attorneys and "Top Minority Attorney" by the Los Angeles Business Journal. I was also honored by *Benchmark Litigation* in its 2023 rankings and have been recognized for the past seven years by *Thomson Reuters* on its list of Southern California "Super Lawyers" based on my high degree of peer recognition and achievements.

## PROFESSIONAL BACKGROUND OF OTHERS

12.     Henry H. Gonzalez, my co-founding partner at Andrade Gonzalez, also helped supervise this matter, although he did not bill much time. He graduated from Harvard Law School, and received his Bachelor's degree in Political Science from the University of

3

California, Berkeley with honors. Mr. Gonzalez began his career at Munger Tolles where he was on the team that represented Southern California Edison Company in connection with the energy crisis in California, including regulatory proceedings, federal litigation against the California Public Utilities Commission, and defense of several private actions seeking payment. Mr. Gonzalez was recognized on the 2023 and 2024 "Best Lawyers" list for Commercial Litigation.

13.     Kedar S. Vishwanathan, a former Associate at Andrade Gonzalez, graduated from Columbia Law School as a Harlan Fiske Stone Scholar with a Master of Laws (LLM). Kedar is licensed to practice law in both California and New South Wales, Australia. He previously obtained his J.D. with Distinction from the University of New South Wales School of Law, where he was awarded the Juris Doctor Scholarship for Academic Excellence. He also obtained a B.A. with First Class Honors and a Ph.D. from the University of Sydney.

14.     Nneka A. Mbadugha, an Associate at Andrade Gonzalez, earned her LL.B. from BPP Law School in England, her LL.M. from University of Southern California, Gould School of Law, and her B.L. from the Nigerian Law School. Ms. Mbadugha is licensed to practice law in both California and Nigeria.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on November 20, 2024, at Los Angeles, California.

SEAN A. ANDRADE

DECLARATION OF SEAN A. ANDRADE IN SUPPORT OF DEFENDANT CALIFORNIA LULAC
STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1.

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 7 of 41    Page
                                     ID #:1636
Case 5:23-cv-01368-HDV-SHK    Document 95    Filed 03/22/24    Page 1 of 22    Page ID #:871

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Representative Matt Gaetz, et al.<br><br>Plaintiff,<br><br>v.<br><br>City of Riverside, et al.<br><br>Defendant. | Case No. 5:23-cv-01368-HDV (SHKx)<br><br>**ORDER DENYING MUNICIPAL DEFENDANTS' MOTIONS TO DISMISS [DKT. NOS. 44 AND 51] AND GRANTING NONPROFIT DEFENDANTS' MOTIONS TO DISMISS [DKT. NOS. 33, 34, 37, AND 69]** |

## I.    INTRODUCTION

This case arises out of a 2021 political rally that Plaintiffs[1] allege was impermissibly cancelled by Defendants City of Anaheim and City of Riverside (the "Municipal Defendants") because of their disagreement with Plaintiffs' political views.  Plaintiffs assert that the Municipal Defendants succumbed to public pressure and violated Plaintiffs' First Amendment rights by instructing their agents or employees to cancel the planned event on the basis of pretextual reasons. Plaintiffs also contend that a large group of civil rights groups (the "Nonprofit Defendants")[2] conspired with the Municipal Defendants to achieve this common goal.

Before the Court are a collection of motions to dismiss that include the Municipal Defendants' Motions to Dismiss Section 1983 claims under Federal Rule of Civil Procedure 12(b)(6) ("Section 1983 Motions") [Dkt. Nos. 44 and 51], and the Nonprofit Defendants' Motions to Dismiss Section 1985 claims under Fed. R. Civ. P. 12(b)(6) ("Section 1985 Motions") [Dkt. No. 33, 34, 37, and 69] (collectively "Motions").  For the reasons discussed below, the Court concludes that Plaintiffs have sufficiently alleged the necessary elements of a Section 1983 claim against the Municipal Defendants.  Plaintiffs adequately allege that the Municipal Defendants delegated to their respective agents the authority to cancel the rally (and/or ratified the relevant conduct after the fact) and that the event cancellations were expressly predicated on viewpoint discrimination.  The Section 1983 Motions by the Municipal Defendants are therefore denied.

In contrast, Plaintiffs' Section 1985 claims against the Nonprofit Defendants suffer from

---

[1] Plaintiffs consist of Representative Matt Gaetz, who represents Florida's 1st congressional district, Representative Marjorie Taylor-Greene, who represents Georgia's 14th congressional district, their joint fundraising committee Put America First Joint Fundraising Committee ("Put America First"), and their respective campaign committees Friends of Matt Gaetz and Greene for Congress. Additionally, Plaintiffs seek to bring this action on behalf of audience members who planned to attend the July 17, 2021 political rally but were purportedly unable to do so.

[2] Nonprofit Defendants consist of League of Women Voters, the National Association for the Advancement of Colored People ("NAACP"), the League of United Latin American Citizens ("LULAC"), and Unidos for La Causa ("Unidos"), all of whom filed Motions to Dismiss.  Other nonprofit defendants include Defendants Women's March Action, Riverside County Democratic Party, Antiracist Riverside, and Occupy Democrats, none of whom filed motions.

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 9 of 41    Page
Case 5:23-cv-01368-HDV-SHK    Document 95-1 Filed 03/22/24    Page 3 of 22    Page ID #:873
ID #:1638

1    numerous fatal deficiencies.  Chief among them is the complete lack of any alleged facts to support a

2    "meeting of the minds" as required for a conspiracy claim.  *Frazier v. Int'l Longshoremen's Union*

3    *Loc. No. 10*, 116 F.3d 1485, 1997 WL 349139, *3 (9th Cir. 1997).  "A mere allegation of conspiracy

4    without factual specificity is insufficient" for Section 1985(3) liability.  *Karim-Panahi v. Los*

5    *Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).  Indeed, "independent parallel behavior"

6    standing alone is not enough.  *Reichardt v. Payne,* 396 F. Supp. 1010, 1019 (N.D. Cal. 1975), *aff'd*

7    *in part, remanded in part sub nom. Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499 (9th Cir.

8    1979).

9         Here, the Complaint—even charitably construed with all reasonable inferences drawn in

10    Plaintiffs' favor—is utterly devoid of any specifics plausibly alleging such an agreement.  The

11    gravamen of Plaintiffs' claims against the Nonprofit Defendants is, both legally and literally, a

12    conspiracy theory that relies purely on conjecture.  And without an unlawful conspiracy, all that is

13    left to aver against the Nonprofit Defendants are the unremarkable allegations that they exercised

14    their *own* First Amendment rights to lobby for the cancellation of the event.  That is protected.  As

15    the Supreme Court recently pointed out, "[t]he text and original meaning of those Amendments, as

16    well [the Supreme] Court's longstanding precedents, establish that the Free Speech Clause prohibits

17    only *governmental* abridgement of speech. The Free Speech Clause does not prohibit *private*

18    abridgement of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019)

19    (emphasis in original).

20         The effect of Plaintiffs' unprecedented and stunningly deficient pleading—haling nine civil

21    rights groups into federal court for speaking out against an event—should shock in equal measure

22    civic members from across the political spectrum.  Indeed, Plaintiffs' claims vis-à-vis the Nonprofit

23    Defendants are eerily reminiscent of Justice White's warning in *United Bhd. of Carpenters, et al. v.*

24    *Scott* that, "[i]f [Plaintiffs'] submission were accepted, the proscription of § 1985(3) would arguably

25    reach the claim that a political party has interfered with the freedom of speech of another political

26    party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings."

27    463 U.S. 825, 836 (1983).  The text of Section 1985(3) does not warrant converting the statute into a

28

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 10 of 41    Page
Case 5:23-cv-01368-HDV-SHK    Document 95-1 filed 03/22/24    Page 4 of 22    Page ID #:874
ID #:1639

"general federal tort law," *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993), and Plaintiffs' misguided effort to settle political scores against these civic organizations threatens to do just that.  The Section 1985 Motions by the Nonprofit Defendants are therefore granted.

**II.    BACKGROUND[3]**

On July 8, 2021, Plaintiff Put America First contracted with Pacific Hills Banquet and Catering to host a political rally for Representatives Matt Gaetz and Marjorie Taylor-Greene for the next week on July 17, 2021 in Laguna Hills, California.  FAC ¶ 25.  But after the owner received a flurry of phone calls and emails regarding the event, Pacific Hills cancelled the contract the next day. *Id.* ¶ 26.  On July 14, 2021, three days before the scheduled event, Put America First contracted with Defendant Raincross Hospitality Management Corp. ("Raincross") to rent the Riverside Convention Center—which is owned by Defendant Riverside and operated by Raincross—for the political rally still scheduled for July 17, 2021.  *Id.* ¶ 27.

Over the next week, many members of the public, including some of the Nonprofit Defendants, made statements and threatened action in support of Defendant Riverside canceling the event—including Defendant LULAC's proposed boycott of the Riverside Convention Center and Defendant NAACP's plan to register for tickets without any intention of showing up to the rally.  *Id.* ¶¶ 29, 35–38.  On July 16, 2021, Defendant Raincross notified Plaintiffs that it would not "proceed with the event" because the Certificate of Insurance was in the name of "Green for Congress, Inc." instead of "Put America First"—Plaintiffs assert this reason was pretextual and allege the true reason for the cancellation was that Riverside was hostile to Plaintiffs' political viewpoints.  *Id.* ¶¶ 29–31.

Later that day, Plaintiff Put America First contracted with The Grand Theater, a private venue in Anaheim, to host the political rally, signing the contract the night before the rally was to be held.  FAC ¶¶ 39–40.  Once again, after outcry and lobbying from members of the public, Plaintiffs' political rally was canceled.  *Id.* ¶ 43.  Oscar Ochoa, a code enforcement officer employed by Defendant Anaheim, called The Grand Theater the morning the political rally was scheduled to occur and said the Theater's conditional use permit would be "in jeopardy" if they proceeded with

---

[3] The following facts are taken from Plaintiffs' First Amended Complaint ("FAC") [Dkt. No. 29] and are assumed to be true for purposes of this Motion as required by Fed. R. Civ. P. 12(b)(6).

1   Plaintiffs' political rally. *Id.* ¶ 42. The Grand Theater subsequently cancelled the rally. *Id.* ¶ 43.

2   Plaintiffs were unable to find another location for their political rally, so they instead held a protest

3   outside Riverside City Hall objecting to the cancellation of the rally. *Id.* ¶ 48.

4           Plaintiffs filed this suit on July 13, 2023 on behalf of themselves and the purportedly

5   frustrated attendees of the cancelled event.[4] Complaint [Dkt. No. 1]. On October 2, 2023, Plaintiffs

6   filed their First Amended Complaint ("FAC") [Dkt. No. 29]. Defendants City of Anaheim's and

7   City of Riverside filed Motions to Dismiss the Section 1983 claims under Fed. R. Civ. P. 12(b)(6)

8   [Dkt. Nos. 44, 51]. The Nonprofit Defendants filed Motions to Dismiss the Section 1985 claims

9   under Fed. R. Civ. P. 12(b)(6) [Dkt. No. 33, 34, 37, 69]. Plaintiffs filed consolidated oppositions to

10  the Section 1983 motions to dismiss ("Section 1983 Opp.") [Dkt. No. 75] and the Section 1985

11  motions to dismiss ("Section 1985 Opp.") [Dkt. No. 74]. Municipal Defendants each filed a Reply

12  [Dkt. Nos. 79, 82] to the Section 1983 claims, and the Nonprofit Defendants each filed a Reply [Dkt.

13  Nos. 78, 80, 81, 83] to the Section 1985 claims. The Court heard oral argument on February 1, 2024

14  and took the Motions under submission [Dkt. No. 90].

