**ANDRADE GONZALEZ LLP**
SEAN A. ANDRADE, SBN 223591
sandrade@andradefirm.com
HENRY H. GONZALEZ, SBN 208419
hgonzalez@andradefirm.com
801 S. Figueroa Street, Suite 1050
Los Angeles, California 90017
Tele: (213) 986-3952/Fax: (213) 995-9696

Christian Contreras, Esq. (SBN 330269)
   CC@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000 | Fax: (323) 597-0101

Attorney for Defendant,
CALIFORNIA LULAC STATE ORGANIZATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPRESENTATIVE MATT GAETZ, ET AL<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF RIVERSIDE, ET AL<br><br>　　　　　Defendants. | **CASE NO.: 5:23-cv-01368-HDV-SHK**<br>[Assigned to the Honorable. Hernan D. Vera]<br><br>**DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES** |

### DECLARATION OF CHRISTIAN CONTRERAS

I, Christian Contreras, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California and the United States District Court for the Central District of California. I am one of the attorneys of record for Plaintiff in this matter. If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

2.      I submit this declaration in support of California LULAC State Organization's Motion for Attorney's Fees.

3.      I was retained on a pro bon basis to represent California LULAC State Organization in this matter.

4.      In connection with this fee motion, I maintained contemporaneous time records and time-keeping practices reflecting the legal work and time spent on this case. I personally performed the work attributed to me in my attached billing statement and can personally attest that the hours I spent on this case have been reasonably expended in pursuit of the instant litigation. I have exercised billing judgment, and I have reduced or written off unproductive time or other time that would not ordinarily be charged to a fee-paying client. I have spent 40.25 hours of billable time in connection with tasks reasonably necessary to the favorable resolution of this action. I anticipate spending an additional five (5) hours reviewing and analyzing the opposition to this motion and preparing a reply for a total of 45.25. A true and correct copy of my time records for this case is attached hereto as Exhibit 5.

### PROFESSIONAL BACKGROUND

5.      I graduated from Loyola Law School in 2018 with an emphasis and certification in Civil Litigation and Advocacy. During my tenure at Loyola Law School,  I served as a law clerk for the civil rights law firm Guizar, Henderson & Carrazco, LLP; an extern for the Honorable Fred J. Fujioka at the Superior Court of

California, County of Los Angeles; a clerk at Public Counsel; and a competitor in the moot court team. I also successfully completed the year-long civil rights litigation practicum course where I studied under Carol Sobel and Gary Williams. After graduating from law school in May of 2018, I took the July 2018 California Bar Exam which I successfully passed. I was admitted into the practice of law in February of 2020.

6.      In February of 2020, I accepted a junior partner position with Guizar, Henderson & Carrazco, LLP where I managed an active case load of approximately thirty (30) civil rights cases stemming from officer involved shootings to non-deadly uses of force. Notably, I was offered this partnership  position, which consisted of an equity share in the firm's partnership, during the first month of being a licensed attorney. This is due to the considerable skillsets and experience I had already honed at such an early stage in my legal career. I continue to hold my partnership position with the firm.

7.      In April of 2020, I was admitted into the Central District of California Civil Rights Pro Bono Panel where I have represented civil rights plaintiff on a *pro bono* basis.

8.      In March of 2021, I was hand-selected by Senator Scott Wiener to speak at the California Capitol in support of Senate Bill 271 (2021) (Sheriff Democracy and Diversity Act) which would have restored California's long-standing eligibility requirements for Sheriff candidates, allowing all registered voters to run for sheriff in their community.

9.      In May of 2021, I opened my own law firm, Law Offices of Christian Contreras, PLC, where I specialize in civil rights litigation and trials. The majority of civil rights cases in my firm are police shooting cases or jail death cases brought in federal court pursuant to Section 1983 or in state court brought pursuant to the Bane Act. My office also specializes in taking on and trying a limited number of criminal cases with a civil rights overlap in order to prevent a full bar to the civil

DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES

case pursuant to *Heck v. Humphrey* and Government Code section 945.3. I am the lead trial attorney and managing attorney of the Law Offices of Christian Contreras, PLC, where I have a staff of seven (7) employees including an associate attorney.

10.    In June of 2022, I graduated from the Consumers Attorneys Association of Los Angeles' ("CAALA") Plaintiff Trial Academy which consisted of a condensed schedule of thirteen (13) days of intense instruction and videotaped student presentations, followed by critiques from the faculty.

11.    In the fall of 2022, I taught civil rights at the People's College of Law. I was responsible for creating a curriculum and providing course readings to a class of approximately fifteen (15) law students. The civil rights course taught students general constitutional law principles, civil rights litigation, and trial strategies. The course was a ten (10) week course plus administration and grading of final exams..

12.    Since the inception of my legal career, I have also served as legal counsel for various civil rights organization, such as Centro Community Service Organization ("CSO") (CSO is the community organization previously led by Cesar Chavez and Dolores Huertas), the California League of United Latin American Citizens ("LULAC"), Coalition for Community Control Over the Police, Latino Coalition of Los Angeles, Voices of Strength, Caravan for Justice, and Street Vendors United.

13.    I am a member of several board of directors for non-profit organizations, including the Mexican American Bar Association ("MABA"), serving three (3)  consecutive terms; the National Police Accountability Project ("NPAP"); the Los Angeles Trial Lawyers' Charity ("LATLC"); the East Los Angeles College Foundation, serving three (3) consecutive terms LULAC, serving three (3) consecutive terms; and  Justice X, serving  four (4) consecutive years. Notably, Justice X is a coalition of Black and Brown lawyers dedicated to advancing social equity. Through Justice X, I launched an education initiative where we offer a free four (4) week program teaching members of the public about their civil rights

and about the civil and criminal justice system. I, myself, curated the educational curriculum for this program.  In December of 2021, Los Angeles County Supervisor Hilda Solis bestowed upon Justice X a commendation for its dedicated service to the affairs of the community. In April of 2023, LULAC awarded Justice X the Legal Champion Organization of the Year.