15  **III.   LEGAL STANDARD**

16          Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim

17  upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain

18  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

19  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

20  (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

21

22  _____

    [4] Third party standing is not typically permitted unless a plaintiff establishes that: (1) the plaintiff has
23  a concrete interest in the outcome of the dispute; (2) the plaintiff has a close relationship with the
    party whose rights it is asserting; and (3) there exists some hindrance to the third party's ability to
24  protect their own interest. *Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995) (quoting
    *Wedges/Ledges of Cal., Inc. v. City of Phx., Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994)). However, in cases
25  that implicate First Amendment rights, the Supreme Court has "relaxed our rules of [third party]
    standing without regard to the relationship between the litigant and those whose rights [they] seek[]
26  to assert precisely because application of those rules would have an intolerable, inhibitory effect on
    freedom of speech." *Eisenstadt v. Baird*, 405 U.S. 438, 445 n.5 (1972). That concern is arguably
27  present here. Out of an abundance of caution on that point, the Court finds that Plaintiffs have met
    the third party standing requirements for purposes of this Motion only.
28

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 12 of 41    Page
ID #:1641
Case 5:23-cv-01368-HDV-SHK    Document 95-1 Filed 03/22/24    Page 6 of 22    Page ID #:876

1    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2    *Iqbal*, 556 U.S. at 678. Only where a plaintiff fails to "nudge[] [their] claims . . . across the line from

3    conceivable to plausible" is the complaint properly dismissed. *Id.* at 680.

4          While the plausibility requirement is not a probability assessment, it demands more than "a

5    sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The determination of whether a

6    complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing

7    court to draw on its judicial experience and common sense." *Id.* at 679.

8    **IV.    DISCUSSION**

9          **A. Section 1983 Claims Against The Municipal Defendants[5]**

10              **1.    Defendant Riverside**

11          Riverside's Motion seeks dismissal on two separate grounds. First, Riverside argues that a

12    Section 1983 claim cannot be maintained because the statements made by its officials are protected

13    by the First Amendment. Riverside Motion at 19 [Dkt. No. 51]. And second, Riverside contends

14    that liability cannot attach here because there are no facts alleged to establish that it delegated final

15    policymaking authority to Raincross, or that it ratified the decision after the fact. *Id.* at 16–18.

16          Riverside's first argument fails because it elides the distinction between protected speech and

17    unlawful acts. It is undoubtedly true that the First Amendment protects the rights of legislators as it

18

19    _____

20    [5] As a preliminary matter, the Court will grant Defendant Riverside and Defendant Anaheim's
      Request for Judicial Notice of: (1) the City of Riverside Charter, section 406; (2) the City of
21    Riverside Charter, Section 413; (3) City of Riverside Resolution No. 23976; (4) the Charter of the
      City of Anaheim; (5) Section 3.04.290 of the City of Anaheim Municipal Code; (6) Section
22    18.66.040 of the City of Anaheim Municipal Code; (7) Sections 18.60.080-18.60.200 of the City of
      Anaheim Municipal Code. *See* City of Riverside Request for Judicial Notice [Dkt. No. 51-1]; City
23    of Anaheim Request for Judicial Notice [Dkt. No. 44-1]; City of Anaheim's Supplemental Request
      for Judicial Notice [Dkt. No. 79-1]. While it "cannot take judicial notice of disputed facts contained
24    in … public records," the Court may take judicial notice of matters of public record. *Khoja v.
      Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied sub nom. Hagan v.
25    Khoja*, 139 S. Ct. 2615 (2019) (*citing Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001),
      *overruled on other grounds, Galbraith v. Cnty. of Santa Clara*, 307 F. 3d 1119, 1125 (9th Cir.
26    2002)). Although the parties disagree about the proper interpretations of the sections of the Charters,
      Municipal Codes, and Resolutions, the "sources['s] [] accuracy cannot reasonably be questioned."
27    Fed. R. Evid. 201(b)(2). The Municipal Defendants' Requests for Judicial Notice are granted. [Dkt.
      Nos. 51-1, 44-1, 79-1].

28

Case 5:23-cv-01368-HDV-SHK     Document 134-1     Filed 11/20/24     Page 13 of 41     Page
ID #:1642
Case 5:23-cv-01368-HDV-SHK     Document 95-1     Filed 03/22/24     Page 7 of 22     Page ID #:877

1  does any other ordinary citizen. *See, e.g., Levy v. City of Santa Monica*, 114 Cal. App. 4th 1252,

2  1255 (2004) ("The First Amendment applies to everyone, even politicians."). But Section 1983 is

3  not concerned about pure speech—liability involves **conduct** by a state actor that violates a

4  constitutional right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing

5  *West v. Atkins*, 487 U.S. 42, 48 (1988)) ("To state a claim under § 1983, a plaintiff must allege two

6  essential elements: (1) that a right secured by the Constitution or laws of the United States was

7  violated, and (2) that the alleged violation was committed by a person acting under the color of State

8  law."). Here, the public statements made by the Riverside's Mayor, Mayor Pro Tem, and City

9  Council concerning the cancellation of the event are not the operative conduct that could give rise to

10  potential liability. No one disputes that they had a right to make those statements.[6] The relevant

11  legal question for purposes of Section 1983 is whether they engaged in any **acts** that violated

12  Plaintiffs' First Amendment right to hold the political rally.

13        Riverside's second argument is more difficult. Municipalities may be held liable under

14  Section 1983 in one of three ways: (1) "when implementation of [municipal] official policies or

15  established customs inflicts the constitutional injury;" (2) "when [...] omissions amount to the local

16  government's own official policy;" or (3) "when the individual who committed the constitutional

17  tort was an official with final policy-making authority or such an official ratified a subordinate's

18  unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. Of Contra Costa*, 591

19  F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. Of Los Angeles*,

20  833 F.3d 1060, 1070 (9th Cir. 2016) (quoting *Monell*, 436 U.S. at 708). "Authority to make

21  municipal policy may be granted directly by a legislative enactment or may be **delegated** by an

22  official who possesses such authority." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (plurality

23

24  [6] Whether the public statements by Riverside's civic leaders can be used as *evidence* of wrongful

25  acts is separate question, and not one that the Court need fully address here. Generally, such
statements have historically been used in Section 1983 cases as evidence of municipal liability, even

26  when made on matters of public interest. *See, e.g. Hernandez v. City of San Jose*, 241 F. Supp. 3d
959, 979–80 (N.D. Cal. 2017), *aff'd in part, dismissed in part*, 897 F.3d 1125 (9th Cir. 2018) (using

27  police chief's statements about the actions of his officers response to a charged political protest as
evidence of municipal liability in a Section 1983 claim); *Fortson v. City of Los Angeles*, 628 F.

28  Supp. 3d 976, 992–93 (C.D. Cal. 2022) (same).

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 14 of 41    Page
ID #:1643
Case 5:23-cv-01368-HDV-SHK    Document 95    Filed 03/22/24    Page 8 of 22    Page ID #:878

1    opinion) (emphasis added).  Plaintiffs' First Amended Complaint relies on the third theory of

2    liability identified above—namely, that Riverside delegated the authority to cancel the event to its

3    agent Raincross, and/or that Riverside ratified the cancellation after the decision was made.

4         Delegation of final policymaking authority may be found where "the official's discretionary

5    decision is [not] 'constrained by policies not of that official's making' and … [not] 'subject to

6    review by the municipality's authorized policymakers.'"  *Christie v. Iopa*, 176 F.3d 1231, 1236–37

7    (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality)).  "The

8    question therefore becomes whether the policymaker merely has delegated discretion to act, or

9    whether it has done more by delegating final policymaking authority." *Id.* at 1236.  The issue as

10   presented here is uncommon since Raincross is a contractor.[7]  *Monell* delegation cases typically

11   concern whether municipal employees have been delegated policymaking authority by state law or

12   their superiors. *See, e.g., id.; Hyland v. Wonder,* 117 F.3d 405 (9th Cir. 1997); *Lytle v. Carl*, 382

13   F.3d 978 (9th Cir. 2004).  But there is no requirement that the delegation be to a public employee,

14   and Defendants do not contend otherwise.

15        Applying this standard, the Court finds that Plaintiffs have sufficiently alleged, at least for

16   pleading purposes, that Defendant Riverside delegated to Raincross final policymaking authority vis-

17   à-vis booking and cancellation of events at the Convention Center. *See, e.g.*, FAC ¶¶ 27, 52.  There

18   is no suggestion anywhere in the pleadings or the briefing that Raincross was subject to a public

19   review process for the booking decisions that it made, or that its decisions were somehow

20   constrained by any City Council resolutions or other policies.  To the contrary, Plaintiffs point to

21   statements by Mayor Pro Tem Gaby Plascencia that she had been "pushing" to get the event

22   cancelled, and argue that these communications evince a belief on the part of Riverside that the

23   ultimate decision was Raincross's to make. *Id.* ¶ 33.  At a minimum, the question of whether

24   Raincross was delegated final policymaking authority involves mixed questions of fact and law that

25   cannot be decided here on a Rule 12(b)(6) motion.

26

27   [7] As one sister court from this district pointed out, "the [C]ourt is aware of no authority imposing
     vicarious *Monell* liability on a municipality for the actions of its private subcontractor." *Martinez v.*
28   *Geo Grp., Inc*., No. ED CV 18-1125-SP, 2020 WL 2496063, at *20 (C.D. Cal. Jan. 7, 2020).

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 15 of 41    Page
ID #:1644
Case 5:23-cv-01368-HDV-SHK    Document 95-1    Filed 03/22/24    Page 9 of 22    Page ID #:879

1    Plaintiffs also contend that Section 1983 liability against Riverside can be predicated on a

2    ratification theory.  FAC ¶ 53; Section 1983 Opp. at 9.  To establish *Monell* liability via ratification,

3    a plaintiff must allege that a final policymaker "knew of and specifically made a deliberate choice to

4    approve" a constitutional violation.  *See* Model Civ. Jury Instr. 9th Cir. 9.7 (2020); *Herd v. Cnty. of*

5    *San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018) ("The policymaker must have

6    knowledge of the constitutional violation and actually approve of it.") (citing *Lytle*, 382 F.3d at 987).

7    A singular decision by a policymaker may be sufficient to trigger Section 1983 liability "even

8    though the decision is not intended to govern future situations, but the plaintiff must show that the

9    triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in

10   question." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009) (quoting *Gillette v.*

11   *Delmore*, 979 F.2d 1342, 1347 (9th Cir.1992)) (citations omitted).  "[P]laintiff[s] must include

12   factual allegations about actions that policymakers took in connection with their 'approval' of the

13   misconduct that would support an inference that they actually ratified the [] alleged misconduct."

14   *Nguyen v. Cnty. of Orange*, No. 822CV01693DOCADS, 2023 WL 4682301, at *3 (C.D. Cal. June 8,

15   2023) (quoting *Mitchell v. Cnty. of Contra Costa*, 600 F.Supp.3d 1018, 1033 (N.D. Cal. 2022)).

16   Here, Plaintiffs point to various statements by members of the Riverside City Council and the

17   Mayor of Riverside—made after the cancellation of the political rally—that arguably support the

18   inference that the cancellation was ratified.  *See* FAC at ¶ 32–34.  These statements are sufficient to

19   plausibly allege municipal liability via ratification, at least for pleading purposes.  *See Hernandez v.*

20   *City of San Jose*, 241 F. Supp. 3d 959, 979–80 (N.D. Cal. 2017), *aff'd in part, dismissed in part*, 897

21   F.3d 1125 (9th Cir. 2018) (holding that a police chief's statements praising the unconstitutional

22   actions of his officers were sufficient to finding municipal liability under *Monell* ratification); *Drum*

23   *v. City of Manhattan Beach*, No. CV 21-8492 PSG (KKX), 2022 WL 19039619, at *5–6 (C.D. Cal.