## SKILL, EXPERIENCE & REPUTATION

14.     In terms of the skills involved, my specialty is civil rights law. Although I am only in my fifth year of practice as an attorney, I have litigated hundreds of civil rights cases successfully. Indeed, in terms of federal civil rights cases, in the Central District of California alone, I have close to one hundred and eleven (111) active cases or cases which have been litigated where I have been attorney of record. I have also litigated many civil rights cases in state court, and in other jurisdictions outside of California, including the *Zachary Snow* case in Boise, Idaho. *See Walton v. City of Boise, et al* (Case No. 1:23-cv-00478-CWD). I have eight (8) active appeals or appeals which I have been attorney of record in the Ninth Circuit Court of Appeals. I have achieved successful results in the Ninth Circuit in the area of civil rights. *See Odila Penaloza, et al v. City of Rialto, et al* (Case No. 20-55164) (successful qualified immunity appeal); *Lisa Vargas v. Nikolis Perez, et al* (Case No. 21-55054) (successful qualified immunity appeal). I am litigating or have ligated five (5) cases in the California Court of Appeal including filing multiple writs of habeas corpus and appealing a denial of petition for writ of an order permitting the filing of a late claim. *See Nichole Thompson, et al. v. County of Riverside*, Court of Appeal, 4th District, Division Two (Case No. E082974).

15.     In October of 2024, my law firm, the Law Offices of Christian Contreras, PLC was one (1) of twenty (20) law firms in the State of California recognized by the Daily Journal as a Top Boutique of 2024.

16.     For four (4) years, 2022-2025, I have been rated a "Top Rated Civil Rights Attorney in Los Angeles, California" by Super Lawyers as well as being

DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES

selected to Rising Stars. I have also been nominated as a Consumer Attorneys Association of Los Angeles ("CAALA") Rising Star three (3) times with obtaining the second most votes in 2024.

17.    After obtaining a favorable verdict in the matter *Justin Smith v. City of La Verne, et al.* (Case No. 2:23-cv-00644-KK-E) in May of 2024, I moved for attorney's fees. In the order awarding attorney's fees, Hon. Judge Kenly Kiya Kato established my hourly rate at $650 an hour and stated in part that "[t]he declarations . . . demonstrate Mr. Contreras's reputation in the community as a skilled civil rights practitioner despite the relatively short period of time he has been practicing." A true and correct copy of Judge Kato's September 4, 2024 Attorney's Fees Order is attached hereto as Exhibit 6.

18.    The skill required in this case requires the knowledge of civil rights law. The skills necessary also required attorneys who could effectively try cases. As of the date of this declaration, I have tried twenty-one (21) cases, a majority of which I as lead counsel. In 2024 alone, I have tried seven (7) cases. In the course of my career, I have litigated approximately three hundred (300) cases, an overwhelming majority of which having been civil rights cases. I have achieved significant results for my clients. Some notable results include the following:

i.    **$25 million settlement** in *Isaias Cervantes, et al. v. County of Los Angeles, et al.*, Los Angeles Superior Court (Case No. 21STCV29317) in May of 2023. I was co-counsel in this case which concerned a deputy involved shooting in April of 2021 of an autistic young man, Isaias Cervantes, by Los Angeles County Sheriff's Department deputies which resulted in Mr. Cervantes becoming a paraplegic. The settlement is the largest single plaintiff civil rights settlement in the State of California, and amongst one of the highest in the country. As a reference point, the landmark George Floyd civil case settlement was $27,000,000 million. Furthermore, in the course of the case, felony criminal charges were filed

DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES

against Mr. Cervantes and we successfully obtained a full dismissal of the criminal charges.

ii.   **$2.8 million verdict** in *Jonathan Alvarez, et al. v. Daniel McGuire*, Los Angeles County Superior Court (Case No. 23VECV01049) in September of 2024. This case concerned two (2) street vendors who were harassed and discriminated upon merely for selling fruit on a corner in Woodland Hills. I asserted civil rights claims, the Bane Act and Ralph Act against the defendants, and tried the case before a jury. In September of 2024, a Van Nuys jury unanimously returned a verdict on all claims in the amount of $2,836,800.

iii.  **$3 million verdict** in *Deanna Sullivan v. City of Buena Park, et al*, Orange County Superior Court (Case No. 30-2020-01156902-CU-CR-CJC) in April of 2024. This case concerned the shooting of David Sullivan in August of 2019 by Buena Park police officers. The case was removed to federal court after initially being filed in state court. *See Deanna Sullivan v. City of Buena Park, et al*, (Case No. 8:20-cv-01732-CJC-ADS). I litigated and worked up the case extensively including filing two affirmative motions for summary judgment in federal court. *See* Dkt. 17 & 24. The federal trial resulted in a mistrial due to a deadlocked jury. I then moved to dismiss the federal claims and proceeded only on the state claims in state court. The case was tried again in state court in April of this year and the jury rendered a $3 million verdict.

iv.   **$5 million settlement** in *Estate of Pedro Lopez, et al. v. Los Angeles County Sheriff's Department, et al.* in April of 2022. I was retained by the *Lopez* family in February of 2022 stemming from a deputy involved shooting in February of 2022 of an older gentlemen, Pedro Lopez, by Los Angeles County Sheriff's Department deputies which resulted in Mr. Lopez dying. The *Lopez* case was one of the first officer involved

shootings to be investigated by the California Department of Justice under Assembly Bill 1506. I settled the case in pre-litigation.

v. **$475,000 civil rights class action settlement** in *Reyes Murcia et al. v. City of Santa Monica, et al.*, Central District of California (Case No. 2:22-cv-05253-FLA-MAR) in March of 2024. This is a class action civil rights lawsuit I filed against the City of Santa Monica for the towing of individual's vehicles, including street vendors, for being unlicensed and then unlawfully retaining the vehicles for thirty (30) in violation of the Fourth Amendment. When I originally filed the lawsuit, I also filed a temporary restraining order application which was granted in party. *See* Dkt. 27. Shortly after the TRO was granted, attorneys Donald Cook and Cynthia Anderson-Baker agreed to litigate the case with me and Mr. Cook took over as lead counsel. The matter ultimately settled for $475,000 with the possibility of monetary relief for close to one hundred (100) class members.

vi. **Not guilty verdict** in the *People v. Adrian Aldaco,* Los Angeles Superior Court (Case No. BA502755) in January of 2023. This was a felony criminal case with a civil rights overlap where I represented Mr. Aldaco who was charged with Penal Code section 245(d)(2) – Assault with a Deadly Weapon on a Peace Officer and Penal Code section 29800(a)(l) – Felon in Possession of a Firearm. Two LAPD officers accused Mr. Aldaco of aiming a firearm at them and they shot Mr. Aldaco multiple times. As sole counsel, I represented Mr. Aldaco throughout the entirety of the criminal case including during trial and ultimately obtained a not guilty verdict on the Penal Code section 245(d)(2) charge. During trial, I conceded the Penal Code section 29800(a)(l). Mr. Aldaco maximum exposure was well over twenty years in prison because of his strike prior and the Penal Code section 12022.5 allegation, personal use of a firearm.

**DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES**

The civil rights case is currently pending and set for trial in October of 2024. *See Adrian Aldaco v. Los Angeles Police Department*, et al., Central District of California (Case No. 2:23-cv-03585-HDV-AGR).

vii. **$3 million post-trial settlement** in *Lisa Vargas v. County of Los Angeles, et al.*, Central District of California (Case No. 2:19-cv-03279-MEMF-AS) in October of 2023. This is a civil rights case stemming from Los Angeles County Sherif's Department deputies shooting and killing Anthony Vargas on August 12, 2018. A firearm was found at the scene the deputies alleged that the Mr. Vargas pointed the firearm at them. I was first chair during the trial which occurred in April of 2023. The trial resulted in a mistrial after a deadlocked jury. We subsequently settled the case in October of 2023 for $3,000,000 million. This case also required litigating two different appeals in the Ninth Circuit. The first appeal was filed by Defendants based upon the denial of qualified immunity. I successfully prevailed in the first appeal by arguing that the Ninth Circuit lacked jurisdiction given that Defendants' appeal was based upon disputes of fact, not pure legal questions. The Ninth Circuit agreed and dismissed the appeal on jurisdictional grounds. *See Vargas v. Perez*, No. 21-55054, 2021 WL 5600236, at *1 (9th Cir. Nov. 30, 2021). The second appeal was filed by Defendants again based upon the district court granting Plaintiff's motion to dismiss federal claims after the first trial. The case settled while the second appeal was pending.

viii. **$2.75 million settlement** in *Estate of Joseph Tracy, et al. v. County of Riverside, et al.*, Riverside County Superior Court (Case No. CVRI2205432) in June of 2023. I was one of the lead attorneys in wrongful death excessive force case arising out of the fatal shooting of Joseph Tracy IV by law enforcement officers from the Riverside County Sheriff's Department, Riverside Police Department and the Hemet Police Department. Mr. Tracy was unarmed at the time of the shooting and was

DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC
STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES

one of the first officer involved shootings to be investigated by the California Department of Justice under AB 1506. The case remains against the City of Riverside and the City of Hemet. Furthermore, there is also a parallel federal case in order to obtain *Valenzuela* damages. *See Estate of Joseph Tracy IV, et al v. Riverside Police Department et al.* (Case No. 5:23-cv-02641-JGB-DTB).

ix. **$1.75 million mid-trial settlement** in *Leticia Sanchez v. County of Los Angeles*, *et al*, Los Angeles Superior Court (Case No. 18STCV08900) in August of 2022. This civil rights case concerned the cavity search of Ms. Sanchez by Los Angeles County employees. Attorney Humberto Guizar requested I co-counsel the case with him and Mr. Guizar and I tried the case as co-lead counsel. After a two week trial in Santa Monica and three days of deliberations where it was clear that the jury found liability (based on jury notes), we settled the matter for $1.75 million. While a cavity search is a serious occurrence, Ms. Sanchez did not suffer any physical injuries as a result of the incident.

x. **Full Acquittal** in *People v. Norma Castillo*, Los Angeles Superior Court (Case No. KA126022) in June of 2021. I tried this case as sole counsel in Pomona, California and this case concerned a felony charge of domestic abuse with an allegation of great bodily injury against my client Norma Castillo. Trying a criminal case in Pomona is notoriously difficult. I was able to obtain a full acquittal for my client Ms. Castillo. Ms. Castillo's exposure was nine (9) years in prison.

xi. **$3 million verdict** in *Deanna Sullivan v. City of Buena Park, et al*, Orange County Superior Court (Case No. 30-2020-01156902-CU-CR-CJC) in April of 2024. This case concerned the shooting of David Sullivan in August of 2019 by Buena Park police officers. The case was removed to federal court after initially being filed in state court. *See Deanna Sullivan*

*v. City of Buena Park, et al*, (Case No. 8:20-cv-01732-CJC-ADS). I litigated and worked up the case extensively including filing two affirmative motions for summary judgment in federal court. *See* Dkt. 17 & 24. The federal trial resulted in a mistrial due to a deadlocked jury. I then moved to dismiss the federal claims and proceeded only on the state claims in state court. The case was tried again in state court in April of this year and the jury rendered a $3 million verdict.

xii.  **Full Acquittal** in *People v. Ryan Cortez*, Los Angeles Superior Court (Case No. 3DN02690) in October of 2023. I tried this case as sole counsel in Downey, California concerning my client, Ryan Cortez, street vendor activist who was arrested after exercising his First Amendment right at a Huntington Park City Council meeting and organizing a protest. During trial I cross examined the mayor of Huntington Park and ultimately obtained a full acquittal for Mr. Cortez. I am now prosecuting a Section 1983 case against the mayor and the City of Huntington Park for civil rights violations.

19.    I have obtained numerous other comparable results in the course of my career but the foregoing highlights are some of the notable results.

20.    Furthermore, my knowledge of civil rights is such that I teach the topic of civil rights often. I taught a civil rights course at the People's College of Law in the fall quester of 2022. I am also often asked to speak at conferences and continued learning education seminars concerning civil rights topics. For example, I have presented on various civil rights topics at the following events: **(1)** Keeping Dr. King's Dream Alive in 2021 with co-panelists former City of Los Angeles Council Member Curren Price and United States House of Representatives, Representative Sydney Kamlager (January 2021); **(2)** Golden Gate University, School of Law – La Raza & PILF: Latinx Attorneys in Public Interested (March 2021); **(3)** LA Law Library, Ask a Lawyer: Civil Rights (October 2021); **(4)** National Lawyers Guild,

DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC
STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES

Building a Civil Rights Practice (January, 2022); **(5)** League of United Latin American Citizen's 73rd Convention – Voting Rights (April 2022); **(6)** Dordick Trial College – Civil Rights Panel (May 2022); **(7)** Law Di Gras – Civil Rights (July 2022), **(8)** LA Law Library: Ethical Protesting for Legal Professionals (October 2022); **(9)** Loyola Law School, Civil Rights Litigation Practicum (October 2022); **(10)** Second Loyola Law School, Civil Rights Litigation Practicum, Public Interest Panel (November 2022); **(11)** Alder Law - Affirmative Action Panel (July 2023); **(12)** Rio Hondo College – Pathway to Law School Program (October 2023); **(13)** East Los Angeles College – Pathway to School Program; **(14)** National Lawyers Guild – San Francisco Chapter – Tenth Annual Staying True To Your Roots (January 2024), **(15)** University of California, Irvine School of Law - Civil Rights Litigation Clinic (February 2024); **(16)** Mexican American Bar Association – Civil Rights CLE (April 2024); **(17)** National Police Accountability Project, Protest, Public Access, and the Press: First Amendment Issues in Police Misconduct Cases in Portland Oregon (June 2024) (ultimately did not attend due to trial conflict); **(18)** Dordick Trial College – Civil Rights Panel (May 2022); **(19)** Consumer Attorneys Association of Los Angeles – Trying Cases in Federal Court (May 2024); **(20)** National Police Accountability Project, Building Your Career in Civil Rights Litigation (July 2024). I am also frequently asked to provide legal commentary regarding civil on various television news broadcastings such as Fox 11 LA, ABC7, KTLA5, NBC, CBS, Univision 34, Univision Miami, Telemundo 52, Telemundo – Fresno, and Telemundo San Diego.

21.    Furthermore, I have also published several articles relative to civil rights including one in the Advocate Magazine entitled Police Shootings: A Comprehensive Guide and in the MABA Newsletter an article entitled Supreme Court Eliminates the Fundamental Right to Abortion in Overturning *Roe v. Wade.*

22.    In terms of my reputation in the community, in addition to the foregoing, as previously attested to, I am a member of several board of directors for

**DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES**

non-profit organizations including the Mexican American Bar Association, the Los Angeles Trial Lawyers' Charity (LATLC) , East Los Angeles College Foundation, California League of United Latin American Citizens, and Justice X.

## **INSTANT LITIGATION**

23.    This case concerned novel civil rights issues given that 42 U.S. Code § 1985 is not a commonly litigated claim. Indeed, the majority of my practice entails litigating 42 U.S. Code § 1983 in police misconduct cases, § 1985 is a claim not often ligated. Adding to the complexity was the fact that LULAC was not a state actor.

24.    Based on the complex nature of this case, the skill, experience, and ability necessary to prevail in this case, I believe that an hourly attorney fee rate for my services under the circumstances should be $750 per hour, resulting in a total lodestar fee of $33,937.50 for my services in this case. My time records were maintained contemporaneously and is attached hereto as Exhibit 5.

25.    While I was recently awarded $650 an hour by Judge Kato, one of the justifications for the $650 hourly rate was because the *Smith* matter was not complex whereas the instant matter was much more complex than a K9 excessive force case. Judge Kato wrote in her September 4, 2024 Order that "[h]ence, considering Mr. Contreras's experience and reputation, the hourly rates recently awarded in similar cases, **and the relatively low complexity of this matter**, the Court finds an hourly rate of $650 for Mr. Contreras to be reasonable under the circumstances." Page 5 of 9, September 4, 2024 Order (Dkt. 142, Page ID #:2837). Accordingly, given the complex nature of this matter, a $750 hourly rate is respectfully warranted.

///
///
///
///
///

DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES

26.    I respectfully request this hourly fee on the basis of my considerable experience in litigating civil rights cases, based on my accomplishments in this case and in other civil rights cases, and based on my expertise in the field of civil rights as evidence by my experience highlighted in this declaration and supporting declarations by other attorneys.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on November 20, 2024 at Los Angeles, California.

CHRISTIAN CONTRERAS

DECLARATION OF CHRISTIAN CONTRERAS IN SUPPORT OF DEFENDANT CALIFORNIA LULAC STATE ORGANIZATION'S MOTION FOR ATTORNEY'S FEES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 5.



# Law Offices of Christian Contreras, PLC

360 E. 2nd. St., 8th Floor
Los Angeles, CA 90012
Phone: (323) 435-8000
Email: cc@Contreras-Law.com
www.Contreras-Law.com

# INVOICE

Invoice # 174
Date: 11/20/2024
Due Upon Receipt

LULAC

## 00248-.LULAC

## Matt Gaetz v. LULAC (5:23-cv-1368)

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|---------:|------|-------|
| Service | 09/07/2023 | Review and analysis of complaint. | 1.40 | $750.00 | $1,050.00 |
| Service | 09/07/2023 | Review of correspondence Kedar Vishwanathan re potential motion to dismiss. | 0.40 | $750.00 | $300.00 |
| Service | 09/08/2023 | Met with Kedar Vishwanathan to discuss case. | 0.20 | $750.00 | $150.00 |
| Service | 09/08/2023 | Researched case and prepared meet and confer letter. | 3.60 | $750.00 | $2,700.00 |
| Service | 09/11/2023 | Prepared stipulation to extend time to respond. | 0.20 | $750.00 | $150.00 |
| Service | 09/19/2023 | Preparation meeting with Kedar to discuss approach for meet and confer. | 0.20 | $750.00 | $150.00 |
| Service | 10/16/2023 | Initial research regarding respective portion of the motion to dismiss. | 3.70 | $750.00 | $2,775.00 |
| Service | 10/17/2023 | Met with client board to provide update and explain next steps. | 0.40 | $750.00 | $300.00 |
| Service | 10/17/2023 | Drafted initial draft of my portion of the motion to dismiss. | 4.40 | $750.00 | $3,300.00 |
| Service | 10/19/2023 | Finalization of motion to dismiss including proposed order and filed with court. | 6.10 | $750.00 | $4,575.00 |

| Service | 10/19/2023 | Drafted and filed notice of interested parties. | 0.20 | $750.00 | $150.00 |
| Service | 10/20/2023 | Cursory review of motions to dismiss by other defendants. | 1.60 | $750.00 | $1,200.00 |
| Service | 01/16/2024 | Review and analysis of opposition to motion to dismiss. | 2.80 | $750.00 | $2,100.00 |
| Service | 01/17/2024 | Draft reply to opposition. | 3.80 | $750.00 | $2,850.00 |
| Service | 01/18/2024 | Finalization of reply to opposition. | 3.80 | $750.00 | $2,850.00 |
| Service | 01/27/2024 | Preparation and filing of application to file a reply which exceeds ten pages. | 0.70 | $750.00 | $525.00 |
| Service | 01/31/2024 | Preparation for 2/1/2024 motion to dismiss hearing. | 3.20 | $750.00 | $2,400.00 |
| Service | 02/01/2024 | Attended and participated in motion to dismiss hearing. | 1.45 | $750.00 | $1,087.50 |
| Service | 11/20/2024 | Preparation of my declaration in support of motion for attorney's fees. | 2.10 | $750.00 | $1,575.00 |
| Service | 11/20/2024 | Anticipated time for review of opposition and preparation of reply. | 5.00 | $750.00 | $3,750.00 |

|  |  |  |  | **Total** | **$33,937.50** |

# Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
| --- | --- | --- | --- | --- |
| 174 | 11/20/2024 | $33,937.50 | $0.00 | $33,937.50 |
|  |  |  | **Outstanding Balance** | **$33,937.50** |
|  |  |  | **Total Amount Outstanding** | **$33,937.50** |