24   Nov. 8, 2022) (finding City Council vote and statements in support of the termination of defendant

25   due to a disagreement with his prior statements was sufficient to plead *Monell* claim); *St. Maron*

26   *Properties, L.L.C. v. City of Houston*, 78 F.4th 754, 761 (5th Cir. 2023) (finding *Monell* liability via

27   ratification where, among other actions, the mayor and city council members made multiple

28

9

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 16 of 41    Page
ID #:1645
Case 5:23-cv-01368-HDV-SHK    Document 95   Filed 03/22/24    Page 10 of 22    Page ID #:880

1    statements in support of an unlawful taking).[8]

2                           **2.   Defendant Anaheim**

3        Plaintiffs allege that Defendant Anaheim threatened the owners of the Grand Theater—where

4    Plaintiffs had contracted to hold their political rally after it was cancelled in Riverside—through

5    Code Enforcement Officer Oscar Ochoa, who threatened to put the Grand Theater's conditional use

6    permit "in jeopardy" if the event went through.  FAC at ¶ 62.  The Grand Theater's decision to

7    cancel Plaintiffs' political rally is not, on its own, subject to Section 1983 liability because the

8    Theater is a wholly private entity.  Ochoa's alleged threats to revoke the Theater's conditional use

9    permit, however, may be subject to Section 1983 liability if Ochoa coerced the Grand Theater to

10   cancel the event rather than through mere persuasion.  *See Kennedy v. Warren*, 66 F.4th 1199, 1207

11   (9th Cir. 2023).  In *Kennedy*, the Ninth Circuit adopted the Second Circuit's four-factor test to

12   distinguish between permissible government persuasion and impermissible government coercion of

13   third parties in First Amendment litigation.  *Id.* (citing *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th

14   700, 715 (2d Cir. 2022)).

15       To evaluate whether a government official has engaged in impermissible coercion of a third

16   party, courts examine: (1) the government official's word choice and tone; (2) whether the official

17   has regulatory authority over the conduct at issue; (3) whether the recipient perceived the message as

18   a threat; and (4) whether the communication refers to any adverse consequences if the recipient

19   refuses to comply.  *Id.*  Here, the word choice alleged used (putting the Grand Theatre's permit "in

20   jeopardy"), by an official in the very department tasked with code enforcement, can be plausibly

21   interpreted as a credible threat of adverse consequences.  Thus, drawing all inferences in Plaintiff's

22   favor as the Court must for purposes of this Motion, these factors support a finding that

23

24   [8] Riverside cavils that individual statements from Riverside's officials cannot establish ratification
     since liability can only flow from a formal decision by the entire Council itself.  Riverside Reply at
25   10 [Dkt. No. 82].  The Court remains unpersuaded.  Ratification need not be established solely
     through an express act of a municipal legislative or policymaking body.  *See Hyland*, 117 F.3d at
26   416 ("[R]atification does not require formal approval for the purpose of establishing a violation of
     federal law under § 1983.").  As the Ninth Circuit has explained, "To find otherwise would allow
27   municipalities to ratify with impunity the unconstitutional actions of their officers, as long as they
     concealed that ratification by failing to report their actions through official channels."  *Id.*
28

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 17 of 41    Page
ID #:1646
Case 5:23-cv-01368-HDV-SHK    Document 95    Filed 03/22/24    Page 11 of 22    Page ID #:881

1   impermissible coercion has been sufficiently pled.

2          Anaheim's principal defense to this claim is to argue that Section 1983 does not allow

3   *respondeat superior* liability, and that Ochoa (as a fairly low-level Anaheim official) did not have

4   authority to revoke on his own the Grand Theater's conditional use permit.  Anaheim Motion at 18–

5   19.  But this misses the point.  Plaintiff's theory is not that Mr. Ochoa somehow took matters into his

6   own hands and independently made the alleged threat, but that he was *directed* by Anaheim officials

7   to take this action.  *See* FAC ¶¶ 39–47, 66–67; Section 1983 Opp. at 12–15.  If those instructions

8   were given to Mr. Ochoa by Anaheim's authorized policymakers, then Section 1983 liability could

9   certainly attach.  Indeed, the Supreme Court has made this very clear:

10         If the decision to adopt that particular course of action is properly made by that

11         government's authorized decisionmakers, it surely represents an act of official

12         government 'policy' as that term is commonly understood.  More importantly, where

13         action is *directed* by those who establish governmental policy, the municipality is

14         equally responsible whether that action is to be taken only once or to be taken

15         repeatedly.

16   *Pembaur*, 475 U.S. at 481 (emphasis added); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v.*

17   *Brown*, 520 U.S. 397, 404–05 (1997) ("[T]he conclusion that the action taken *or directed by the*

18   *municipality or its authorized decisionmaker* itself violates federal law will also determine that the

19   municipal action was the moving force behind the injury of which the plaintiff complains.")

20   (emphasis added).  The Ninth Circuit has also found that lower-level city officials have final

21   policymaking authority when they were left the responsibility of "internal management" and the

22   policymakers "attempted not to interfere."  *Hyland*, 117 F.3d at 415.

23         All of that is sufficiently alleged here.  As a foundational matter, the FAC alleges that Ochoa

24   "had policy-making authority with respect to code enforcement."  FAC ¶ 63.  The FAC also

25   identifies public statements by Anaheim's official communications channel that the municipality

26   was "looking into" the issue, *id.* ¶¶ 40–41, alleges that officials "pushed for the event to be

27   cancelled," *id.* ¶ 47, and further identifies several statements by Riverside policymakers praising Mr.

28

1    Ochoa's actions immediately afterwards, *see, e.g., id.* ¶ 46 (statement by City Councilmember

2    Moreno thanking Ochoa for his "diligence" in "helping … avert a nightmare,"). *See also id.* ¶ 47.

3    This is more than sufficient to maintain for pleading purposes that Ochoa had final policymaking

4    authority, that his actions were directed by Anaheim as part of its efforts to "look into" the issue,

5    and/or that his actions were subsequently ratified. The Section 1983 claim against Anaheim

6    survives.

7         **B.  Section 1985 Claims Against the Nonprofit Defendants**

8         Title 42 U.S.C. § 1985(3)—also known as the Ku Klux Klan Act of 1871—was enacted to

9    protect southern Black people "from the violence of the vindictive Ku Klux Klan." *Canlis v. San*

10   *Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 720 (9th Cir. 1981). Since then, courts have noted

11   that "it is reasonably clear that the drafters intended to extend the protections under [§] 1985(3) to

12   other groups as well." *Id.*; *see also Reichardt*, 591 F.2d at 505 ("Courts construing [§] 1985(3) have

13   not limited its protection to racial or otherwise suspect classifications.").

14        Section 1985(3) is split into two clauses. The first, known as the "equal protection clause,"

15   makes in unlawful for:

16            two or more persons in any State or Territory [to] conspire or go in disguise on the

17            highway or on the premises of another, for the purpose of depriving, either directly or

18            indirectly, any person or class of persons of the equal protection of the laws, or of equal

19            privileges and immunities under the laws; or for the purpose of preventing or hindering

20            the constituted authorities of any State or Territory from giving or securing to all

21            persons within such State or Territory the equal protection of the laws.

22   The second clause, known as the "support-or-advocacy clause," creates liability for:

23            two or more persons [to] conspire to prevent by force, intimidation, or threat, any

24            citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal

25            manner, toward or in favor of the election of any lawfully qualified person as an elector

26            for President or Vice President, or as a Member of Congress of the United States; or to

27            injure any citizen in person or property on account of such support or advocacy; in any

28

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 19 of 41    Page
ID #:1648
Case 5:23-cv-01368-HDV-SHK    Document 95    Filed 03/22/24    Page 13 of 22    Page ID #:883

1    case of conspiracy set forth in this section, if one or more persons engaged therein do,

2    or cause to be done, any act in furtherance of the object of such conspiracy, whereby

3    another is injured in his person or property, or deprived of having and exercising any

4    right or privilege of a citizen of the United States, the party so injured or deprived may

5    have an action for the recovery of damages occasioned by such injury or deprivation,

6    against any one or more of the conspirators.

7    42 U.S.C. § 1985(3).

8         Plaintiffs aver separate claims against the Nonprofit Defendants under both the "equal

9    protection" and "support-or-advocacy" clauses of Section 1985(3). FAC ¶¶ 75–96. Plaintiffs allege

10   that these Nonprofit Defendants "had a plan" to prevent Plaintiffs from conducting their rally on July

11   17, 2021, and entered into an "agreement and/or meeting of the minds" with the Municipal

12   Defendants to achieve a common goal. *Id.* ¶¶ 76–83, 91–93. The allegations against the Nonprofit

13   Defendants are largely identical and primarily allege that these "organizations … conspired with or

14   sought to influence the GOVERNMENT DEFENDANTS to deprive Plaintiffs of their First

15   Amendment Rights and, through force, intimidation, or threats, sought to deprive individual

16   Plaintiffs from giving their support or advocacy in a legal manner toward or in favor of the election

17   of Plaintiffs." *See id.* ¶ 24.[9]

18   _____

19   [9] The specific allegations against the Nonprofit Defendants (to the extent there are any) are as
     follows. **LULAC**: Defendant LULAC "threatened economic reprisal and statewide/national

20   boycotts of the Riverside Convention Center if officials of Defendant RIVERSIDE did not force
     cancellation" of Plaintiffs' political rally. FAC ¶ 15. **NAACP**: Defendant NAACP is alleged to

21   have "encouraged its supporters to fraudulently register for tickets to the PUT AMERICA FIRST
     rally with no intention of attending, in order to prevent others from attending and to depress

22   attendance, and conspired with one or more other Defendants to deprive Plaintiffs of their
     constitutional rights and deprive Plaintiff prospective audience members from lending support-or-

23   advocacy toward the election of Plaintiffs GAETZ and GREENE, candidates for federal office." *Id.*
     ¶ 16. **Antiracist Riverside**: "Janice Rooths, of Defendant ANTIRACIST RIVERSIDE, urged

24   'friends and allies' to act on the NAACP's suggestion [to register for tickets with no intention of
     intending] and forwarded the NAACP suggestion to Gaby Plascencia, member of the City Council

25   of Defendant RIVERSIDE, who thanked her for her advocacy in getting the event cancelled." *Id.*

26   ¶ 37. **League of Women Voters**: "Defendant LEAGUE OF WOMEN VOTERS RIVERSIDE asked
     that the Mayor and City Council of Defendant RIVERSIDE 'demand that the Riverside Convention

27   Center cancel its agreement to facilitate' the America First rally, threatened 'repercussions,' and

28

1    The Court addresses each claim in turn.

2    **1. The Equal Protection Clause Claim**

3    The equal protection clause of the Ku Klux Klan Act requires: (1) a conspiracy; (2)

4    for the purpose of depriving, either directly or indirectly, any person or class of persons of

5    the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an

6    act in furtherance of this conspiracy; (4) whereby a person is either injured in their person or

7    property or deprived of any right or privilege of a citizen of the United States. *Sever v.*

8    *Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *United Bhd. of Carpenters*,

9    463 U.S. at 828–29). Plaintiffs' Section 1985(3) claim under the equal protection clause fails

10   as a matter of law because the FAC has not plausibly alleged a conspiracy or the required

11   animus.

12   To meet the first element, "the plaintiff must state specific facts to support the

13   existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.

14   1989) (citing *Coverdell v. Dept. of Social and Health Servs.*, 834 F.2d 758, 769 (9th Cir.

15   1987)). "A plaintiff alleging a conspiracy under § 1985(3) must establish: the existence of a

16   conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance of

17   the conspiracy; and a resulting injury." *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998).

18   "[A] conspiracy may be inferred from conduct and need not be proven by evidence of an

19   express agreement." *Ward v. Equal Emp. Opportunity Comm'n*, 719 F.2d 311, 314 (9th Cir.

20   1983). However, "[a] mere allegation of conspiracy without factual specificity is

21   insufficient" for § 1985(3) liability. *Karim-Panahi*, 839 F.2d at 626.

22   Here, even accepting as true all of Plaintiffs' assertions in the FAC, there simply are no

23

24   asked that City Officials 'make the Convention Center staff fully aware of the price to be paid for
     hosting' the event." *Id.* ¶ 38. **Riverside County Democratic Party**: Defendant Riverside County

25   Democratic Party's "Chair, Tisa Rodriquez, urged supporters to call the Riverside Convention
     Center and pressure it to cancel the PUT AMERICA FIRST political rally." *Id.* ¶ 21. **Occupy**

26   **Democrats**: After Defendants RIVERSIDE and RAINCROSS cancelled Plaintiffs' event in
     Riverside, they issued a tweet urging their supporters to '[Retweet] IF EVERY CITY IN THE REST

27   OF [Plaintiffs'] TOUR SHOULD DO THE SAME!'" *Id.* ¶ 23. **Unidos, GRHCC, Women's**

28   **March Action**: No specific allegations.