# <u>EXHIBIT 6.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-644-KK-Ex | | Date: | September 4, 2024 |
|---|---|---|---|---|

| Title: | *Justin Smith v. City of La Verne, et al.* |
|---|---|

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     **(In Chambers) Order GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Attorneys' Fees and Treble Damages [Dkt. 137]**

**I.
INTRODUCTION**

      This is an excessive force action arising from an incident with a La Verne Police Department canine.  The matter came before the Court for a jury trial on the Complaint filed by plaintiff Justin Smith ("Plaintiff") against defendants City of La Verne, La Verne Police Department, and La Verne Police Department officer Addiel Julian ("Defendants").  ECF Docket Nos. ("Dkts.") 1, 112-114.  On May 15, 2024, the jury rendered a verdict in favor of Plaintiff on his claims for (1) violation of California's Bane Act, Section 52.1 of the California Civil Code ("Bane Act"), and (2) battery.  Dkt. 124.

      On June 13, 2024, Plaintiff filed the instant Motion for Attorneys' Fees and Treble Damages ("Motion"), seeking an award of $841,842.50 in fees as well as treble damages under the Bane Act.  Dkt. 137.  The Court finds this matter appropriate for resolution without oral argument.  See FED. R. CIV. P. 78(b); L.R. 7-15.  For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

///

///

///

## II.
## BACKGROUND

On January 27, 2023, Plaintiff filed a Complaint against Defendants arising from a December 14, 2021 incident during which a La Verne Police Department canine attacked Plaintiff. Dkt. 1.  Plaintiff asserted the following claims:

(1) First Claim for Relief against defendant Julian pursuant to 42 U.S.C. § 1983 for excessive force in violation of the Fourth and Fourteenth Amendments;
(2) Second Claim for Relief against Defendants for violation of the Bane Act;
(3) Third Claim for Relief against Defendants for assault and battery;
(4) Fourth Claim for Relief against Defendants for negligence; and
(5) Fifth Claim for Relief against Defendants for strict liability pursuant to Section 3342 of the California Civil Code.

Id. at 6-12.

On March 16, 2023, Defendants filed an Answer to the Complaint.  Dkt. 14.

On November 6, 2023, Defendants served Plaintiff with an Offer of Judgment in the amount of $150,000, plus attorneys' fees and costs, pursuant to Federal Rule of Civil Procedure 68 ("Rule 68").  Dkt. 139 at 24-26, Declaration of Kimberly Sarmiento ("Sarmiento Decl."), ¶ 3, Ex. A.  On November 8, 2023, Plaintiff rejected Defendants' Rule 68 Offer of Judgment.  Id., ¶ 3, Ex. B.

Jury trial commenced on May 13, 2024, and on May 15, 2024, the jury rendered a verdict in favor of Plaintiff on his Second Claim for Relief for violation of the Bane Act and Third Claim for Relief for battery.  Dkts. 112-114, 124.  The jury awarded Plaintiff $70,000 in damages.  Dkt. 124 at 6.

On June 13, 2024, Plaintiff filed the instant Motion, seeking an award of $841,842.50 in reasonable attorneys' fees as well as treble damages under the Bane Act.  Dkt. 137.  On June 20, 2024, Defendants filed an Opposition to the Motion.  Dkt. 139.  On June 27, 2024, Plaintiff filed a Reply in support of the Motion.

The matter, thus, stands submitted.

## III.
## PLAINTIFF'S REQUEST FOR ATTORNEYS'
## FEES IS GRANTED IN PART

The Bane Act provides, "[i]n addition to any damages, injunction, or other equitable relief awarded . . . , the court may award the petitioner or plaintiff reasonable attorney's fees."  Cal. Civ. Code § 52.1(i) (emphasis added).  Here, the Court finds an award of attorneys' fees to Plaintiff

pursuant to the Bane Act is appropriate.[1]  First, Plaintiff prevailed on his Bane Act claim at trial.  See dkt. 124 at 3.  Second, fee-shifting provisions such as that contained in the Bane Act "ensure effective access to the judicial process[.]"  See Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (discussing the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988) (internal quotation marks omitted); see also Broughton v. Cigna Healthplans of Cal., 988 P.2d 67, 81 (Cal. 1999) ("[T]he availability of costs and attorney[']s fees to prevailing plaintiffs is integral to making the [California Consumers Legal Remedies Act] an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute.").  The Court will, therefore, award Plaintiff reasonable attorneys' fees incurred in pursuing the instant action.

## A.    RULE 68 DOES NOT BAR PLAINTIFF'S RECOVERY OF ATTORNEYS' FEES FOLLOWING DEFENDANTS' OFFER OF JUDGMENT

### 1.    Applicable Law

Pursuant to Rule 68, if a defendant serves an offer of judgment on the plaintiff that is greater than the judgment ultimately obtained by the plaintiff, the plaintiff "must pay the costs incurred after the offer was made."  Fed. R. Civ. P. 68(d).  The term "costs" in Rule 68 "refer[s] to all costs properly awardable under the relevant substantive statute[.]"  Marek v. Chesny, 473 U.S. 1, 9 (1985).  Thus, if the underlying statute defines "costs" to include attorneys' fees, "such fees are subject to the cost-shifting provision of Rule 68."  Id.  By contrast, if the underlying statute does not define "costs" to include attorneys' fees, "they are not within the scope of Rule 68."  United States v. Trident Seafoods Corp., 92 F.3d 855, 860 (9th Cir. 1996).