1   specific factual allegations of a plausible conspiracy between Defendants.  None.  Plaintiffs'

2   Opposition summarizes the relevant conspiracy allegations as follows:

3         [T]he period of the conspiracy spanned the time leading up to the cancellation of the

4         Plaintiffs' political rallies scheduled for July 17, 2021, and the object of the conspiracy

5         was to prevent Plaintiffs from conducting their political rallies due to the viewpoints of

6         the scheduled speakers, Representatives Gaetz and Greene. *See* FAC ¶¶ 76-78, 81-85.

7         Each of the Defendants is plainly identified, *see* FAC ¶ 7, and it is clearly stated that

8         they conspired by means of cancellation of event contracts, threats, intimidation, and

9         collusion to influence same. *See* FAC ¶¶ 50-88. The conspiracy led to the deprivation

10        of Plaintiffs' constitutional rights through the actual cancellation of the rallies, thereby

11        directly impeding their ability to speak and associate freely as guaranteed by the First

12        Amendment. *See* FAC ¶¶ 76-88. The identification of this information is sufficient to

13        plead Plaintiffs' prima facie case for conspiracy under § 1985(3).

14  Section 1985 Opp. at 13.

15        That is not enough.  The allegations of the purported conspiracy, distilled to their essence,

16  amount to the claim that: (1) Nonprofit Defendants lobbied the Municipal Defendants to cancel the

17  events, and (2) Nonprofit Defendants mobilized their members to speak out and potentially boycott

18  the municipalities themselves.  *Id.*  But what is notably missing in the FAC are plausible

19  allegations—with specific facts—that there was a "meeting of the minds" or an "agreement"

20  between the Nonprofit Defendants and the governmental entities.  Although no case is directly on

21  point, where that necessary agreement has not been plausibly alleged this Circuit has not hesitated to

22  dismiss. *See Frazier*, 116 F.3d 1485, 1997 WL 349139 at *3 (allegations "show[] no more than that

23  some of the various defendants occasionally met with each other and may have discussed [Plaintiffs'

24  political rally].  This is not sufficient to support an inference [] of ... a 'meeting of the minds.'");

25  *Lacey v. Maricopa*, 693 F.3d 896, 937 (9th Cir. 2012) ("The conclusory conspiracy allegations ... do

26  not define the scope of any conspiracy involving [Defendants], what role [they] had, or when or how

27  the conspiracy operated."); *see also Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015 (N.D. Cal. 2014)

28

1    ("Plaintiff has not alleged sufficient specific facts regarding the alleged conspiracy, including: (1) a

2    specific agreement between [Defendants]; (2) the scope of the conspiracy; (3) the role of [the

3    Defendants] in the conspiracy; [and] … (4) … how the conspiracy operated.").[10]

4        Plaintiffs argue that Defendants' conspiracy is evidenced by their shared common objective

5    to "impede Plaintiffs and attendees from exercising their First Amendment rights" at the July 17,

6    2021 rally and that the common objective is established by the "strikingly similar character and

7    substance of the threats they made." Section 1985 Opp. at 8–10.  Again, that is legally insufficient.

8    Although a conspiracy can undoubtedly be shown via circumstantial evidence, "to establish violation

9    of Section 1985(3), *plaintiff will have to do more than show independent parallel behavior on the*

10   *part of the defendants.*"  *Reichardt*, 396 F. Supp. at 1019 (emphasis added).  And that is all that has

11   been plausibly alleged here: independent parallel behavior.[11]

12       Indeed, only one non-conclusory fact is alleged about how the Nonprofit Defendants

13

14   ─────────────────────

[10] These factual allegations are far from the types of circumstantial evidence typically sufficient to

15   plead acts in furtherance of a conspiracy under § 1985(3).  *See, e.g., Scott*, 140 F.3d at 1284–85
     (finding a plausible conspiracy to violate plaintiff's rights via "anti-cult deprogramming" under §

16   1985(3) where defendants knowingly hired an involuntary programming expert, met to discuss the
     legal ramifications of abducting and deprogramming the plaintiff, and had previously

17   "deprogrammed" plaintiff's younger siblings); *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d
     1283, 1302 (9th Cir. 1999) (finding § 1985(3) conspiracy between officers of the Oakland police

18   department and agents of the FBI where the police failed to exercise judgement independent of the
     FBI, had a division that cooperated with the FBI, and all parties repeated identical misinformation

19   about the plaintiff); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1545 (9th
     Cir. 1989) (finding § 1985(3) conspiracy where the defendant met with law enforcement about

20   striking members of plaintiff's union and whose desire to have the striking workers arrested came to
     fruition several weeks later after an additional meeting between the defendant and law enforcement);

21   *Allen v. City of Graham*, No. 1:20-CV-997, 2021 WL 2223772, at *8 (M.D.N.C. June 2, 2021)
     (finding a plausible conspiracy to disrupt plaintiff's "March to the Polls" where non-governmental

22   defendants gave orders and assigned duties to City and County employees and governmental
     defendants worked in direct coordination with each other).

23

24   [11] What's more, the alleged threats by the Nonprofit Defendants were purportedly made to the

25   municipal entities—in other words, *to their alleged co-conspirators*.  It strains credulity to argue, as
     Plaintiffs do here, that these threats of economic reprisal if the rally went forward—made to their co-

26   conspirators—are somehow evidence of an agreement with those same entities that were the targets
     of the economic intimidation.  In any event, Plaintiffs do not cite to any case upholding a conspiracy

27   theory on similar facts.

28

1    purportedly worked together in furtherance of the conspiracy.  Plaintiffs assert that "Janice Rooths,

2    of Defendant ANTIRACIST RIVERSIDE, urged 'friends and allies' to act on the NAACP's

3    suggestion [to fraudulently register for tickets] and forwarded the NAACP suggestion to Gaby

4    Plascencia, member of the City Council of Defendant RIVERSIDE, who thanked her for her

5    advocacy in getting the event cancelled."  FAC ¶ 37.  Emails between defendants can help establish

6    conspiracy under § 1985(3).  *Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78,

7    125 (S.D.N.Y. 2023) ("*Wohl II*") (holding that emails between defendants regarding a published

8    robocall to roughly 85,000 phone numbers across the United States established a plausible

9    conspiracy between defendants).  But here, this single email is insufficient to plead a meeting of the

10   minds between the parties.  All that can be plausibly inferred from this communication is that some

11   of the Nonprofit Defendants were forwarding advocacy emails.  It shows absolutely nothing to

12   support an actual agreement with the final policymaking officials (or their agents) who cancelled the

13   rally.[12]  In summary, Plaintiffs' Section 1985(3) claims fails because the conspiracy element cannot

14   be plausibly alleged.

15        In addition, to maintain a claim under the equal protection clause of Section 1985(3), it is not

16   enough to assert invidious racial discrimination; Plaintiffs must also allege that they are a member of

17   a protected class that has been subject to discrimination on that basis.  *Manistee Town Center v. City*

18   *of Glendale*, 227 F.3d 1090, 1095 (9th Cir. 2000) ("A cause of action under the first clause of §

19   1985(3) cannot survive a motion to dismiss absent an allegation of class-based animus."); *Canlis*,

20   641 F.2d at 721 ("The law of this circuit is clear: the plaintiff must be a member of the class

21

---

22   [12] The emptiness of Plaintiffs' conspiracy allegation is further highlighted by two allegations against

23   Defendants NAACP and LULAC.  Plaintiffs allege that LULAC threatened a boycott of the
     Riverside Convention Center if Plaintiffs' rally went forward, FAC ¶ 36, while also alleging that the

24   NAACP encouraged people to register for Plaintiffs' political rally in Riverside in order to deprive
     Plaintiffs' supports from securing tickets. *Id.* ¶ 37.  Under Plaintiffs' theory, these two organizations

25   were members of the same conspiracy, even though NAACP's "scheme" to register as many
     attendees as possible at the Riverside Convention Center is the exact opposite of LULAC's call to

26   boycott the Riverside Convention Center.  Furthermore, the NAACP's supposed plan would be
     thwarted by the overall conspiracy, given that their goal was predicated on the event ***actually***

27   ***happening***.

28

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 24 of 41    Page
ID #:1653
Case 5:23-cv-01368-HDV-SHK    Document 95    Filed 03/22/24    Page 18 of 22    Page ID #:888

1    discriminated against to claim the benefits of § 1985(3)['s equal protection clause].")[13]    There is a

2    live debate on whether the animus required under Section 1985(3)'s equal protection clause must be

3    racial in nature, or whether some other class-based discrimination is also covered.    *Pasadena*

4    *Republican Club v. W. Just. Ctr.*, 424 F. Supp. 3d 861, 878 (C.D. Cal. 2019), *aff'd*, 985 F.3d 1161

5    (9th Cir. 2021) ("It does not appear that the Ninth Circuit has addressed whether § 1985(3) reaches

6    conspiracies motivated by political [] animus.") (citing *Peloza v. Capistrano Unified Sch. Dist.*, 37

7    F.3d 517, 524 (9th Cir. 1994)).

8        The Court need not resolve this debate since "Plaintiffs have not asserted that their 1985(3)

9    Equal Protection claim is based on a class defined either by political affiliation or political

10    viewpoint." Section 1985 Opp. at 26 n.5. "Plaintiffs have alleged 'racial animus' here." *Id.*  To that

11    end, Plaintiffs have set forth various theories for what class-based discrimination they are alleging.

12    Plaintiffs first contend that this animus is evident in Defendants' rhetoric accusing *Plaintiffs* of racial

13    intolerance.  *See* FAC ¶ 85 (Defendants accused Plaintiffs Gaetz and Taylor-Greene of "espous[ing]

14    views that 'put[] the Latino Community in harm's way,' that would be a 'stain on our multi-racial

15    diverse city,' that 'spread[] hate against the Jewish faithful,' that appeal to a 'racist, angry, extremist

16    group of radical, right-wing zealots,' and that constitute 'racist rhetoric.'").[14]  In their Opposition,

17    ─────────────

18    [13] The distinction between the equal protection clause of Section 1985(3) and the support-or-

19    advocacy clause is important because while the equal protection clause requires pleading racial
animus, many courts have held that the support-or-advocacy clause does not. *See, e.g., Krabach v.*

20    *King Cnty.*, No. 2:22-CV-1252-BJR, 2023 WL 7018431, at *5 (W.D. Wash. Oct. 25, 2023); *Federer
v. Gephardt*, 363 F.3d 754, 760 (8th Cir. 2004); *Colo. Mont. Wyo. State Area Conf. of NAACP v.*

21    *U.S. Election Integrity Plan*, 653 F. Supp. 3d 861, 869 n.2 (D. Colo. 2023); *Cervini v. Cisneros*, 593
F. Supp. 3d 530, 536–38 (W.D. Tex. 2022) (collecting cases).  The Supreme Court in *Kush v.*

22    *Rutledge*, 460 U.S. 719 (1983) did not squarely reach the question of whether the support-or-
advocacy clause of Section 1985(3) requires race-based animus, but it did hold that because Section

23    1985(2) did not contain equal protection language, there was no requirement under Section 1985(2)
to plead race-based animus. *Id.* at 723.  The second portion of Section 1985(3), like the first portion

24    of Section 1985(2), lacks the equal protection language, which supports the conclusion that the
support-or-advocacy clause, like Section 1985(2), may ultimately be held to lack the requirement to

25    plead race-based animus.  In any event, the Nonprofit Defendants do not argue that racial animus is
required for the support-or-advocacy clause, and for that reason the Court only addresses it in the

26    context of the equal protection clause.