### 2.    Analysis

Defendants argue Plaintiff cannot recover attorneys' fees incurred following Defendants' November 6, 2023 service of the Rule 68 Offer of Judgment.  See dkt. 139 at 6-9.  However, attorneys' fees are not recoverable as "costs" under the Bane Act.  See Cal. Civ. Code § 52.1(i) (stating only "the court may award the petitioner or plaintiff reasonable attorney's fees").   Thus, Rule 68 does not categorically bar Plaintiff's recovery of attorneys' fees after Plaintiff received Defendants' Rule 68 Offer of Judgment.  See Trident Seafoods, 92 F.3d at 860.

## B.    PLAINTIFF'S REQUESTED FEE AWARD IS SUBJECT TO REDUCTION

The reasonableness of an award of attorneys' fees pursuant to the Bane Act is governed by California law.  See Klein v. City of Laguna Beach, 810 F.3d 693, 701 (9th Cir. 2016) ("[F]ederal courts apply state law for attorneys' fees to state claims[.]"); see also Altman v. PNC Mortg., 850 F. Supp. 2d 1057, 1086 (E.D. Cal. 2012) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision.").

Under California law, courts apply the lodestar method in calculating a reasonable fee award, "multiplying a reasonable number of hours for the result achieved by reasonable hourly rates[.]"

---

[1] Defendants do not dispute that the Bane Act allows Plaintiff to recover reasonable attorneys' fees and do not argue the Court should decline to award fees in this matter.  See dkt. 139 at 5.

Bender v. Cnty. of Los Angeles, 217 Cal. App. 4th 968, 987 (Cal. Ct. App. 2013). The party seeking attorneys' fees bears the burden of showing the fees incurred were "allowable," "reasonably necessary to the conduct of the litigation," and "reasonable in amount." Levy v. Toyota Motor Sales, U.S.A., Inc., 4 Cal. App. 4th 807, 816 (Cal. Ct. App. 1992). "If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." Reck v. FCA US LLC, 64 Cal. App. 5th 682, 691 (Cal. Ct. App. 2021).

### 1. Reasonableness of Hourly Rates

#### a. Applicable Law

"To determine the reasonable hourly rate, the court looks to the hourly rate prevailing in the community for similar work." Bernardi v. Cnty. of Monterey, 167 Cal. App. 4th 1379, 1394 (Cal. Ct. App. 2008) (internal quotation marks omitted). "[T]he court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees, the difficulty or complexity of the litigation to which that skill was applied, and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases." Morris v. Hyundai Motor Am., 41 Cal. App. 5th 24, 41 (Cal. Ct. App. 2019) (internal alterations omitted).

#### b. Analysis

Here, Plaintiff seeks the following hourly rates: $1,000 per hour for Denisse O. Gastélum of Gastélum Law, APC, dkt. 137 at 18-19, and $825 per hour for Christian Contreras of the Law Offices of Christian Contreras, id. at 19-20.

Ms. Gastélum is a 2011 graduate of Loyola Law School and the managing partner of Gastélum Law, opened in January 2022. Dkt. 137-1, Declaration of Denisse Gastélum, ¶¶ 6, 18. Ms. Gastélum has thirteen years of legal experience, the majority of which has been in the area of civil rights litigation. Id., ¶¶ 7, 9, 11, 18-19. The declarations submitted in support of the instant Motion demonstrate Ms. Gastélum's reputation in the community as a knowledgeable and experienced civil rights practitioner. See dkt. 137-4, Declaration of Dale Galipo ("Galipo Decl."), ¶ 4; dkt. 137-5, Declaration of Paul Hoffman, ¶ 5; dkt. 137-6, Declaration of Julia Yoo ("Yoo Decl."), ¶¶ 25-26. Nevertheless, Ms. Gastélum's requested $1,000 hourly rate exceeds the range of rates found to be reasonable for federal civil rights practitioners in the Central District of California with comparable experience.[2] See, e.g., Zelaya v. City of Los Angeles, No. CV 20-8382-ODW-

---

[2] The Court has also reviewed the declaration of Carol Sobel regarding market rates for attorneys in the Central District of California. See dkt. 137-3, Declaration of Carol Sobel. To the extent Ms. Sobel references rates billed in connection with complex commercial litigation and class action cases, see id., ¶¶ 18-22, 26-28, Exs. 5-8, 11, the Court finds such work is not comparable to the work involved in the instant action. Additionally, the Court notes Ms. Sobel misstates the hourly rates found reasonable in Contreras v. Kelly Pipe Co., No. 21STCV17933, a single-plaintiff employment discrimination case litigated in state court. See id., ¶ 25. In Contreras, the court reduced counsel's requested hourly rates to $1,000 per hour for Anthony Nguyen (an attorney with fifteen years of experience), $750 per hour for Mahru Madjidi (an attorney with ten years of

MAAx, 2024 WL 3183882, at *3-4 (C.D. Cal. June 25, 2024) (finding $700 hourly rate reasonable for attorneys with twelve and fourteen years of experience); Est. of Aguirre v. Cnty. of Riverside, No. CV 18-762-DMG-SPx, 2024 WL 2107727, at *4 (C.D. Cal. Mar. 29, 2024) (reducing hourly rate for attorney with eleven years of experience from requested $700 per hour to $650 per hour); Augustus v. City of Los Angeles, No. CV 22-2640-SB-AGRx, 2024 WL 994686, at *11 (C.D. Cal. Feb. 5, 2024) (reducing hourly rate for attorney with ten years of experience from requested $815 per hour to $725 per hour); cf. Valenzuela v. City of Anaheim, No. SACV 17-278-CJC-DFMx, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) (finding $1,075 hourly rate reasonable for attorney with eighteen years of experience). Hence, considering Ms. Gastélum's experience and reputation, the hourly rates recently awarded in similar cases, and the relatively low complexity of this matter, the Court finds an hourly rate of $850 for Ms. Gastélum to be reasonable under the circumstances. See Morris, 41 Cal. App. 5th at 41.

Mr. Contreras is a 2018 graduate of Loyola Law School and the managing attorney of the Law Offices of Christian Contreras, PLC, opened in May 2021. Dkt. 137-2, Declaration of Christian Contreras, ¶¶ 4, 8. Mr. Contreras has five years of legal experience, all of which has been in the area of civil rights litigation. See id., ¶¶ 5-6, 8. The declarations submitted in support of the instant Motion demonstrate Mr. Contreras's reputation in the community as a skilled civil rights practitioner despite the relatively short period of time he has been practicing. See Galipo Decl., ¶ 5; Yoo Decl., ¶ 29. Nevertheless, Mr. Contreras's requested $825 hourly rate exceeds the range of rates found to be reasonable for federal civil rights practitioners in the Central District of California with comparable experience. See, e.g., Valenzuela, 2023 WL 2249178, at *3 (finding $650 hourly rate reasonable for attorney with six years of experience); Augustus, 2024 WL 994686, at *11 (reducing hourly rate for attorney with four years of experience from requested $575 per hour to $480 per hour). Hence, considering Mr. Contreras's experience and reputation, the hourly rates recently awarded in similar cases, and the relatively low complexity of this matter, the Court finds an hourly rate of $650 for Mr. Contreras to be reasonable under the circumstances. See Morris, 41 Cal. App. 5th at 41.