27    [14] Plaintiffs allege that, "[o]ne or more of Plaintiffs' anticipated audience members are members of a

28

18

Case 5:23-cv-01368-HDV-SHK    Document 134-1    Filed 11/20/24    Page 25 of 41    Page
ID #:1654
Case 5:23-cv-01368-HDV-SHK    Document 95-1   Filed 03/22/24    Page 19 of 22    Page ID #:889

1   Plaintiffs implicitly assert that Defendants were motivated by invidious racial animus against white

2   people. *See* Section 1985 Opp. at 24–26. Then, at oral argument, Plaintiffs' counsel argued that the

3   racial animus was Defendants' hatred towards Plaintiffs' supporters, who include racial minorities

4   unable to attend the event.  [Dkt. No. 90].

5          Whatever shifting theory of animus is accepted for purposes of this Motion, Plaintiffs'

6   Section 1985(3) equal protection claim nonetheless fails to plead the necessary allegations in non-

7   conclusory terms. *See Johnson v. City of Olympia*, No. C17-5403-MJP, 2018 WL 4681554, at *3

8   (W.D. Wash. Sept. 28, 2018) (quoting *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1152 (9th

9   Cir. 2006)) (animus to be shown through circumstantial evidence must be "specific and

10  substantial"). Post *Twombly*, a court is not forced to robotically to accept pleadings that proffer

11  wholly generalized affirmations of the required elements.  The FAC serves cold a thin gruel of

12  conclusions.   There is no racial animus plausibly alleged here.  The alleged discrimination begins

13  and ends with one word: politics.  Plaintiffs may disavow it, but nothing more is behind their Section

14  1985(3) claim, and to date neither the Ninth Circuit nor the Supreme Court has held that the Ku Klux

15  Klan Act has been broadened to cover political party as a protected class.

16                  **2.  Conspiracy under Support-or-Advocacy Clause**

17          Plaintiffs' second § 1985(3) claim—asserted against the Nonprofit Defendants under the

18  support-or-advocacy clause—fares no better.  As discussed above, Plaintiffs are unable to allege

19  plausibly the existence of a conspiracy, a required element under this clause as well.  For that reason

20  alone, the fourth claim must be dismissed.

21          But the fourth cause of action is deficient for an independent reason.  A plaintiff asserting a

22  claim under this subsection must also establish that the conspiracy's purpose was to force,

23  intimidate, or threaten an individual legally entitled to vote who is engaging in lawful activity related

24  to voting in federal elections. *See, e.g.*, *Nat'l Coalition on Black Civic Participation v. Wohl*, 498 F.

25  ───────────────

26  protected class who strongly objected to Defendants' efforts to bar them from hearing alternative
    viewpoints of interest to them and to their protected-class community," but they do not define or

27  plead a protected class.  FAC at ¶ 86.  Plaintiffs, including the campaign committees, do not plead
    that they are members of a discriminated class. *See generally* FAC.

28

1  Supp. 3d 457, 486–87 (S.D.N.Y. 2020) ("*Wohl I*"). *See also Andrews v. D'Souza*, --- F.Supp.3d ----,

2  No. 1:22-CV-04259-SDG, 2023 WL 6456517, at *7 (N.D. Ga. Sept. 30, 2023) (adopting the *Wohl I*

3  support-or-advocacy clause § 1985(3) standard). The intended injury resulting from the conspiracy

4  under the support-or-advocacy clause "does not need to be one of violence or bodily harm; rather,

5  'economic harm, legal action, dissemination of personal information, and surveillance can qualify

6  depending on the circumstances.'" *Krabach*, No. 2:22-CV-1252-BJR, 2023 WL 7018431, at *6

7  (quoting *Wohl I*, 498 F. Supp. 3d at 477). Plaintiffs' FAC fails to plausibly allege this requirement.

8  　　　In Section 1985(3) support-or-advocacy clause cases held to be sufficient, plaintiffs have

9  advanced plausible claims that *specific* voters were intimidated from voting or giving their support

10  or advocacy to a federal campaign, or have similarly alleged that a reasonable person would be

11  plausibly intimidated by defendants' actions.[15] Here, Plaintiffs fail to allege that *any* specific voter

12

13  [15] *See, e.g. Krabach*, No. 2:22-CV-1252-BJR, 2023 WL 7018431, at *6 ("County Defendants have

14  plausibly alleged that Plaintiff's signs intimidated voters, citing to multiple emails and telephone
   calls that Director Wise received from King County voters who stated that the signs intimidated

15  them. Indeed, the County Defendants cite to a social media post by Plaintiff that appears to indicate
   her clear intent to intimidate potential voters: 'Let's put the FEAR OF GOD in some ballot-
   trafficking mules!'") (citation omitted); *D'Souza*, No. 1:22-CV-04259-SDG, 2023 WL 6456517, at

16  *8–9 ("[Plaintiff] alleges that, because of Defendants' intimidation, he did not use a drop box to

17  deliver ballots for himself and his family in the subsequent May 2022 primary election; he and his
   family have changed their voting patterns; and he is fearful of voting in the future and the methods

18  he may use to do so .... Defendants themselves accused [plaintiff] of being a ballot mule,
   participating in an illegal voting conspiracy, having engaged in unrelated violent conduct, all while

19  displaying blurred and unblurred images of [plaintiff's] face and license plate. Such actions

20  plausibly intimidate a reasonable person in connection with voting and advocacy for federal
   candidates."); *Colo. Mont. Wyo. State Area Conf. of NAACP*, 653 F. Supp. 3d at 870 ("Yvette

21  Roberts, a registered Colorado voter and resident of Grand Junction, Colorado, submitted a
   declaration stating that she felt intimidated by [Defendants] who visited her home after the 2020

22  election ... Ms. Roberts states that she felt intimidated and was concerned by Defendants' actions
   and lodged a complaint with the Office of the Colorado Secretary of State."); *Cervini*, 593 F. Supp.

23  3d at 532, 539 (finding plausible a Section 1985(3) claim where defendants in at least forty vehicles
   surrounded a campaign bus on the highway, forcing it to nearly stop, leading to one car slamming

24  into a campaign staffer's car); *Wohl I*, 498 F.Supp.3d at 483–84 (holding that defendants' campaign
   of commissioning over 85,000 robocalls directed at Black voters with "references to arrest warrants,

25  outstanding debt, and mandatory vaccines may cause reasonable Black voters to resist voting out of

26  fear" especially where "Individual Plaintiffs repeatedly attest that they were frightened and enraged
   by the calls"); *cf. Ariz. Democratic Party v. Ariz. Republican Party,* No. CV-16-03752-PHX-JJT,

27  2016 WL 8669978, at *6–10 (D. Ariz. Nov. 4, 2016) (holding plaintiffs did not plausibly establish

28

1   was intimidated from providing their support or advocacy to Plaintiffs' reelection campaigns, nor did

2   they allege facts that show how a reasonable voter could be intimidated. Furthermore, these support-

3   or-advocacy clause cases involve defendants whose intimidation and threats were *directly targeted*

4   *at voters*. That is not alleged in the present action. Plaintiffs' theory is that the Nonprofit

5   Defendants threatened economic boycotts, "economic pressure tactics," a "fraudulent 'reserve and

6   no-show' scheme," and "public and political pressure tactics" against the municipal entities. Section

7   1985 Opp. at 9–10. There is nothing alleged that purports to show force, intimidation, or threats

8   against the attendees of the rally.[16] Indeed, Plaintiffs have failed to allege even one example of a

9   voter who claims to have been intimidated by Defendants' emails and tweets. In short, the FAC

10   completely fails to allege any conduct that could be, even plausibly, construed as intimidation of a

11   voter. "Viewed in the light of its origin as a reaction against the 'murders, whippings, and beatings

12   committed by rogues in white sheets in the postbellum South,' [Section 1985(3) of] the Ku Klux

13   Klan Act obviously meant to its framers, when it spoke of 'force, intimidation, or threat' something

14   much more serious and terrifying" than tweets and public statements. *Gill v. Farm Bureau Life Ins.*

15   *Co. of Mo.*, 906 F.2d 1265, 1269 (8th Cir. 1990); *accord D'Souza*, No. 1:22-CV-04259-SDG, 2023

16   WL 6456517, at *8 (dismissing Section 1985(3) case against an individual defendant who was in a

17   business agreement with the other defendants who plausibly intimidated voters because the

18   individual defendant did not make any intimidating statements and was not plausibly connected to the

19   the underlying unlawful conspiracy).

20   **V.    LEAVE TO AMEND**

21        A party should be granted leave to amend "if it appears at all possible that the plaintiff can

22   _____

23   voter intimidation under Section 1985(3) support-or-advocacy clause where defendants trained
     hundreds of people to "follow voters out into the parking lot, ask them questions, take their pictures

24   and photograph their vehicles and license plate").

25   [16] Furthermore, Ochoa's threat to the Grand Theater is three degrees of separation from any lawful
     voter in a federal election. Plaintiffs allege that Defendants conspired together to cancel their

26   political rally and, because of the conspiracy, Ochoa threatened the Grand Theater, which

27   subsequently cancelled the event and this cancellation intimidated and threatened voters. FAC at ¶¶
     39–49. This Rube Goldberg-style theory of liability is far too attenuated to be actionable.

28

1    correct the defect." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (quoting

2    *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963)).  Here, Plaintiffs

3    have failed to articulate a viable Section 1985 theory despite filing an amended complaint and an

4    opportunity to make an offer of proof in the underlying briefing and oral argument.  No additional

5    facts have been proffered or suggested.  On this record, the Court finds that further amendment

6    would be futile, and therefore dismisses the third and fourth claims without leave to amend.  *See,*

7    *e.g.*, *Steshenko v. Gayrard*, 70 F. Supp. 3d 979, 1000 (N.D. Cal. 2014) (denying leave to amend in a

8    Section 1985(3) case because plaintiff "fails to allege additional facts from which a conspiracy can

9    be plausibly inferred" after the complaint had been previously amended once).

10    **VI.    CONCLUSION**

11           For the foregoing reasons, Municipal Defendants' Section 1983 Motions are ***denied***, and

12    Nonprofit Defendants' Section 1985 Motions are ***granted***.

13    Dated:    March 22, 2024

14

15                                                        Hernán D. Vera
16                                                  United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

22

# **EXHIBIT 2.**

**Andrade Gonzalez LLP - Summary Report**

Date Start: 1/1/2013 | Date End: 10/31/2024 | Clients: LULAC | Matters: Gaetz et al. v. City of Riverside, et al. | Users: | Account Managers: All | Group By: Matter