Accordingly, the Court concludes reasonable hourly rates for the work performed by Ms. Gastélum and Mr. Contreras in this action are $850 and $650, respectively.

## 2. Reasonableness of Hours Billed

### a. Applicable Law

In determining the reasonableness of the number of hours expended, a court "must carefully review attorney documentation of hours expended[.]" Ketchum v. Moses, 17 P.3d 735, 741 (Cal. 2001); see also Donahue v. Donahue, 182 Cal. App. 4th 259, 271 (Cal. Ct. App. 2010) (stating "[a] trial court may not rubber stamp a request for attorney fees"). Relevant considerations include "whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." Morris, 41 Cal. App. 5th at 38. "Padding" in the form of "inefficient or duplicative" work is not compensable. Ketchum, 17 P.3d at 741.

---

experience), and $550 per hour for Bryan Kirsh (an attorney with six years of experience). See id., ¶ 25, Ex. 10 at 8-9, 11. Hence, the evidence cited by Ms. Sobel fails to support the rates requested by Ms. Gastélum and Mr. Contreras.

### b.    Analysis

As an initial matter, Defendants have not objected to specific billing entries in table form, as required by the Court's Civil Standing Order. The Court is not pleased with Defendants' failure to comply with the Civil Standing Order, particularly in light of the Court's June 7, 2024 Order striking Plaintiff's previously filed Motion for Attorneys' Fees and referencing the Civil Standing Order's requirements for attorneys' fees motions. See dkt. 135. Nevertheless, the Court will address the merits of Defendants' objections.

First, Defendants contend Plaintiff cannot recover any fees incurred prior to the filing of the Complaint. See dkt. 139 at 6. However, Defendants cite no California authority precluding recovery of all pre-suit attorneys' fees. Notably, California courts have held work performed in connection with pre-suit administrative proceedings may be compensable where the proceedings are "useful and necessary and directly contribute[] to the resolution of" the action. See Ciani v. San Diego Trust & Savings Bank, 25 Cal. App. 4th 563, 575-76 (Cal. Ct. App. 1994). Hence, the Court rejects Defendants' argument that pre-suit attorneys' fees are not recoverable under the Bane Act.

Second, Defendants object to some of Plaintiff's counsel's billing entries as excessive. See dkt. 139 at 17-18. The Court finds it was not excessive for Ms. Gastélum to bill 4.3 hours for drafting the Complaint, in light of the fact-specific nature of Plaintiff's claims, nor was it excessive for Mr. Contreras to bill 2.4 hours in connection with an ex parte application seeking reconsideration of the Court's ruling on a motion in limine. However, the Court agrees it was excessive for Ms. Gastélum to bill 0.7 hours to exchange "brief emails" regarding scheduling a discovery conference with defense counsel. See Sarmiento Decl., ¶ 11, Ex. M. Hence, Ms. Gastélum's August 14, 2023 billing entry is reduced by 0.5 hours. In addition, the Court agrees it was excessive for Mr. Contreras to bill 0.4 hours to review and authorize the filing of Defendants' proposed three-sentence stipulation to exclude evidence regarding defendant Julian's personal liability for any judgment.[3] See dkt. 59. Hence, Mr. Contreras's April 3, 2024 billing entry regarding the stipulation is reduced by 0.2 hours.

Finally, Defendants object to some of Plaintiff's counsel's billing entries as duplicative. See dkt. 139 at 17-18. The Court finds it was not duplicative or excessive for Ms. Gastélum to bill 2.7 hours for reviewing and revising Plaintiff's Motion for Summary Judgment, in which Plaintiff sought summary judgment on all claims asserted in the Complaint, see dkt. 42, nor was it duplicative or excessive for Mr. Contreras and Ms. Gastélum to bill a total of 3.4 hours and 2.7 hours, respectively, in connection with Plaintiff's Opposition to Defendants' Motion for Summary Judgment. However, the Court agrees it was duplicative for Mr. Contreras to bill for attending defendant Julian's deposition, given Mr. Contreras does not appear to have assisted with preparation for the

---

[3] Although Plaintiff argues "[a]n exhibit stipulation has the potential of making or breaking a trial" and "[i]t is important to carefully review the exhibits and the corresponding objections[,]" Plaintiff does not indicate Mr. Contreras actually reviewed potential exhibits related to the stipulation at issue, and Plaintiff offers no further justification for Mr. Contreras billing for over twenty minutes to review a three-sentence stipulation. See dkt. 140 at 10.

deposition.[4]  See Banas v. Volcano Corp., 47 F. Supp. 3d 957, 971 (N.D. Cal. 2014) ("[I]t is usually unreasonable for two attorneys to bill to attend the same deposition[.]" (emphasis omitted)).  For the same reason, the Court finds it was duplicative for Mr. Contreras to bill for "[p]artial attendance" of the deposition of expert Ernest Burwell, when it appears Mr. Contreras did not prepare for or defend this deposition, and attending the deposition of defense expert Marc Cohen, when it appears Mr. Contreras did not prepare for or conduct this deposition.  See dkt. 137-8 at 1-2.  Hence, the Court strikes Mr. Contreras's November 29, 2023, March 11, 2024, and March 21, 2024 billing entries in connection with deposition attendance.

Accordingly, the Court concludes Ms. Gastélum reasonably expended 278.15 hours and Mr. Contreras reasonably expended 159.15 hours in litigating this instant action.  Thus, the lodestar amount is $236,427.50 (278.15 hours x $850 hourly rate) for Ms. Gastélum and $106,697.50 (164.15 hours x $650 hourly rate) for Mr. Contreras, amounting to a total of $343,135.00.