| Date | User | Description | Billing Status | Rate/ Unit Price | Labor Time/ Quantity | Non-billable Amount | Billable Time/ Cost Price | Bill Amt/ Sell Price |
|---|---|---|---|---|---|---|---|---|
| LULAC | | | | | | | | |
| Gaetz et al. v. City of Riverside, et al. | | | | | | | | |
| 07/20/2023 | Kedar Vishwanathan | Review and preliminary analysis of complaint and causes of actions against client. | Completed | $250.00 hr | 2.50 | $0.00 | 2.50 | $625.00 |
| 07/20/2023 | Sean Andrade | Call with D. Rodriguez to discuss details of potential new matter. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 07/24/2023 | Sean Andrade | Meet with LULAC team to discuss case details and recommended next steps. [Courtesy - No Charge] | Completed | $0 hr | 0.80 | $280.00 | 0 | $0.00 |
| 07/24/2023 | Kedar Vishwanathan | Meeting with S. Andrade and LULAC representatives about next steps etc. | Completed | $250.00 hr | 0.40 | $0.00 | 0.40 | $100.00 |
| 07/24/2023 | Sean Andrade | Confer with K. Vishwanathan re proposed next steps. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 07/26/2023 | Sean Andrade | Initial review of relevant filings and confer with K. Vishwanathan re same. | Completed | $350.00 hr | 0.80 | $0.00 | 0.80 | $280.00 |
| 07/27/2023 | Kedar Vishwanathan | Review of letter from opposing counsel and complaint. | Completed | $250.00 hr | 0.30 | $0.00 | 0.30 | $75.00 |
| 08/08/2023 | Sean Andrade | Confer with K. Vishwanathan re judge assignment. [Courtesy - No Charge] | Completed | $0 hr | 0.20 | $70.00 | 0 | $0.00 |
| 08/08/2023 | Sean Andrade | Exchange emails with J. Sandoval re additional document review and submission to insurers. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 08/08/2023 | Kedar Vishwanathan | Review of client materials. | Completed | $250.00 hr | 0.20 | $0.00 | 0.20 | $50.00 |
| 08/11/2023 | Sean Andrade | Confer with K. Vishwanathan re analysis of complaint and claims, strategy to extract LULAC, motion to dismiss, recommended next steps, and draft status update to LULAC team. | Completed | $350.00 hr | 0.30 | $0.00 | 0.30 | $105.00 |
| 08/11/2023 | Kedar Vishwanathan | Email to J. Sandoval, J. Barrera, and D. Rodriguez re next steps and tasks. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 08/18/2023 | Sean Andrade | Further review of relevant documents and filings and confer with H. Gonzalez re analysis of same. | Completed | $350.00 hr | 0.60 | $0.00 | 0.60 | $210.00 |
| 08/23/2023 | Sean Andrade | Review final waiver of the service of summons. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 08/23/2023 | Kedar Vishwanathan | Email to client and pro bono attorney. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 08/23/2023 | Kedar Vishwanathan | Email to S. Andrade re next steps and organizing meeting with LULAC's pro bono counsel. [Courtesy - No Charge] | Completed | $0 hr | 0.10 | $25.00 | 0 | $0.00 |
| 08/23/2023 | Henry Gonzalez | Email to Plaintiff's counsel regarding acceptance of summons. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 08/23/2023 | Henry Gonzalez | Prepare form accepting service of summons. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 08/23/2023 | Henry Gonzalez | Review and analyze complaint. | Completed | $350.00 hr | 0.60 | $0.00 | 0.60 | $210.00 |
| 08/25/2023 | Sean Andrade | Call with C. Contreras re case status and strategy for next steps. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 08/31/2023 | Kedar Vishwanathan | Research and analysis of whether an ANTI-SLAPP motion can be filed as LULAC's response. | Completed | $250.00 hr | 2.30 | $0.00 | 2.30 | $575.00 |
| 08/31/2023 | Sean Andrade | Confer with K. Vishwanathan re filing SLAP motion as response, and availability to discuss strategy for next steps. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 09/01/2023 | Kedar Vishwanathan | Research and analysis of whether an ANTI-SLAPP motion can be filed as LULAC's response. | Completed | $250.00 hr | 1.90 | $0.00 | 1.90 | $475.00 |
| 09/05/2023 | Kedar Vishwanathan | Research and analysis into whether California's anti-slapp statute is procedural or substantive and whether under Federal Question Jurisdiction we can file an anti-slapp motion. | Completed | $250.00 hr | 1.20 | $0.00 | 1.20 | $300.00 |
| 09/05/2023 | Kedar Vishwanathan | Research and analysis of ANTI-SLAPP motion under federal question jurisdiction and drafting email/memo to LULAC's pro bono counsel. | Completed | $250.00 hr | 2.40 | $0.00 | 2.40 | $600.00 |
| 09/05/2023 | Kedar Vishwanathan | Meeting with S. Andrade re next steps. | Completed | $250.00 hr | 0.30 | $0.00 | 0.30 | $75.00 |
| 09/06/2023 | Kedar Vishwanathan | Research and analysis on whether we can file an ANTI-SLAPP motion in response to the complaint in federal court sitting under federal question jurisdiction. | Completed | $250.00 hr | 0.90 | $0.00 | 0.90 | $225.00 |
| 09/06/2023 | Sean Andrade | Confer with K. Vishwanathan re strategy analysis re response to federal question jurisdiction and venue change. | Completed | $350.00 hr | 0.30 | $0.00 | 0.30 | $105.00 |
| 09/06/2023 | Kedar Vishwanathan | Draft detailed email to LULAC's pro bono counsel re proposed strategy, motion to dismiss, ANTI-SLAPP motion, and pleading requirements. | Completed | $250.00 hr | 1.60 | $0.00 | 1.60 | $400.00 |
| 09/06/2023 | Kedar Vishwanathan | Analysis and research into motion 12(b)(6) and pleading requirement. | Completed | $250.00 hr | 0.90 | $0.00 | 0.90 | $225.00 |
| 09/07/2023 | Kedar Vishwanathan | Review and revise analysis and draft email to LULAC's pro bono counsel and draft email. | Completed | $250.00 hr | 1.00 | $0.00 | 1.00 | $250.00 |
| 09/07/2023 | Sean Andrade | Review emails re case analysis, recommended next steps, and conferring to discuss strategy. | Completed | $350.00 hr | 0.40 | $0.00 | 0.40 | $140.00 |

| Date | Name | Description | Status | Rate | Hours | | Amount |
|---|---|---|---|---|---|---|---|
| 09/07/2023 | Kedar Vishwanathan | Research and analysis into pleading requirements under 12(b)(6) per Iqbal and Twombly Supreme Court holdings and applicability to section 1985 claims. | Completed | $250.00 hr | 0.70 | $0.00 | 0.70 | $175.00 |
| 09/07/2023 | Sean Andrade | Revise draft email to client team re anti-SLAPP analysis. | Completed | $350.00 hr | 0.30 | $0.00 | 0.30 | $105.00 |
| 09/07/2023 | Kedar Vishwanathan | Research and analysis on California federal courts section 1985 claims and 12(b)(6) motions to dismiss. | Completed | $250.00 hr | 1.70 | $0.00 | 1.70 | $425.00 |
| 09/08/2023 | Kedar Vishwanathan | Email to S. Andrade re next steps and proposed strategy for Pro Bono counsel and 12(b)(6). | Completed | $250.00 hr | 0.40 | $0.00 | 0.40 | $100.00 |
| 09/08/2023 | Kedar Vishwanathan | Meeting with LULAC's pro bono counsel and email to S. Andrade notifying of next steps. | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 09/08/2023 | Sean Andrade | Review and revise draft meet and confer letter. | Completed | $350.00 hr | 0.30 | $0.00 | 0.30 | $105.00 |
| 09/08/2023 | Sean Andrade | Confer with K. Vishwanathan re draft meet and confer letter. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 09/08/2023 | Kedar Vishwanathan | Review of pro bono counsel's draft meet and confer letter and email, follow up phone call, email to S. Andrade and H. Gonzalez for their review. | Completed | $250.00 hr | 1.20 | $0.00 | 1.20 | $300.00 |
| 09/11/2023 | Sean Andrade | Confer with K. Vishwanathan re meet and confer and responsive deadline and review email exchange with C. Contreras on same. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 09/11/2023 | Kedar Vishwanathan | Email to C. Contreras re plaintiffs' meet and confer correspondence. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 09/11/2023 | Sean Andrade | Review draft joint stipulation to extend time to respond to initial complaint. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 09/11/2023 | Kedar Vishwanathan | Email to C. Contreras re meet and confer schedule for next week. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 09/11/2023 | Kedar Vishwanathan | Meet and confer emails to plaintiffs' counsel and C. Contreras. | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 09/13/2023 | Kedar Vishwanathan | Review of draft stipulation, email to plaintiffs. | Completed | $250.00 hr | 1.30 | $0.00 | 1.30 | $325.00 |
| 09/13/2023 | Sean Andrade | Review draft proposed stipulation to extend response deadline and emails agreeing to same. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 09/14/2023 | Sean Andrade | Review finalized stipulation to extend time to respond and emails related to same. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 09/14/2023 | Kedar Vishwanathan | Preparing and filing stipulation to extend time to respond. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 09/18/2023 | Kedar Vishwanathan | Emails to C. Contreras re meet and confer and next steps in drafting the motion to dismiss. | Completed | $250.00 hr | 0.30 | $0.00 | 0.30 | $75.00 |
| 09/18/2023 | Sean Andrade | Review finalized joint stipulation to extend time to respond to initial complaint and emails re scheduling call ahead of meet and confer. | Completed | $350.00 hr | 0.50 | $0.00 | 0.50 | $175.00 |
| 09/18/2023 | Kedar Vishwanathan | Preparation for meet and confer meeting. | Completed | $250.00 hr | 0.50 | $0.00 | 0.50 | $125.00 |
| 09/19/2023 | Sean Andrade | Review further updated stipulation. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 09/19/2023 | Kedar Vishwanathan | Call with C. Contreras re strategy for meet and confer and preparation. | Completed | $250.00 hr | 0.40 | $0.00 | 0.40 | $100.00 |
| 09/19/2023 | Kedar Vishwanathan | Meet and confer with plaintiff's counsel. | Completed | $250.00 hr | 0.30 | $0.00 | 0.30 | $75.00 |
| 09/20/2023 | Sean Andrade | Review summary of meet and confer and updates re amendment of pleading and stipulation to extend response deadline. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 09/20/2023 | Sean Andrade | Review notice of League of Women Voters Riverside's second stipulation. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 09/20/2023 | Kedar Vishwanathan | Internal email to new stipulation filed for extension to LULAC's response. | Completed | $250.00 hr | 0.30 | $0.00 | 0.30 | $75.00 |
| 09/26/2023 | Kedar Vishwanathan | Email to C. Contreras re proposed order draft. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 09/26/2023 | Kedar Vishwanathan | File and review of response order. | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 09/26/2023 | Sean Andrade | Review email confirming refiling of stipulation with proposed order. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 09/27/2023 | Kedar Vishwanathan | Review and analysis of underlying supreme court precedent concerning the interpretation of section 1985 with respect to the 13, 14, and 15th amendment for arguments in the 12(b)(6) motion to dismiss. | Completed | $250.00 hr | 2.90 | $0.00 | 2.90 | $725.00 |
| 09/28/2023 | Kedar Vishwanathan | Email to C. Contreras re 12(b)(6) version and draft. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 09/28/2023 | Kedar Vishwanathan | Draft FRCP 12(b)(6) motion to dismiss. | Completed | $250.00 hr | 1.40 | $0.00 | 1.40 | $350.00 |
| 09/29/2023 | Kedar Vishwanathan | Draft motion to dismiss and case law analysis. | Completed | $250.00 hr | 4.70 | $0.00 | 4.70 | $1,175.00 |
| 10/02/2023 | Kedar Vishwanathan | Review and analysis of Amended Complaint. | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 10/02/2023 | Sean Andrade | Review court notice of filing of first amended complaint. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 10/03/2023 | Kedar Vishwanathan | Email to plaintiff's counsel re the next meet and confer meeting. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 10/03/2023 | Sean Andrade | Review emails re amended complaint and scheduling meet and confer. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 10/05/2023 | Kedar Vishwanathan | Analysis and review of standing issues with section 1985(3) claims to determine whether plaintiffs have standing to sue under Article III or | Completed | $250.00 hr | 1.30 | $0.00 | 1.30 | $325.00 |