### 3.      Application of Multiplier

#### a.      Applicable Law

Once the lodestar amount has been fixed, a court has discretion to increase or decrease the lodestar amount by applying a positive or negative multiplier.  Thayer v. Wells Fargo Bank, N.A., 92 Cal. App. 4th 819, 833 (Cal. Ct. App. 2001).  The multiplier may "take into account a variety of [] factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented."  Id.

With respect to contingency cases, courts commonly enhance the lodestar amount to "compensate[] the lawyer not only for the legal services [s]he renders but for the loan of those services."  Graham v. DaimlerChrysler Corp., 101 P.3d 140, 157 (Cal. 2004).  The rationale for such enhancement is "[a] lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions."  Id.

In addition, with respect to the results obtained by the plaintiff, "[t]he reasonableness of [a formal offer of judgment] in relation to the results obtained . . . may be a consideration[.]"  Reck, 64 Cal. App. 5th at 700.  Notably, federal courts have found reduction of the lodestar amount appropriate where a plaintiff rejects a settlement offer greater than the plaintiff's ultimate recovery at trial, reasoning the plaintiff's recovery of a lesser amount than sought is an "indicator of the measure of [the plaintiff's] success."  See Lohman v. Duryea Borough, 574 F.3d 163, 166-69 (3d. Cir. 2009) (affirming district court's reduction of lodestar by over fifty percent based on plaintiff's "limited success" where plaintiff "received a lesser result from trial than from settlement"); see also Ingram v. Oroudjian, 647 F.3d 925, 927 (9th Cir. 2011) (affirming district court's consideration of settlement negotiations for purpose of determining reasonable attorneys' fees).

---

[4]  Plaintiff argues "what is not reflected in the billing is that during breaks [in defendant Julian's deposition], Mr. Contreras and Ms. Gastélum conferred to discuss strategy."  Dkt. 140 at 10.  However, the Court will not award fees for work that is not identified in or supported by counsel's billing records.

### b. Applicable Law

Here, weighing the results obtained against the contingency risk assumed by counsel, the Court finds application of a multiplier is not warranted. See Thayer, 92 Cal. App. 4th at 833. Plaintiff requests application of a 2.0 multiplier based on the contingency risk involved, the "difficulty of the case," and counsel's "demonstrated skill." Dkt. 137 at 24. However, Plaintiff's recovery at trial was significantly less than the amount Plaintiff sought to recover, as evidenced by his rejection of Defendants' Rule 68 Offer of Judgment. See Lohman, 574 F.3d at 168-69. Specifically, Plaintiff recovered $70,000 in damages – less than half of the amount he was offered by Defendants in November 2023. See dkt. 124 at 6; Sarmiento Decl., ¶ 3, Exs. A, B. Considering the underlying facts of the case, the Court finds the disparity between the rejected settlement offer and Plaintiff's ultimate jury award probative of the extent of Plaintiff's success. Hence, while the contingent nature of the representation would support application of a positive multiplier, the results obtained support application of a negative multiplier. The Court, therefore, will not apply a multiplier to the lodestar in this case.

Accordingly, the Court awards attorneys' fees to Plaintiff in the amount of $343,135.00.

## IV.
## PLAINTIFF'S REQUEST FOR POST-VERDICT TREBLE DAMAGES UNDER THE BANE ACT IS DENIED

### A. APPLICABLE LAW

Pursuant to the Bane Act, an individual "whose exercise or enjoyment of rights secured by the Constitution or laws of the United States . . . has been interfered with, or attempted to be interfered with," may pursue a civil action for damages – "including, but not limited to, damages under Section 52 [of the California Civil Code ("Section 52")][.]" Cal. Civ. Code § 52.1(c). Section 52 provides for recovery of "actual damages," as well as "any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage[.]" Cal. Civ. Code § 52(a). Treble damages under Section 52 "are awarded at the discretion of a factfinder, and the amount is not fixed." Archibald v. Cnty. of San Bernardino, No. EDCV 16-1128-AB-SPx, 2018 WL 8949779, at *1 (C.D. Cal. May 10, 2018).

### B. ANALYSIS

Plaintiff contends he is entitled to treble damages under the Bane Act "given that [he] established a Bane Act violation" at trial. Dkt. 137 at 28. However, Plaintiff cites no authority for the proposition that the Court may award treble damages on a Bane Act claim following a jury trial and verdict.[5] See dkt. 137 at 27-28; dkt. 140 at 6-7. Plaintiff appears to rely on Section 52's reference to "a court sitting without a jury" in support of his argument. See dkt. 140 at 7. However, given Section 52's disjunctive phrasing – "a jury, or a court sitting without a jury" – the statute plainly contemplates a trial by the Court sitting without a jury, rather than an additional post-verdict award by the Court. See Cajon Valley Unified Sch. Dist. v. Drager, 101 Cal. App. 5th 1251, 1262

---

[5] Notably, Plaintiff did not request a jury instruction regarding treble damages before or during trial. See dkts. 82, 83.

(Cal. Ct. App. 2024) (holding, absent ambiguity in statutory language, "[t]he plain meaning controls").

Moreover, even if the Court had authority to enter an additional post-verdict award pursuant to Section 52, Plaintiff fails to offer any argument demonstrating a basis for such award on the facts of this case. Contrary to Plaintiff's representation that treble damages are "required by statute[,]" dkt. 137 at 28, an award of treble damages pursuant to Section 52 is discretionary. See Archibald, 2018 WL 8949779, at *1. Plaintiff offers no argument establishing his entitlement to such award in addition to the compensatory damages already awarded by the jury.[6] See dkt. 137 at 27-28; dkt. 140 at 6-7; see also Archibald, 2018 WL 8949779, at *2 (declining to award treble damages under Bane Act in part because plaintiffs failed to show compensatory damages award was "inadequate").

Accordingly, Plaintiff's request for post-verdict treble damages under the Bane Act is **DENIED**.

## V.
## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. Defendants shall be liable to Plaintiff for reasonable attorneys' fees in the amount of $343,135.00.

**IT IS SO ORDERED.**

---

[6] To the extent treble damages would serve a punitive, rather than compensatory, function, Section 818 of the California Government Code immunizes defendant City of La Verne from such damages. See Cal. Gov't Code § 818. Because the jury awarded damages against defendant City of La Verne and defendant Julian jointly, "there is no award that can be trebled [on a punitive basis] as to [defendant Julian] alone." See Archibald, 2018 WL 8949779, at *1 (concluding, "[b]ecause the jury's damage award cannot be apportioned between [the individual defendant] and the County, there is no award that can be trebled as to [the individual defendant] alone").