| | | s 1985 and if not can be used in the motion to dismiss. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 10/05/2023 | Stephanie Maldonado | Conducted research in support of Motion to Dismiss 12b(6) | Completed | $100.00 hr | 1.30 | $0.00 | 1.30 | $130.00 |
| 10/05/2023 | Kedar Vishwanathan | Analysis of section 1985(3) support or advocacy clause re fourth cause of action for purposes of motion to dismiss. | Completed | $250.00 hr | 2.80 | $0.00 | 2.80 | $700.00 |
| 10/05/2023 | Stephanie Maldonado | Continued research on Motion 12b(6) | Completed | $100.00 hr | 3.00 | $0.00 | 3.00 | $300.00 |
| 10/06/2023 | Kedar Vishwanathan | Analysis of standing under section 1985(3) and third party standing. | Completed | $250.00 hr | 1.50 | $0.00 | 1.50 | $375.00 |
| 10/06/2023 | Stephanie Maldonado | Researched viewpoint discrimination and standing in support of a motion to Dismiss | Completed | $100.00 hr | 4.60 | $0.00 | 4.60 | $460.00 |
| 10/08/2023 | Kedar Vishwanathan | Research and analysis of US Federal case law with respect to section 1985(3) support and advocacy clause and draft motion 12(b)(6). | Completed | $250.00 hr | 6.10 | $0.00 | 6.10 | $1,525.00 |
| 10/08/2023 | Sean Andrade | Review email re outstanding issues re draft 12(b)(6). [Courtesy - No Charge]. | Completed | $0 hr | 0.30 | $105.00 | 0 | $0.00 |
| 10/09/2023 | Kedar Vishwanathan | Meeting with S. Andrade about strategy in the meet and confer and 12(b)(6). [Courtesy - No Charge]. | Completed | $0 hr | 0.20 | $50.00 | 0 | $0.00 |
| 10/09/2023 | Kedar Vishwanathan | Draft motion to dismiss. | Completed | $250.00 hr | 0.40 | $0.00 | 0.40 | $100.00 |
| 10/09/2023 | Kedar Vishwanathan | Research and analysis and draft 12(b)(6). | Completed | $250.00 hr | 2.20 | $0.00 | 2.20 | $550.00 |
| 10/10/2023 | Sean Andrade | Review emails re conferring to discuss case updates. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 10/10/2023 | Kedar Vishwanathan | Meet and confer with Plaintiff's counsel, meet and confer preparation, discussion with pro bono counsel re next steps. | Completed | $250.00 hr | 1.70 | $0.00 | 1.70 | $425.00 |
| 10/10/2023 | Stephanie Maldonado | Conference Meet and Confer call with K. Vishwathan and Alexander Haberbush | Completed | $100.00 hr | 0.70 | $0.00 | 0.70 | $70.00 |
| 10/10/2023 | Kedar Vishwanathan | Draft motion to dismiss. | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 10/10/2023 | Sean Andrade | Meet with K. Vishwanathan re strategy for upcoming meet and confer and motion to dismiss. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 10/11/2023 | Kedar Vishwanathan | Email to opposing counsel re further issues with respect to Further Amended Complaint. | Completed | $250.00 hr | 0.30 | $0.00 | 0.30 | $75.00 |
| 10/11/2023 | Kedar Vishwanathan | Drafting 12(b)(6). | Completed | $250.00 hr | 0.40 | $0.00 | 0.40 | $100.00 |
| 10/11/2023 | Stephanie Maldonado | Review and revise meet and confer | Completed | $100.00 hr | 1.30 | $0.00 | 1.30 | $130.00 |
| 10/12/2023 | Kedar Vishwanathan | Continue drafting 12(b)(6). | Completed | $250.00 hr | 1.40 | $0.00 | 1.40 | $350.00 |
| 10/12/2023 | Kedar Vishwanathan | Additional research and analysis of whether first cause of action against LULAC sufficiently pleads state action and or whether there is state action. | Completed | $250.00 hr | 1.10 | $0.00 | 1.10 | $275.00 |
| 10/16/2023 | Kedar Vishwanathan | Continue drafting motion to dismiss. | Completed | $250.00 hr | 3.80 | $0.00 | 3.80 | $950.00 |
| 10/16/2023 | Kedar Vishwanathan | Review of LULAC press release subject of plaintiff's allegation and email to plaintiff's counsel. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 10/16/2023 | Sean Andrade | Review emails re scheduling upcoming meet and confer to discuss case updates. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 10/17/2023 | Kedar Vishwanathan | Meeting with C. Contreras and LULAC re case update, strategy and next steps and meeting with C. Contreras re 12(b)(6) drafting. | Completed | $250.00 hr | 0.90 | $0.00 | 0.90 | $225.00 |
| 10/17/2023 | Sean Andrade | Review emails re correspondence from LULAC in response to contract with America First Rally. [Courtesy - No Charge]. | Completed | $0 hr | 0.20 | $70.00 | 0 | $0.00 |
| 10/17/2023 | Amber Sotomayor | Locate a social media post and download content. Prepare contents for review and circulate. | Completed | $100.00 hr | 0.40 | $0.00 | 0.40 | $40.00 |
| 10/17/2023 | Sean Andrade | Confer with K. Vishwanathan re status of draft 12(b)(6). | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 10/18/2023 | Sean Andrade | Review City of Riverside's stipulation extending time to answer complaint. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 10/18/2023 | Kedar Vishwanathan | Revise of draft motion 12(b)(6). | Completed | $250.00 hr | 2.30 | $0.00 | 2.30 | $575.00 |
| 10/19/2023 | Kedar Vishwanathan | Redraft of support and advocacy argument. | Completed | $250.00 hr | 2.60 | $0.00 | 2.60 | $650.00 |
| 10/19/2023 | Kedar Vishwanathan | Redraft entire 12(b)(6) for finalization for S. Andrade's review. | Completed | $250.00 hr | 3.80 | $0.00 | 3.80 | $950.00 |
| 10/19/2023 | Sean Andrade | Review final draft 12(b)(6). | Completed | $350.00 hr | 0.40 | $0.00 | 0.40 | $140.00 |
| 10/19/2023 | Kedar Vishwanathan | Citation review of 12(b)(6). | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 10/19/2023 | Kedar Vishwanathan | Review of final 12(b)(6) | Completed | $250.00 hr | 0.70 | $0.00 | 0.70 | $175.00 |
| 10/20/2023 | Sean Andrade | United States District Court Central District of C (LA32047078) - ASAP Legal #5796 | Completed | $42.50 ea | 1.00 | $0.00 | $42.50 | $42.50 |
| 10/20/2023 | Sean Andrade | Review finalized motion to dismiss and proposed order. | Completed | $350.00 hr | 0.60 | $0.00 | 0.60 | $210.00 |
| 11/28/2023 | Kedar Vishwanathan | Review of declaration of A. Haberbush re defaulting defendants. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |

| Date | Name | Description | Status | Rate | Hours | | Amount | |
|---|---|---|---|---|---|---|---|---|
| 12/11/2023 | Kedar Vishwanathan | Email to plaintiff's counsel re reply date and extension. | Completed | $250.00 hr | 0.20 | $0.00 | 0.20 | $50.00 |
| 12/11/2023 | Sean Andrade | Review order granting plaintiff's motion for extension of time to serve defendants. [Courtesy - No Charge]. | Completed | $0 hr | 0.10 | $35.00 | 0 | $0.00 |
| 12/18/2023 | Kedar Vishwanathan | Analysis of opposition filing date and when reply is due. [Courtesy - No Charge]. | Completed | $0 hr | 0.30 | $75.00 | 0 | $0.00 |
| 12/26/2023 | Sean Andrade | Initial review of motion to dismiss plaintiff's first amended complaint and filings in support of same. [Courtesy - No Charge]. | Completed | $0 hr | 0.60 | $210.00 | 0 | $0.00 |
| 01/11/2024 | Kedar Vishwanathan | Review of opposition to motion to dismiss. | Completed | $250.00 hr | 1.00 | $0.00 | 1.00 | $250.00 |
| 01/12/2024 | Kedar Vishwanathan | REview of opposition to motion to dismiss and preliminary planning and analysis. | Completed | $250.00 hr | 5.30 | $0.00 | 5.30 | $1,325.00 |
| 01/12/2024 | Amber Sotomayor | Review and update file system with new pleadings. | Completed | $100.00 hr | 0.70 | $0.00 | 0.70 | $70.00 |
| 01/12/2024 | Sean Andrade | Initial review of latest pleadings. | Completed | $350.00 hr | 0.40 | $0.00 | 0.40 | $140.00 |
| 01/16/2024 | Kedar Vishwanathan | Review of Andrew Cudmore's email and email to Cabernet Corp requesting wholesale letter amendment. | Completed | $250.00 hr | 0.40 | $0.00 | 0.40 | $100.00 |
| 01/16/2024 | Amber Sotomayor | Review newly filed Notice of Errata and update the file system. | Completed | $100.00 hr | 0.30 | $0.00 | 0.30 | $30.00 |
| 01/16/2024 | Kedar Vishwanathan | Drafting Reply section concerning "Support or Advocacy" clause. | Completed | $250.00 hr | 4.80 | $0.00 | 4.80 | $1,200.00 |
| 01/16/2024 | Kedar Vishwanathan | Review and analysis of standing claims. | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 01/16/2024 | Kedar Vishwanathan | Drafting and researching cases for Reply to plaintiffs' opposition - drafting sections concerning the support and advocacy clause. | Completed | $250.00 hr | 5.30 | $0.00 | 5.30 | $1,325.00 |
| 01/16/2024 | Sean Andrade | Review analysis of outstanding issues and strategy re reply to opposition to motion to dismiss. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 01/17/2024 | Kedar Vishwanathan | Drafting reply sections related to animus under section 1985(3) and rebuttal to support and advocacy clause arguments made by plaintiff counsel. | Completed | $250.00 hr | 7.70 | $0.00 | 7.70 | $1,925.00 |
| 01/17/2024 | Kedar Vishwanathan | Drafting reply sections related to rebuttal to support and advocacy clause arguments made by plaintiff counsel. | Completed | $250.00 hr | 4.60 | $0.00 | 4.60 | $1,150.00 |
| 01/18/2024 | Kedar Vishwanathan | Drafting and finalizing reply brief. | Completed | $250.00 hr | 11.60 | $0.00 | 11.60 | $2,900.00 |
| 01/18/2024 | Sean Andrade | Review draft reply in support of motion to dismiss. | Completed | $350.00 hr | 0.60 | $0.00 | 0.60 | $210.00 |
| 01/24/2024 | Sean Andrade | Strategize in preparation for upcoming hearing. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 01/24/2024 | Kedar Vishwanathan | Preparation for motion to dismiss hearing. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 01/25/2024 | Kedar Vishwanathan | Preparation for motion to dismiss hearing - review of all parties briefs | Completed | $250.00 hr | 5.70 | $0.00 | 5.70 | $1,425.00 |
| 01/29/2024 | Kedar Vishwanathan | Redraft of Reply to conform with 10 page standing order requirement. | Completed | $250.00 hr | 2.00 | $0.00 | 2.00 | $500.00 |
| 01/29/2024 | Kedar Vishwanathan | Draft Reply to Christian for refiling on leave being approved by court. | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 01/29/2024 | Kedar Vishwanathan | Review of further amended complaint. | Completed | $250.00 hr | 0.90 | $0.00 | 0.90 | $225.00 |
| 01/30/2024 | Kedar Vishwanathan | Preparing outline and materials for motion to dismiss hearing. | Completed | $250.00 hr | 4.80 | $0.00 | 4.80 | $1,200.00 |
| 01/31/2024 | Timothy Welch | Prepare 12B6 Hearing Binder. | Completed | $100.00 hr | 0.70 | $0.00 | 0.70 | $70.00 |
| 01/31/2024 | Kedar Vishwanathan | Preparing for hearing and oral argument for 12(b)(6) hearing and drafting outline. | Completed | $250.00 hr | 8.60 | $0.00 | 8.60 | $2,150.00 |
| 01/31/2024 | Amber Sotomayor | Comprehensive analysis of client documents and preparation for the 12b6 hearing binder, including cover and index. | Completed | $100.00 hr | 2.10 | $0.00 | 2.10 | $210.00 |
| 01/31/2024 | Sean Andrade | Review draft oral argument. | Completed | $350.00 hr | 0.60 | $0.00 | 0.60 | $210.00 |
| 01/31/2024 | Sean Andrade | Exchange calls and emails and strategize re collaboration with NAACP counsel, arguing motion, and proposed next steps. | Completed | $350.00 hr | 0.60 | $0.00 | 0.60 | $210.00 |
| 02/01/2024 | Kedar Vishwanathan | Attend oral argument. | Completed | $250.00 hr | 3.50 | $0.00 | 3.50 | $875.00 |
| 02/01/2024 | Kedar Vishwanathan | Finish preparing research and outlines for oral argument. | Completed | $250.00 hr | 3.50 | $0.00 | 3.50 | $875.00 |
| 02/05/2024 | Amber Sotomayor | Review the latest pleadings regarding the 12B6 motion and other January / February 2024 pleadings and update the team. | Completed | $100.00 hr | 1.40 | $0.00 | 1.40 | $140.00 |
| 02/06/2024 | Kedar Vishwanathan | Email to S. Andrade providing update and analysis as to how the 12(b)(6) motion to dismiss hearing went . | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 02/06/2024 | Sean Andrade | Review thorough summary of latest hearing and strategize re same. | Completed | $350.00 hr | 0.30 | $0.00 | 0.30 | $105.00 |
| 02/12/2024 | Kedar Vishwanathan | Draft client update email for S. Andrade's review. | Completed | $250.00 hr | 0.30 | $0.00 | 0.30 | $75.00 |
| 02/15/2024 | Sean Andrade | Follow up re ruling on recent hearing. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 03/22/2024 | Sean Andrade | Review order denying municipal defendant's motions to dismiss and strategize regarding next steps. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |

| Date | Name | Description | Status | Rate | Hours | Expense | Net Hours | Amount |
|---|---|---|---|---|---|---|---|---|
| 03/23/2024 | Sean Andrade | Draft email to J. Sandoval and D. Rodriguez regarding recent victory. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 03/25/2024 | Sean Andrade | Review emails regarding analysis of recent rulings, seeking fees, and strategy regarding next steps. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 03/25/2024 | Sean Andrade | Review multiple lengthy emails regarding meeting request from R. Ortiz. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 03/26/2024 | Kedar Vishwanathan | Email to S. Andrade and H. Gonzalez re analysis of attorney's fee motions and next steps. | Completed | $250.00 hr | 0.30 | $0.00 | 0.30 | $75.00 |
| 03/26/2024 | Sean Andrade | Review thorough summary of case status and recommendations for next steps. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 03/28/2024 | Sean Andrade | Review updates regarding fees, moving to dismiss, and related filings. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 04/03/2024 | Sean Andrade | Confer with team regarding strategy for pursuing fees. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 04/04/2024 | Kedar Vishwanathan | Email to outside counsel (Lee Fink) re fee dispute and recovery and coordination between defendants. | Completed | $250.00 hr | 0.20 | $0.00 | 0.20 | $50.00 |
| 04/04/2024 | Sean Andrade | Review and exchange emails and further strategize with team regarding pursuing fees. | Completed | $350.00 hr | 0.30 | $0.00 | 0.30 | $105.00 |
| 04/04/2024 | Kedar Vishwanathan | Review of L. Fink's proposed outline for attorney fee motion and strategy. | Completed | $250.00 hr | 0.20 | $0.00 | 0.20 | $50.00 |
| 04/09/2024 | Sean Andrade | Review summary of meeting regarding strategy on motion for attorney fees and recommendations on same. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 04/09/2024 | Kedar Vishwanathan | Research and analysis re Rule 54 for attorney fees motion. | Completed | $250.00 hr | 1.50 | $0.00 | 1.50 | $375.00 |
| 05/09/2024 | Kedar Vishwanathan | Meeting with defendants re fees | Completed | $250.00 hr | 0.40 | $0.00 | 0.40 | $100.00 |
| 06/07/2024 | Sean Andrade | Confer with team regarding strategy for next steps and outstanding items. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 06/18/2024 | Sean Andrade | Review emails regarding pending motions on fees as well as upcoming meet and confer on same. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 06/20/2024 | Sean Andrade | Exchange email with C. Contreras regarding draft motion for fees and review emails on upcoming meet and confer. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 07/18/2024 | Sean Andrade | Draft email to C. Contreras regarding strategy for pending fee motion. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 08/06/2024 | Sean Andrade | Review email from T. Sherman regarding next steps for entry of judgment. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 08/14/2024 | Sean Andrade | Review emails regarding strategy for motion for entry of final judgment and next steps. | Completed | $350.00 hr | 0.10 | $0.00 | 0.10 | $35.00 |
| 09/27/2024 | Sean Andrade | Review email from T. Sherman and draft motion for entry of judgment. | Completed | $350.00 hr | 0.20 | $0.00 | 0.20 | $70.00 |
| 10/31/2024 | Nneka Mbadugha | Strategy meeting with other Non-Profit Defendants to discuss case dismissal and motion for attorney fees. | Completed | $250.00 hr | 0.60 | $0.00 | 0.60 | $150.00 |
| 10/31/2024 | Nneka Mbadugha | Correspondence with Plaintiff's counsel regarding joint stipulation to extend motion deadline. | Completed | $250.00 hr | 0.10 | $0.00 | 0.10 | $25.00 |
| 10/31/2024 | Nneka Mbadugha | Review proposed stipulation to extend motion deadline to November 20, 2024. | Completed | $250.00 hr | 0.30 | $0.00 | 0.30 | $75.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Total Labor For Gaetz et al. v. City of Riverside, et al. | | | 179.20 | $920.00 | 176.40 | $43,055.00 |
| | | Total Expense For Gaetz et al. v. City of Riverside, et al. | | | | | $42.50 | $42.50 |
| | | Total For Gaetz et al. v. City of Riverside, et al. | | | | | | $43,097.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Total Labor For LULAC | | | 179.20 | $920.00 | 176.40 | $43,055.00 |
| | Total Expense For LULAC | | | | | $42.50 | $42.50 |
| | Total For LULAC | | | | | | $43,097.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Grand Total Labor | | | 179.20 | $920.00 | 176.40 | $43,055.00 |
| | Grand Total Expenses | | | | | $42.50 | $42.50 |
| | Grand Total | | | | | | $43,097.50 |

# EXHIBIT 3.



DIRECT DIAL: (213) 986-3951
E-MAIL: aandrade@andradefirm.com

**ATTORNEY-CLIENT PRIVILEGED – CONFIDENTIAL**

July 26, 2023

**VIA EMAIL**

LULAC California

Re:     Engagement Agreement for Legal Services re: Representative Matt Gaetz, et al. v. City of Riverside, et al. (USDC CD California Case No. 5:23-cv-1368)

LULAC California State Director
*Re:  Engagement Agreement for Legal Services re:*
 *Representative Matt Gaetz, et al. v. City of Riverside, et al.*
July 26, 2023 – Page 2

    The attorneys' time shall be billed monthly, at the following *discounted* hourly rates for all work performed and travel time reasonably necessary for the conduct of this matter:

| Attorney | Hourly Rate | Discounted Rate |
|---|---|---|
| Partners/Senior Counsel | ~~$765~~ | $350 |
| Associates | ~~$635~~ | $250 |
| Legal Assistants/Paralegals/Law Clerks | ~~$255~~ | $100 |

LULAC California State Director
*Re: Engagement Agreement for Legal Services re:*
    *Representative Matt Gaetz, et al. v. City of Riverside, et al.*
July 26, 2023 – Page 5

Sincerely yours,

Sean A. Andrade
ANDRADE GONZALEZ LLP

AGREED AND ACCEPTED:          League of United Latin American Citizens

Dated: _8/10/23_          By: _____
                                 Diego Jacob Sandoval
                                 LULAC California State Director
                                 Far West Region

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4.

## Chart for Invoice Totals at Full Rate

| Timekeeper | Clasification | Invoice No. | Date | Client | Discounted Invoice Total | Labor Total | Hrs | Full Rates | Full Rates Totals |
|---|---|---|---|---|---|---|---|---|---|
| Amber Sotomayor | Paralegal | 26584 | 11/17/2023 | LULAC | | $40.00 | 0.40 | $ 255.00 | $102.00 |
| Henry Gonzalez | Partner | 26584 | 11/17/2023 | LULAC | | $280.00 | 0.80 | $ 765.00 | $612.00 |
| Kedar Vishwanathan | Associate | 26584 | 11/17/2023 | LULAC | | $17,450.00 | 69.80 | $ 635.00 | $44,323.00 |
| Sean Andrade | Partner | 26584 | 11/17/2023 | LULAC | | $2,765.00 | 7.90 | $ 765.00 | $6,043.50 |
| Stephanie Maldonado | Paralegal | 26584 | 11/17/2023 | LULAC | | $1,090.00 | 10.90 | $ 255.00 | $2,779.50 |
| | | | | | $21,625.00 | | | | $53,860.00 |
| Kedar Vishwanathan | Associate | 26699 | 12/12/2023 | LULAC | | $25.00 | 0.10 | $ 635.00 | $63.50 |
| | | | | | $25.00 | | | | $63.50 |
| Kedar Vishwanathan | Associate | 26789 | 01/17/2024 | LULAC | | $50.00 | 0.20 | $ 635.00 | $127.00 |
| Sean Andrade | Partner | 26789 | 01/17/2024 | LULAC | | $0.00 | 0.00 | $ 765.00 | $0.00 |
| | | | | | $50.00 | | | | $127.00 |
| Amber Sotomayor | Paralegal | 26873 | 02/07/2024 | LULAC | | $310.00 | 3.10 | $ 255.00 | $790.50 |
| Kedar Vishwanathan | Associate | 26873 | 02/07/2024 | LULAC | | $16,000.00 | 64.00 | $ 635.00 | $40,640.00 |
| Sean Andrade | Partner | 26873 | 02/07/2024 | LULAC | | $910.00 | 2.60 | $ 765.00 | $1,989.00 |
| Timothy Welch | Paralegal | 26873 | 02/07/2024 | LULAC | | $70.00 | 0.70 | $ 255.00 | $178.50 |
| | | | | | $17,332.50 | | | | $43,598.00 |
| Amber Sotomayor | Paralegal | 27026 | 03/25/2024 | LULAC | | $140.00 | 1.40 | $ 255.00 | $357.00 |
| Kedar Vishwanathan | Associate | 27026 | 03/25/2024 | LULAC | | $1,975.00 | 7.90 | $ 635.00 | $5,016.50 |
| Sean Andrade | Partner | 27026 | 03/25/2024 | LULAC | | $140.00 | 0.40 | $ 765.00 | $306.00 |
| | | | | | $2,255.00 | | | | $5,679.50 |
| Kedar Vishwanathan | Associate | 27115 | 04/19/2024 | LULAC | | $75.00 | 0.30 | $ 635.00 | $190.50 |
| Sean Andrade | Partner | 27115 | 04/19/2024 | LULAC | | $350.00 | 1.00 | $ 765.00 | $765.00 |
| | | | | | $425.00 | | | | $955.50 |

| Timekeeper | Clasification | Invoice No. | Date | Client | Discounted Invoice Total | Labor Total | Hrs | Full Rates | Full Rates Totals |
|---|---|---|---|---|---|---|---|---|---|
| Kedar Vishwanathan | Associate | 27149 | 05/07/2024 | LULAC | | $475.00 | 1.90 | $ 635.00 | $1,206.50 |
| Sean Andrade | Partner | 27149 | 05/07/2024 | LULAC | | $245.00 | 0.70 | $ 765.00 | $535.50 |
| | | | | | $720.00 | | | | $1,742.00 |
| Kedar Vishwanathan | Associate | 27261 | 06/24/2024 | LULAC | $100.00 | $100.00 | 0.40 | $ 635.00 | $254.00 |
| | | | | | | | | | $254.00 |
| Sean Andrade | Partner | 27314 | 06/28/2024 | LULAC | $140.00 | $140.00 | 0.40 | $ 765.00 | $306.00 |
| | | | | | | | | | $306.00 |
| Sean Andrade | Partner | 27462 | 08/13/2024 | LULAC | $35.00 | $35.00 | 0.10 | $ 765.00 | $76.50 |
| | | | | | | | | | $76.50 |
| Sean Andrade | Partner | 27553 | 09/17/2024 | LULAC | $70.00 | $70.00 | 0.20 | $ 765.00 | $153.00 |
| | | | | | | | | | $153.00 |
| Sean Andrade | Partner | 27653 | 10/15/2024 | LULAC | $70.00 | $70.00 | 0.20 | $ 765.00 | $153.00 |
| | | | | | | | | | $153.00 |
| Nneka Mbadugha | Associate | 27748 | 11/08/2024 | LULAC | $250.00 | $250.00 | 1.00 | $ 635.00 | $635.00 |
| | | | | | | | | | $635.00 |
| Sean Andrade | Partner | Projected for Future Work | Nov-Feb | LULAC | | $1,750.00 | 5.00 | $ 765.00 | $3,825.00 |
| Nneka Mbadugha | Associate | Projected for Future Work | Nov-Feb | LULAC | | $3,750.00 | 15.00 | $ 635.00 | $9,525.00 |
| | | | | | $5,500.00 | | | | $13,350.00 |

| | | | Hours | |
|---|---|---|---|---|
| | Grand Total | $48,597.50 | 196.40 | $120,953.00 |